IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00425-STV

**TINA M. PETERS,** Applicant,

v.

**JOHN FEYEN**, in his official capacity as Sheriff of Larimer County, Colorado, and **PHILIP J. WEISER**, in his official capacity as Attorney General of the State of Colorado, Respondents

_____

**APPLICANT'S BRIEF IN RESPONSE TO STATEMENT OF INTEREST
of the UNITED STATES OF AMERICA and RESPONDENTS'
MOTION TO STRIKE**

_____

Applicant, Tina M. Peters, by counsel, submits this Brief concerning the Statement of Interest filed by the United States of America (ECF 16), and the Respondents' request to strike it filed by Attorney General Philip J. Weiser (ECF 17).

The Attorney General ignores fundamental constitutional principles at the heart of this case. Ms. Peters' Application asserts violations of her rights protected by the First and Fourteenth Amendments by the denials of her timely motions for bond pending appeal. (ECF 1, at 2-3); 28 U.S.C. §2254(6) & (7); *see Herrera v. Collins,* 506 U.S. 390, 400 (1991) ("[F]ederal habeas courts sit to ensure that

individuals are not imprisoned in violation of the Constitution…"). The Mesa County District Court and the Colorado Court of Appeals rejected Ms. Peters' claims that her right to free expression protected by the First and Fourteenth Amendments was violated by the denial of her motions for release pending appeal. (*Id.,* at 2). The district court stated that Ms. Peters was being imprisoned and denied release on bond <u>because of words</u> she used to criticize Dominion computerized voting systems:

> [Y]ou are a charlatan and you cannot help but lie as easy as it is for you to breathe. You betrayed your oath for no one other than you. And this is what makes Ms. Peters such a danger to our community. It's the position she held that has provided her the ***pulpit from which she can preach these lies***, the undermining of our democratic process, the undermining of the belief and confidence in our election systems.

Appx 99:18-24 (boldface italics added).

> So the damage that is caused and continue to be caused is just as bad, if not worse, than the physical violence that this court sees on an all too regular basis. And it's particularly ***damaging when those words come from someone who holds a position of influence*** like you. Every effort to undermine the integrity of our elections and the public's trust in our institutions has been made by you. ***You've done it from that lectern***. The voting public provided you with everything you've done has been to retain control influence. The damage is immeasurable. And every time it gets refuted, every time it's shown to be false, just another tale is weaved.

Appx 100:4-14 (boldface italics added).

> ***[P]rison is for those folks where we send people who are a danger to all of us, whether it be by the pen or the sword or the word of the mouth***.

2

Appx 101:14-16 (boldface italics added).

The Application demonstrates that Ms. Peters' statements were supported by three qualified cyber experts. Her words were within the mainstream of a long-standing, legitimate public debate about the reliability of computerized voting systems. (ECF 1, at 11-13). At least one federal court agrees with the views expressed by Ms. Peters. *Curling v. Raffensperger,* 493 F.Supp.3d 1264, 1280 (N.D. Ga. 2020). Even if Ms. Peters statements were false, they concerned a matter of great public importance, which cannot be prohibited or punished unless her words "convey a real possibility that violence will follow." *Counterman v. Colorado,* 600 U.S. 66, 74 (2023).

The government cannot restrict free expression by labeling it "conspiracy theories." Clearly established precedent forbids courts from denying release on bond because the defendant spoke about a publicly debated issue (ECF 1, at 14-17). By relying on Ms. Peters' nonviolent words as a basis for denying bond, Colorado courts violated the First and Fourteenth Amendments. *United States v. Lemon,* 723 F.2d 922, 937-38 (D.C. Cir. 1983); *Leary v. United States,* 431 F.2d 85, 86 (5th Cir. 1970); *United States ex rel. Means v. Solem,* 440 F. Supp. 544, 551-52 (D.S.D. 1977).

The United States has an interest in protecting all citizens against repression of ideas. The right to speak freely---"of transcendent value to all society, and not merely to those exercising their rights" (*Dombrowski v. Pfister,* 380 U.S. 479, 486 (1965)---provides the United States with a strong interest in participating in this proceeding.

Ms. Peters' Application also asserts that she has been deprived of immunity guaranteed by the Supremacy Clause and the Privileges or Immunities Clause of the United States Constitution (ECF 1, 21-26). The United States has an obvious interest in assuring the availability of such immunity to those acting pursuant to a federal statutory duty. "It is the right and the duty of the national government to have its Constitution and laws interpreted and applied by its own judicial tribunals." *Mayor and Aldermen of City of Nashville v. Cooper,* 73 U.S. 247, 253 (1867). Ms. Peters is entitled to federal immunity from prosecution and punishment by the State of Colorado for actions that she took to comply with the duty imposed on her by federal election records preservation statutes. 52 U.S.C. §§20701, 21802(a). The United States is not appearing simply to protect Ms. Peters' right, but to enforce fundamental principles of federalism embodied in the Constitution. *See Wyoming v. Livingston,* 443 F.3d 1211, 1217 (10th Cir. 2006).

The Attorney General devotes much discussion to matters beyond the scope of 28 U.S.C. §2254 and unrelated to the Application. For example, the Attorney General claims that DA Dan Rubinstein "did no more than fulfill his duty," (ECF 17 at 5), and quotes Mr. Rubinstein's self-promoting statement to the Denver Post March 4, 2025 (*Id* at 4). This Court will soon see that there is a difference between Mr. Rubinstein's media persona and his conduct here. Ms. Peters will demonstrate that Mr. Rubinstein manufactured evidence to convict her of contempt of court, then used the contempt conviction to persuade Judge Barrett to imprison her. The Colorado Court of Appeals vacated the contempt conviction (see Exhibit 6), but Ms. Peters remains in prison.

On February 7, 2022, Ms. Peters attended a pretrial hearing for a co-defendant before Judge Barrett. Mr. Rubinstein told Judge Barrett that Ms. Peters was recording the hearing on her iPad. Mr. Rubinstein said, "I've now seen the screen, and indeed it's recording." (Exhibit 1 at 2:7-8).

Ms. Peters denied that she was recording. (*Id* at 2:12-17). Mr. Rubinstein then brought a contempt proceeding based on allegations that Ms. Peters recorded part of the hearing, and that she lied to Judge Barrett when she denied doing it. (Exhibit 2 at 5).

5

Before the contempt trial took place, Mr. Rubinstein admitted in his deposition, "I have no idea if it was recording or not." (Exhibit 3 at 2:14-15).

At the contempt trial, D.A. Investigator Michael Struwe testified that he seized Ms. Peters iPad from her on February 8, 2022, and during the fifteen months since he seized it, the prosecution had not performed a forensic examination of the iPad to see if it contained a recording of the February 7, 2022, hearing. (Exhibit 4 at 2:13 – 22). Citing the best evidence rule, defense counsel asked the trial court to order the release of the iPad from the sheriff's custody so that the Court and counsel could see if it contained a recording. (*Id* at 3:12-4:18). Mr. Rubinstein objected on the basis the iPad was not relevant. (*Id* at 3:21-22). The judge denied defense counsel's request, and he refused to look at the iPad (*Id* at 4:19-20). The judge then found Ms. Peters guilty of contempt.

After convicting Ms. Peters of contempt, Mr. Rubinstein returned the iPad to Ms. Peters' counsel, who submitted it to forensic experts. The experts determined that the iPad contained no recording of a judicial proceeding on February 7, 2022, and that no such recording had been deleted from the iPad. (Exhibit 5, report of Archer Hall at 2). Thus, Ms. Peters told the truth when she denied recording.

Mr. Rubinstein could have acknowledged that the Archer Hall report established that Ms. Peters told the truth when she denied recording, and that she

6

was innocent of the contempt charge. Instead, Mr. Rubinstein continued to argue that the contempt conviction proved that she was a liar. At sentencing, Mr. Rubinstein told Judge Barrett, "She was found guilty beyond a reasonable doubt in the contempt proceedings." (Appx 62:25 – 63:1). Ms. Peters tried to rebut Mr. Rubinstein by presenting the Archer Hall report to Judge Barrett, but the judge ignored it. (*Id* 68:10 – 69:12).

On December 19, 2024, the Court of Appeals vacated Ms. Peters' conviction for contempt because the evidence was insufficient (Exhibit 6).

Mr. Rubinstein told a journalist that the purpose of pursuing the contempt citation was because of the effect it would have on Ms. Peters' sentencing:

> "What was important about the contempt action being pursued was the effect that an additional finding of Ms. Peters' dishonesty would have on her sentences in the elections case."

(Exhibit 7 at 5).

To summarize, Mr. Rubinstein told Judge Barrett that he saw Ms. Peters recording on her iPad in the courtroom. When placed under oath in a deposition, Mr. Rubinstein admitted, "I have no idea if it was recording or not." When Ms. Peters denied Mr. Rubinstein's public accusation, he charged her with contempt. He convicted her of contempt by objecting to the judge examining the iPad. After the contempt conviction, Ms. Peters provided him with the Archer Hall report

7

showing that the iPad contained no recording.  Instead of acknowledging that Ms. Peters had told the truth and had not recorded on her iPad, Mr. Rubinstein continued to claim that she recorded on her iPad and lied to Judge Barrett.  He argued at sentencing that Ms. Peters' contempt conviction justified incarceration.  After the Court of Appeals vacated the contempt conviction for insufficient evidence, Mr. Rubinstein told a journalist that his purpose in pursuing the contempt matter was because of the effect it would have on her sentencing.  In conclusion, Mr. Rubinstein was not interested in doing justice, he wanted to nail his target with evidence he manufactured, i.e., "I've now seen the screen, and indeed it's recording."  Mr. Rubinstein succeeded.  Ms. Peters remains imprisoned. [1]

     At this juncture, Ms. Peters urges the Court to focus on the state courts' unlawful denial of her rights under the First and Fourteenth Amendments, and the Supremacy Clause of the U.S. Constitution.  The United States has a legitimate interest in protecting those rights for all citizens including Ms. Peters.

     Ms. Peters respectfully asks the Court to deny Respondents' Motion to Strike, and to grant her application for release on bond.

---

[1] If this Court considers evidence of government misconduct relevant to her Application, Ms. Peters can provide such evidence.

Respectfully Submitted March 24, 2025.

| | |
|---|---|
| Patrick M. McSweeney | *s/ John Case* |
| Robert J. Cynkar | John Case |
| McSweeney, Cynkar & Kachouroff, PLLC | John Case, P.C. |
| 3358 John Hill Tree Road | 6901 S. Pierce St. #340 |
| Powhatan, VA 23139 | Littleton CO 80128 |
| (804) 937-0895 | (303) 667-7407 |
| patrick@mck-lawyers.com | brief@johncaselaw.com |

*Co-counsel for Applicant Tina M. Peters*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy of same to be served on opposing counsel via the email addresses that opposing counsel has registered with the Court's ECF system.

*s/ Linda Good*