| | |
|---|---|
| COURT OF APPEALS,<br>STATE OF COLORADO<br><br>Ralph L. Carr Judicial Center<br>2 East 14th Avenue<br>Denver, Colorado 80203<br><br>Appeal from Mesa County District Court Judgment of Conviction and Sentence.<br>Honorable Matthew D. Barrett.<br>Case Number 22CR371 | DATE FILED<br>May 30, 2025 9:47 PM<br>FILING ID: 68FCDA90339BB<br>CASE NUMBER: 2024CA1951 |
| Plaintiff-Appellee:<br>PEOPLE OF THE STATE OF COLORADO<br><br>v.<br><br>Defendant-Appellant<br>TINA PETERS | |
| Appellant's Attorneys:<br>John Case, Atty reg. # 2431<br>John Case, P.C.<br>6901 South Pierce St. #340<br>Littleton CO 80128<br>Phone: (303) 667-7407<br>E-mail: brief@johncaselaw.com<br><br>Patrick M. McSweeney, Pro Hac Vice<br>Robert J. Cynkar, Pro Hac Vice<br>McSweeney, Cynkar & Kachouroff, PLLC<br>3358 John Tree Hil<br>Woodbridge VA 22192 | Case Number: 2024CA1951 |
| **APPELLANT'S SECOND AMENDED OPENING BRIEF** | |

i

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of C.A.R. 28 and C.A.R. 32, including all formatting requirements set forth in these rules. Specifically, the undersigned certifies that:

This brief complies with the applicable word limit set forth in C.A.R. 28(g).

It contains 8,662 words.

This brief complies with the standard of review requirement set forth in C.A.R. 28(a)(7)(A).

For each issue raised by the Appellant, the brief contains under a separate heading before the discussion of the issue, a concise statement: (1) of the applicable standard of appellate review with citation to authority; and (2) whether the issue was preserved, and, if preserved, the precise location in the record where the issue was raised and where the court ruled, not to an entire document.

I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of C.A.R. 28 and C.A.R. 32.

*s/ John Case #2431*

ii

# TABLE OF CONTENTS

ISSUES ON APPEAL ................................................................................1

STATEMENT OF THE CASE ....................................................................2

A.    NATURE OF THE CASE ................................................................2
B.    PROCEDURAL HISTORY ..............................................................4
C.    FACTS .............................................................................................5

SUMMARY OF THE ARGUMENT ..........................................................9

ARGUMENT ............................................................................................11

ISSUE 1  THE DISTRICT COURT ERRED IN DENYING MS. PETERS'
        MOTION TO DISMISS BASED ON IMMUNITY UNDER THE
        SUPREMACY AND PRIVILEGES OR IMMUNITIES CLAUSES.....11

A.    *The Preservation of Election Records Is a Fundamental Federal Interest*
      *in Ensuring the Right to Vote.* ................................................... 11
B.    *The Supremacy and the Privileges or Immunities Clauses Immunize*
      *Actions Taken to Obey Federal Law* .......................................... 15
C.    *Ms. Peters Is Immune From This State Prosecution* ................. 16

ISSUE II.  THE EVIDENCE WAS INSUFFICIENT ..................................19

A.    *Attempt to Influence A Public Servant C.R.S. §18-8-306.* .......... 20
B.    *Conspiracy to Commit Criminal Impersonation against Gerald Wood (Count 6).* ........... 21
C.    *First Degree Official Misconduct (Count 8).* ............................ 22

ISSUE III.  THE CONVICTIONS SHOULD BE REVERSED BECAUSE
         THE DISTRICT COURT DENIED MS. PETERS DUE PROCESS..23

A.    *The District Court Deprived Ms. Peters of a Meaningful Opportunity*
      *to Present a Complete Defense.* ............................................... 23
  1.  *The court wrongly excluded evidence of Ms. Peters' intent.* ........ 23
  2.  *The court erred in ruling that a Clerk was not permitted to investigate the*
      *destruction of election records.* ............................................ 26
  3.  *The court erred in excluding evidence that prosecution witnesses were biased*
      *and had motives to conceal relevant information* ..................... 27

iii

B.      *The district court erred by refusing defense instructions on the affirmative defenses of execution of a public duty, and of federal constitutional immunity* ................... 29

C.      *The District Court Violated Ms. Peters' Due Process Right to Adequate Notice of the Charges Against Her.* ................................................. 30

D.      *Prosecutors misled the jury by stating falsely that Ms. Peters caused a "security breach."* ... 31

E.      *The District Court Erred by Refusing to Hold a Hearing Investigating Allegations of Improper Juror Conduct.* ......................................... 34

F.      *The Court erred by ruling that the prosecutor's false statement in rebuttal closing argument was harmless* ................................................................. 35

**ISSUE IV.  THE DISTRICT COURT VIOLATED THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS IN SENTENCING MS. PETERS TO NINE YEARS INCARCERATION FOR NONVIOLENT CRIMES.** ................................................**36**

A.      *The District Court Erred by Arbitrarily Restricting Factors Considered in Sentencing to Those Favoring the Prosecution.* .................................. 36

B.      *The Court Violated the First Amendment by Incarcerating Ms. Peters for Non-violent Statements.* ................................................. 37

C.      *The sentence violates the Eighth Amendment.* ................................. 39

D.      *The district court based its sentence in part on a contempt conviction that was later vacated.* ......................................................... 40

**CONCLUSION** ................................................................**41**

# TABLE OF AUTHORITIES

**Cases**

*Baucom v. Martin,* 677 F.2d 1346, 1350-51 (11th Cir. 1982) .................................. 17, 27

*Brown v. Nationsbank Corp.,* 188 F.3d 579, 589 (5th Cir. 1999) ....................................17

*Cassels v. State,* 92 P. 3d 951, 955 (Colo. 2004) ................................................... 19

*Clifton v. Cox,* 549 F.2d 722, 730 (9th Cir. 1977) ..........................................15

*Connecticut v. Marra,* 528 F.Supp. 381, 385 (D.Conn. 1981) ..........................................17

*Counterman v. Colorado,* 600 U.S. at 72-74 ........................................................ 37, 38

*Davis v. Alaska,* 415 U.S. 308, 315-16 (1974)..........................................28

*Ewing v. California,* 538 U.S. 11, 20-21 (2003)...........................................39

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp. 2d 119, 122 (S.D.N.Y. 1999)....27

*Hamling v. United States,* 418 U.S. 87, 117 (1974) ..........................................30

*Havens Realty Corp.* v. *Coleman,* 455 U.S. 363, 373 (1982)...........................................27

*Holliday v. Reg'l Transp. Dist.,* 43 P.3d 676, 681 (Colo. App. 2001) ..............................36

*Holmes v. South Carolina,* 547 U.S. 319, 324 (2006) .......................................23

*Hunter v. Wood,* 209 U.S. 205, 210 (1908) .................................................17

*Idrogo v. People,* 818 P.2d 752, 754 (Colo. 1991)...........................................29

*In re Quarles,* 158 U.S. 532, 536-37 (1895).................................................16

*In re: Neagle,* 135 U.S. 1, 75 (1890)......................................... 14, 15, 16, 17

v

*Irizarry v. Yehia,* 38 F.4th 1282, 1289-92 (10th Cir. 2022)..............................18

*Kentucky v. Long,* 837 F.2d 727, 744 (6th Cir. 1988) ....................................15

*Lacy v. People,* 775 P. 2d 1 (1989) ..........................................................41

*McCoy v. People,* 442 P.3d 379, 382 (Colo. 2019)( ......................................19

*McCulloch v. Maryland,* 17 U.S. 316, 436 (1819) ........................................14

*Morones-Quinones v. Holder,* 591 Fed. Appx. 660, 663 (10th Cir. 2014) .........27

*Morrisey v. Brewer,* 408 U.S. 471, 489 (1972) ............................................36

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 909-11 (1982)...................37

*New York v. Tanella,* 374 F.3d 141, 147 (2d Cir. 2004) .................................15

*Pearson v. People,* 502 P.3d 1003, 1007 (Colo. 2022)...................................29

*People of Interest of R.D.,* 464 P.3d 717, 729 & n. 20, 734 (Colo. 2020) .........38

*People v. Borelli,* 624 P. 2d 900,903 (Colo. App. 1980)................................34

*People v. Buckallew,* 848 P.2d 904, 909 (Colo. 1993) ..................................30

*People v. Elmarr,* 351 P.3d 431, 438 (Colo. 2015).......................................23

*People v. Gomez,* 843 P.2d 1321, 1325 (Colo. 1993).....................................30

*People v. Guenther,* 740 P. 2d 971, 981 (Colo. 1987) ...................................29

*People v. Janousek,* 871 P.2d 1189, 1193 (Colo. 1994) .................................38

*People v. Montoya,* 546 P.3d 605, 616-18 (Colo. 2024) ......................... 26, 38

*People v. Morley,* 725 P.2d 510, 515 (Colo. 1986).......................................27

People v. Rael, 578 P.2d 1067, 1068 (Colo. App. 1978) ...............................................34

*People v. Rojas,* 2022 CO 8, ¶57 (Colo. 2022)....................................................................34

*People v. Tardif,* 433 P.2d 60, 69 (Colo. App. 2017) ......................................................36

*People v. Taylor,* 545 P. 2d 703, (Colo. 1976);.................................................................28

*People v. Vaughan,* 514 P.2d 40, 44-49 (Colo. 1973) ......................................................37

*Quintano v. People,* 105 P.3d 585, 591 (Colo. 2005) ................................................ 23, 36

*Riley v. People,* 266 P.3d 1089, 1094-95 (Colo.2011) ......................................................23

*Rios-Vargas v. People,* 532 P.3d 1206, 1212 (Colo. 2023) .............................................23

*See Mesa v. California,* 489 U.S. 121, 127 (1989) ..........................................................17

*Slaughterhouse Cases,* 83 U.S. 36, 79 (1872) .................................................................16

*Sorrell v. United States,* 287 U.S. 435, 441-42 (1932) ...................................................27

*Springer v. City & Cnty. of Denver,* 13 P.3d 794, 798-99 (Colo. 2000) ...........................11

*Tennessee v. Davis,* 100 U.S. 257, 263 (1879) ......................................................... 14, 15

*Texas v. Kleinert,* 855 F.3d 305, 314-15 (5th Cir. 2017) ................................................15

*United States v. Carll,* 105 U.S. 611, 612-13 (1881) .......................................................30

*United States v. Hathaway,* 318 F.3d 1001, 1009 (10th Cir. 2003) .................................30

*United States v. Lemon,* 723 F.2d 922, 937-38 (D.C. Cir. 1983) .....................................38

*United States v. Russell,* 411 U.S. 423, 436 (1973) ........................................................27

*Wyoming v. Livingston,* 443 F.3d 1211, 1217 (10th Cir. 2006).................................. 14, 15

vii

**Statutes**

C.R.S. §1-1-110(3) ..............................................................................3, 5

C.R.S. §1-13-107(1) ...............................................................................2

C.R.S. §1-13-114......................................................................................2

C.R.S. §16-4-201.5 ..................................................................................4

C.R.S. §18-1-701 ............................................................................. 24, 29

C.R.S. §18-2-201 ..............................................................................2, 22

C.R.S. §18-5-113(1)(b)(I) .................................................................2, 22

C.R.S. §18-5-113(1)(b)(II) .....................................................................22

C.R.S.§18-5-113(1)(e) ............................................................................27

C.R.S. §18-8-306........................................................................... 2, 20, 30

C.R.S. §18-8-404(1) .................................................................................2

**Other Authorities**

Aynes, *On Misreading John Bingham and the Fourteenth Amendment,* 103 YALE L. J. 57, 70-
    73 (1993) .....................................................................................15

C. Calvert, *Counterman v. Colorado: Defining True Threats of Violence under the First*
    *Amendment,* 2023 CATO SUP. CT. REV. 113. ...........................................37

*Election Security: Hearing Before S. Judiciary Comm.*, 115th Cong. (2018) ...........................13

*Federal Law Constraints* at 2 ............................................................11

*Federal Law Constraints on Post-Election "Audits,"* at 2-3 (April 2024)...............................5

GAO-05-956, at 26 (Sept. 21, 2005) ...........................................................................12

*Kill Chain: The Cyber War on America's Elections* ...........................................................13

MIT TECHNOLOGY REVIEW (Sept. 13, 2018) .............................................................13

Rich, *Why "Privileges or Immunities"? An Explanation of the Framers' Intent,* 41 AKRON L.

REV. 1111, 1118 (2009) .......................................................................................15

*Securing the Vote: Protecting American Democracy*, at 9 (2018)...........................................12

### Rules

C.R.E. 106..........................................................................................................26

C.R.E. 401, 402, and 403 ......................................................................................24

### Colorado Election Rules (8 CCR 1505-1)

Rule 20.5.3(b) .....................................................................................................8

### Federal Voting Systems Standards

V.S.S. 1.5.1.........................................................................................................12

V.S.S. 2.2.4.1(h) ..................................................................................................12

V.S.S. 2.2.5.1 .....................................................................................................12

### Constitutional Provisions

Article II, §10 of the Colorado Constitution.................................................................37

U.S. Const. amend. I ...........................................................................................36

U.S. Const. art VI, cl. 2 ................................................................................14

U.S. Const. amend. VII ............................................................................ 36

U.S. Const. amend. XIV, § 1 .............................................................. 15, 36

**Colorado Appellate Rules**

C.A.R. 9(b) ..............................................................................................4

**United States Code**

52 U.S.C. §20701 ........................................................... 3, 17, 26, 27, 32

52 U.S.C. §21081 ...................................................................................5

Civil Rights Act of 1960 .......................................................................11

# ISSUES ON APPEAL

1. Whether the district court erred as a matter of law in denying Ms. Peters'
   motion to dismiss based on her claim of immunity pursuant to the
   Supremacy Clause and the Privileges or Immunities Clause of the U.S.
   Constitution.

2. Whether the evidence was insufficient.

3. Whether the court denied Ms. Peters due process.

   a. Whether the district court deprived Ms. Peters of a meaningful
      opportunity to present a complete defense.

   b. Whether the court erred by refusing to instruct the jury on the statutory
      defense of execution of a public duty, and the federal constitutional
      defense of Supremacy Clause immunity.

   c. Whether Ms. Peters had adequate notice of the charges.

   d. Whether the prosecution misled the jury by stating repeatedly that Ms.
      Peters' conduct caused a "security breach."

   e. Whether the court erred by refusing to hold a hearing to investigate
      allegations of improper juror conduct.

   f. Whether the prosecutor's false statement in rebuttal closing requires a
      new trial.

1

4. Whether the district court's sentence violated the First, Eighth, and Fourteenth Amendments, and whether the sentence was based in part on a contempt conviction that was later vacated by the Court of Appeals.

## STATEMENT OF THE CASE

## A.    NATURE OF THE CASE

Tina Peters, the former Clerk and Recorder of Mesa County, Colorado, appeals her convictions on three felony counts of attempting to influence a public servant by deceit with the intent to alter or affect his or her decision, vote, opinion, or action in violation of C.R.S. §18-8-306, one felony count of conspiring to commit criminal impersonation in violation of C.R.S. §§18-5-113(1)(B)(1) and 18-2-201, one misdemeanor count of official misconduct to obtain a benefit or maliciously harm another in violation of C.R.S. §18-8-404(1), another misdemeanor count of failure to perform her official duty in violation of C.R.S. §1-13-107(1), and a third misdemeanor count of failure to comply with the rules of the Secretary of State ("SOS") in violation of C.R.S. §1-13-114.

This prosecution was brought to punish Ms. Peters for actions she took to protect election records from destruction as she was commanded by the Civil Rights Act of 1960. *See* 52 U.S.C. §20701. Such a prosecution was unlawful *ab initio*, as Ms.

2

Peters, acting as the "chief election official for the county," C.R.S. §1-1-110(3), was immune from state prosecution for her actions taken to comply with that federal statutory duty under the Supremacy and Privileges or Immunities Clauses of the U.S. Constitution. U.S. CONST. art. VI, cl.2; amend. XIV, sec. 1.

The district court compounded this error during the trial by blocking Ms. Peters' efforts to explain her conduct, depriving the jury of evidence that Ms. Peters lacked criminal intent, a centerpiece of her defense. Thus, the district court denied Ms. Peters the most elementary right of any criminal defendant – the right to mount a meaningful defense.

Yet in a sentencing offensive to First Amendment principles, the district court weaponized the very explanation it had barred from the proceedings, identifying Ms. Peters' nonviolent criticism of computer voting as a reason to incarcerate her for nine years [Tr. 10/3/24 99:20-24]. The District Attorney advocated the incredibly harsh sentence to "send a message" to other county clerks [Cf. 4743], who were keenly aware of SOS's persecution of Ms. Peters. [Tr. 10/3/24 31:18 – 33:2]

In this case, the executive branch of state government prosecuted Ms. Peters because her actions exposed illegal features of the computer voting system. Three expert reports analyzed forensic images of the Mesa County election management system (EMS) server hard drive. [Cf 3372-464, 467-634, 635-721]. The reports

3

showed that Mesa County voting system computers can be connected to the internet (which is illegal), the machines contain uncertified software (also illegal), that SOS erased digital election records (also illegal), and that the illegal system should never have been certified.  Under well-established law fairly applied, the charges against Ms. Peters should be dismissed because of her federal immunity, or at the very least, her convictions should be reversed, and she should be released from custody because of gross errors in the proceedings below.

### B.    PROCEDURAL HISTORY

A jury returned guilty verdicts on August 12, 2024, on the felony and misdemeanor charges noted above.  On October 3, 2024, the trial court sentenced Ms. Peters to a total of nine years of incarceration.  This appeal was filed on November 7, 2024.

Ms. Peters filed a Motion for Bond Pending Appeal in the trial court [Cf 5108-5113], which was denied on October 3, 2024. [Cf 5203].  Pursuant to C.A.R. 9(b) and C.R.S. §16-4-201.5, Ms. Peters moved this Court for bond pending appeal, which was denied on December 6, 2024.

## C.    FACTS

Ms. Peters was elected to a four-year term as Clerk and Recorder of Mesa County, Colorado on November 8, 2018, and as such served as the "chief election official for the county." C.R.S. §1-1-110(3). In that capacity, Ms. Peters shouldered the legal duty to enforce the federal election-integrity regime in Mesa County.  52 U.S.C. §21081(a)(voting systems used in the election of federal officers must meet federal requirements). The Justice Department has underscored the personal responsibility of election officials like Ms. Peters to preserve election records: "The Department interprets the Civil Rights Act to require that covered election records be retained either physically by election officials themselves, or under their direct administrative supervision…. This is because the document retention requirements of this federal law place the retention and safekeeping duties squarely on the shoulders of election officers." U.S. Department of Justice, *Federal Law Constraints on Post-Election "Audits,"* at 2-3 (April 2024), *available at* https://www.justice.gov/crt/media/1348586/dl ("*Federal Law Constraints*") (internal quotations omitted).

On April 30, 2021, Ms. Peters' Office received an email from Jessi Romero, SOS voting systems manager, who testified that the email was not an election rule [Tr. 8/1/24 188:22 – 189:5], but simply "guidance from the department for the Covid policy."  [Id. 204:9-10].  The email concerned procedures for a software upgrade of

5

the County's computerized voting system (called "Trusted Build"). [People Ex 17, R. p. 24-25; Admitted Tr 8/1/24 149:21] The email suggested only "authorized" staff from the State, the County, and the software vendor should be present during the installation of the software. Otherwise not defined by rule or statute, "authorized" was construed by Romero to mean "a county employee who was background checked" and worked with the voting system. [Id. 152: 16-21]. Indeed, it was Clerk Peters, not the SOS, who had the authority to determine who was present in the county's facility when "trusted build" was installed. Prosecution witness Stephanie Wenholz admitted that having a member of the public present to observe the trusted build was not a crime. [Tr. 8/5/24 53:20-22].

Representatives of the vendor and SOS informed Ms. Peters that the software installation would delete programs required to retain federal election data on the Mesa County EMS server. [Cf 2712]. Ms. Peters was unwilling to violate federal law by deleting election data.

Ms. Peters asked the Mesa County IT Department to oversee the software modification, but the Department declined because it had no experience or training in the computerized voting system involved. [People Ex 19, R. p. 27, Admitted Tr. 8/2/24 78:21] Ms. Peters then engaged Conan Hayes, a computer consultant with government security clearances who had worked for federal agencies, to oversee the

software modification.  Mr. Hayes merely observed; he did not disrupt the process or interfere with SOS employees. [Tr 8/6/24 79:9-12, 8/7/24 153:1-9].

To preserve digital election records on the Mesa County EMS server, Ms. Peters had Hayes make legal forensic images of hard drive before and after the software modification performed by SOS. Ms. Peters was present and supervised Hayes while he made the forensic images. [Tr 7/30/24 162:22 - 163:13, 8/5/24 227:8-15].  Those images did not disclose the votes of individual voters nor contain any other confidential information. [Tr 7/19/24 52:24-53:7].

The SOS Covid policy was not a rule that required Ms. Peters to disclose Hayes' identity, nor did it override Ms. Peters' authority as Clerk to decide who was present at the software installation. [Tr. 8/1/24. 187:4-7; /7/24 158:17-159:1]. Mr. Hayes' personal security was a concern because of his work on confidential government corruption operations and on the collapse of an international crime organization tied to the Cartels.  [Def Special Record A, R. p. 298, Refused Tr 8/5/24 212:21].

To protect Mr. Hayes' identity, Ms. Peters arranged for another computer contractor, Gerald Wood, to apply for and obtain a Mesa County keycard allowing access to secure areas. [Tr 8/6/24 171:2-20].  Mr. Hayes then used Mr. Wood's keycard with Mr. Wood's consent to enter the room containing the EMS.

7

Election Rule 20.5.3(b) then in effect, allowed Ms. Peters to admit Hayes into the secure area so long as he was supervised by her or elections manager Sandy Brown. At all times when Hayes was present in the secured area, he was supervised by Ms. Peters and Ms. Brown. [Tr 8/5/24 227:8-15].

Ms. Peters made a legal video recording of the trusted build on her cell phone [Tr. 8/5/24 61:9-11]. SOS and Dominion employees who were present did not object to Ms. Peters videotaping the software installation. [Tr 8-6-24 80:6 - 82:1] Moreover, as the custodian of the voting system, the Clerk's office where the EMS was located was in an institutional sense "her" facility. Clerk Peters had final authority as to who could access the area. [Tr. 8/1/24. 187:4-7; /7/24 158:17-159:1].

The forensic images of the EMS hard drive preserved digital election records as required by federal law which would have been lost forever if Ms. Peters and Mr. Hayes had not preserved it. Ms. Peters submitted well-reasoned letters, with copies of the expert reports, to the County Board of Commissioners, the district attorney, and the county attorney, explaining the illegal features of Mesa County's computerized voting system.

> I had these images taken to preserve election records and help determine whether the county should continue to utilize the equipment from this vendor. Because the enclosed report reveals shocking vulnerabilities and defects in the current system, placing my office and other county clerks in legal jeopardy, I am forwarding

8

this to the county attorney and to you so that the county may assess its legal position appropriately. Then, the public must know that its voting systems are fundamentally flawed, illegal, and inherently unreliable.

[Cf 465]

Ms. Peters went on:

[I]t appears that our county's voting system was illegally certified and illegally configured in such a way that "vote totals can easily be changed." We have been assured for years that external intrusions are impossible because these systems are "air gapped," contain no modems, and cannot be accessed over the internet. It turns out that these assurances were false. In fact, the Mesa County voting system alone was found to contain thirty-six (36) wireless devices, and the system was configured to allow "any computer in the world" to connect to our EMS server. For this and other reasons – for example, the experts found uncertified software that had been illegally installed on the EMS server – our system violates the federal voting System Standards that are mandated by Colorado law.

Id.

Additionally, Ms. Peters raised these concerns in various public fora.

## SUMMARY OF THE ARGUMENT

The district court committed many reversible errors before trial, during trial, and at sentencing.

First, the district court erred in denying Ms. Peters' motion to dismiss the indictment based on her claim of immunity pursuant to the Supremacy and the Privileges or Immunities Clauses of the U.S. Constitution.  The actions for which she

9

was charged were reasonably necessary to comply with federal statutes which require county election officials to preserve election records.

Second, the convictions were not supported by sufficient evidence.

Third, the district court deprived Ms. Peters of a meaningful opportunity to present a complete defense and receive a fair trial.

Fourth, during sentencing, the district court violated due process by arbitrarily restricting the factors it would consider to those favoring the prosecution.  It violated Ms. Peters' First Amendment right to free speech by basing its sentence on her non-violent public statements.  Consecutive sentences totaling nine years, for non-violent convictions that arose from a single course of conduct undertaken in Ms. Peters' official capacity as Clerk and Recorder, violated the Eighth Amendment prohibition against cruel and unusual punishment.  The court based its sentence in part on a contempt conviction that was later reversed by another division of this Court.

# ARGUMENT

**ISSUE 1    THE DISTRICT COURT ERRED IN DENYING MS. PETERS'
MOTION TO DISMISS BASED ON IMMUNITY UNDER THE
SUPREMACY AND PRIVILEGES OR IMMUNITIES
CLAUSES.**

<u>Standard of Review:</u>  This argument raises a question of law which this Court

reviews *de novo. Springer v. City & Cnty. of Denver,* 13 P.3d 794, 798-99 (Colo. 2000).

<u>Preservation</u>: Motion to Dismiss [Cf 2892-2909]; Order Denying Motion [Cf 3067]

### A.    The Preservation of Election Records Is a Fundamental Federal Interest Ensuring the Right to Vote.

1. The Civil Rights Act of 1960

protects the right to vote by ensuring that federal elections records remain
available in a form that allows for the Department to investigate and
prosecute both civil and criminal elections matters under federal law....
[T]he detection, investigation, and proof of election crimes – and in many
instances Voting Rights Act violations – often depend[s] on
documentation generated during the voter registration, voting, tabulation,
and election certification processes.

*Federal Law Constraints* at 2.

Both the U.S. Code and the Federal Election Commission's VOTING SYSTEMS

STANDARDS, VOLUME I – PERFORMANCE STANDARDS (2002)("VSS") create legal

regimes preserving "[e]lection audit trails … [that] present a concrete, indestructible

archival record of all system activity related to the vote tally, and are essential for

11

public confidence in the accuracy of the tally, for recounts, and for evidence in the event of criminal or civil litigation. V.S.S. 2.2.5.1.

Accordingly, Congress has commanded that "[a]ll records and papers … relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" must be preserved for 22 months by every election officer. 52 U.S.C. § 20701. "[A] a permanent record of all original audit data that cannot be overridden" must be maintained, V.S.S. 2.2.4.1(h), including "the software required to program, control, and support the equipment that is used to define ballots, to cast and count votes, to report and/or display election results, and to maintain and produce all audit trail information." V.S.S. 1.5.1.

2. This case arose as the American public and federal officials were becoming increasingly concerned that confidence in the machinery of the modern election process to accurately count and record each eligible voter's vote was misplaced, with growing bi-partisan alarm that computer technology is insecure.

As early as 2005, the Government Accountability Office a reported that all electronic voting systems had inherent security problems. GAO-05-956, at 26 (Sept. 21, 2005). In 2018, the National Academy of Sciences recounted the scope of the risks of manipulation of election computer systems. *Securing the Vote: Protecting American Democracy*, at 9 (2018), *available at*

12

https://nap.nationalacademies.org/catalog/25120?securing-the-vote-protecting-american-democracy.  That same year, at MIT, computer science expert J. Alex Halderman used an electronic voting machine programmed with "malicious vote-stealing software" to alter the results of a mock election. MIT TECHNOLOGY REVIEW (Sept. 13, 2018).  Then Senator Kamala Harris told her colleagues, "I actually held a demonstration for my colleagues here at the Capitol where we brought folks who, before our eyes, hacked election machines." *Election Security*: *Hearing Before S. Judiciary Comm.*, 115th Cong. (2018). In 2019, HBO released a documentary, *Kill Chain: The Cyber War on America's Elections*, https://rumble.com/v2okb5a-kill-chain-the-cyber-war-on-americas-elections.html, which demonstrated that any voting system can be hacked. In 2019, Sen. Amy Klobuchar (D-MN) and other Democrats wrote that, "election security experts have noted for years that our nation's election systems and infrastructure are under serious threat." Letter to Michael McCarthy, Chairman, McCarthy Grp. (Dec. 6, 2019).  Most recently, the Clerk and Recorder of Arapahoe County Colorado posted an announcement on her website, which admitted that the Arapahoe County Elections Department had intentionally altered the county's official 2020 Cast Vote Record.  [https://www.arapahoevotes.gov/sites/default/files/2025-05/DOC_Statement_RE_2020_CVR_20250513.pdf].

13

**B.    The Supremacy and the Privileges or Immunities Clauses Immunize Actions Taken to Obey Federal Law.**

The Supremacy Clause, U.S. Const. art VI, cl. 2, entitles an individual to a right not to be tried or punished by a state court for actions taken to comply with a duty imposed by federal law. *In re: Neagle,* 135 U.S. 1, 75 (1890) (An individual acting pursuant to federal law "cannot be guilty of a crime under…[state] law."); *Wyoming v. Livingston,* 443 F.3d 1211, 1217 (10ᵗʰ Cir. 2006) ("[T]he supremacy of federal law precludes the use of prosecutorial power to frustrate the legitimate and reasonable exercise of federal authority."). At bottom, "[t]he States have no power…to retard, impede, burden, or in any manner control [the execution of federal laws]." *McCulloch v. Maryland,* 17 U.S. 316, 436 (1819).

As the Supreme Court warned in *Tennessee v. Davis,* 100 U.S. 257, 263 (1879):

> the general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers. It can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members.

At bottom,

14

> [t]he Supremacy Clause prohibits a state from punishing (1) a
> federal officer; (2) authorized by federal law to perform an act; (3)
> who, in performing the authorized act, did no more than what the
> officer subjectively believed was necessary and proper; and (4) that
> belief was objectively reasonable under the circumstances.

*Texas v. Kleinert,* 855 F.3d 305, 314-15 (5th Cir. 2017) (citing *Neagle,* 135 U.S. at 75

The lack of state court jurisdiction in cases such as Ms. Peters' is well-

established. *E.g., Livingston,* 443 F.3d at 1213; *Kentucky v. Long,* 837 F.2d 727, 744 (6th

Cir. 1988) ("Under *Neagle,* a state court has no jurisdiction…."); *Clifton v. Cox,* 549

F.2d 722, 730 (9th Cir. 1977) (state prosecution was a nullity; states have no power to

determine the extent of federal authority).

Supremacy Clause immunity serves "to avoid requiring a federal officer to run

the gauntlet of standing trial and having to wait until later to have the [immunity] issue

resolved." *New York v. Tanella,* 374 F.3d 141, 147 (2d Cir. 2004). *See also Davis,* 100

U.S. at 263; *Livingston,* 443 F.3d at 1222 (protection against the possibility of a hostile

state forum"); *Long,* 837 F.2d at 750-51 (noting the purpose of the removal statute);

Similarly, the Privileges or Immunities Clause provides: "No State shall make or

enforce any law which shall abridge the privileges or immunities of citizens of the

United States. . . ." Amendment 14, §1, *See* Rich, *Why "Privileges or Immunities"? An*

*Explanation of the Framers' Intent,* 41 Akron L. Rev. 1111, 1118 (2009); Aynes, *On*

*Misreading John Bingham and the Fourteenth Amendment,* 103 Yale L. J. 57, 70-73 (1993).

15

The Clause protects "the right of the citizen of this country … to engage in administering [the national government's] functions." *Slaughterhouse Cases,* 83 U.S. 36, 79 (1872). *See also In re Quarles,* 158 U.S. 532, 536-37 (1895) ("To leave to the several states the prosecution and punishment of conspiracies to oppress citizens of the United States, in performing the duty and exercising the right of assisting to uphold and enforce the laws of the United States, would tend to defeat the independence and the supremacy of the national government.").

### C.    Ms. Peters Is Immune From This State Prosecution.

52 U.S.C. §20701 imposed a federal duty on Ms. Peters, as the chief election official of her County, to preserve records of a federal election for 22 months. This was a **duty** which she "had no liberty to refuse to perform." *In re: Neagle,* 135 U.S. 1, 69.

The actions for which an individual is charged under state law need not be specifically authorized by federal law to be shielded by federal immunity as long as the individual had "an objectively reasonable and well-founded basis to believe that [her] actions were necessary to fulfill [her] duties." *Livingston,* 443 F.3d at 1222. See also *Clifton v. Cox,* 549 F.2d 722, 768 (9th Cir. 1977); *Sowders v. Damron,* 457 F.2d 1182, 1183 (10th Cir. 1972); *Colorado v. Nord,* 377 F.Supp.2d 945, 950 (D. Colo. 2005).

16

In *Neagle,* a deputy marshal assigned to protect a Supreme Court Justice was entitled to federal immunity against a state charge of murder for killing a man whom the deputy marshal mistakenly thought was drawing a knife to attack the Justice. 135 U.S. at 75. A federal marshal was immunized against a state murder charge in *Clifton v. Cox,* even though he made a mistake in judgment and exceeded his express authority. In *Baucom,* 677 F.2d at 1348-49, a federal agent was granted Supremacy Clause immunity to prevent his state prosecution for a state crime of attempted bribery when he was participating in undercover law enforcement activities without express authorization to violate state criminal law.

Supremacy Clause immunity is not limited to federal employees but extends to any individual who acts pursuant to a duty imposed by federal law. *Hunter v. Wood,* 209 U.S. 205, 210 (1908); *Brown v. Nationsbank Corp.,* 188 F.3d 579, 589 (5th Cir. 1999); *Connecticut v. Marra,* 528 F.Supp. 381, 385 (D.Conn. 1981)The determining factor is whether that individual has a federal duty to take some action. *See Mesa v. California,* 489 U.S. 121, 127 (1989). "[F]ederal immunity from state prosecution … extends to any person, including a private citizen like defendant, who acts … pursuant to federal law." *Marra*, 528 F. Supp. at 385.

The district court erroneously denied Ms. Peters immunity by concluding (a) that she was not a federal officer and was not acting at the behest of federal

17

authorities; (b) that the indictment did not charge her with crimes related to actions

necessary to comply with her federal duty to preserve election records; and (c) that

she could have complied with that federal duty without engaging in the deceptive

actions charged in the indictment. [Cf 3067].

In making these rulings, the district court arrogated to itself authority it did not

have; that is, it had no jurisdiction to decide whether federal immunity shielded Ms.

Peters from this prosecution. Moreover, the substance of the district court's decision

was indisputably wrong. It made no effort to justify its erroneous claim that only

some narrow category of "federal officers" was entitled to this immunity given the

unequivocal case law to the contrary. The district court did not even try to explain

away the express federal statutory command to Ms. Peters, to preserve election

records. Contrary to the district court's claim that Ms. Peters could not even

investigate a potential violation of federal law, [Tr 8/5/24 209:10-24], her statutory

duty to preserve election records necessarily included the duty and right to observe

the installation of the software modification which had been ordered by the SOS and

to make the forensic images of the EMS server to determine whether records had

been deleted. Even a private citizen has a right to make copies and to film

government activities. *See Irizarry v. Yehia,* 38 F.4th 1282, 1289-92 (10th Cir. 2022).

18

Ms. Peters soberly treated the data captured on the forensic images, providing the images to experts to analyze what the data disclosed about the tabulation of votes in Mesa County. That work resulted in three voluminous reports submitted to the Board of County Commissioners. [Cf 372-464, 467-634, 635-721].

Ms. Peters is entitled to federal immunity from the state prosecution against her because she had an objectively reasonable and well-founded basis to believe that her actions were necessary to fulfill her duties under federal law.

## ISSUE II.  THE EVIDENCE WAS INSUFFICIENT

Standard of Review:  This Court reviews sufficiency of the evidence claims de *novo*, as if the issue was preserved. *McCoy v. People,* 442 P.3d 379, 382 (Colo. 2019).

Ms. Peters had authority to "authorize" people to be present at the software installation. She was entitled to have anyone she wished – especially someone skilled enough to understand what he was seeing – observe the process.  The prosecution's core argument, once untangled, is their allegation that Hayes was not actually an employee of Peters, though Peters claimed he was.  Why does that matter?  Because as an employee, the prosecution confesses, Hayes would have been fully authorized to participate simply because Peters wanted him there.  Without the core legal reality that Peters could involve Hayes if he were a County employee, the prosecution's entire case of misrepresentation falls apart.

19

**A.    Attempt to Influence A Public Servant C.R.S. §18-8-306**.

**1.    Jessi Romero (Count 1).**  The indictment charged that between April 23 - May 18, 2021, Ms. Peters attempted to influence Jessi Romero, by means of deceit, with intent to alter or affect his decision, vote, opinion, or action, which must be public in nature.  The prosecution established that on May 18, 2021, Sandra Brown, who managed the Mesa County voting system, sent an email to Romero stating that Ms. Brown, Gerald Wood, and Ms. Peters would attend the software installation [ People's Ex18, R. p. 26, admitted Tr 8/1/24 155:20-25].  There is no evidence that Ms. Peters made any false representation to Romero.  Ms. Peters was not copied on the email.

**2.    David Underwood (Count 2).**  The indictment charged that between May 10 - May 19, 2021, Ms. Peters attempted to influence David Underwood, by means of deceit, with intent to alter or affect his decision, vote, opinion, or action, without specifying what decision she attempted to influence.  Mr. Underwood, an IT support person of Mesa County, testified that Ms. Peters asked him to set up a user account for Gerald Wood. [Tr. 8/5/24 92:22-25].  This involved providing Mr. Wood with an email address and a security device called a Yubikey, but the prosecution failed to prove that David Underwood made any decision:

> Q: Who had the decision--the authority to make the decision--to add
> Gerald Wood to the computer, and give him a YubiKey? Did Clerk
> Peters?
> A: Yeah--she made the request.
> Q: She made the decision, correct? Not you.
> A: Yes.
> Q: You were carrying out a task, as a result of that decision. True or
> false?
> A: Correct.

Ms. Peters did not attempt to influence a decision.  She made the decision herself, as was within her authority. Underwood's job was to provide Wood with a login ID and Yubikey, not to decide whom Peters could bring into the secure area.

**3.    Danny Casias (Count 4).**  The indictment charged that on May 25, 2021, Ms. Peters deceitfully attempted to influence an unspecified decision, vote, opinion, or action of Danny Casias.  Mr. Casias testified that during the Trusted Build Ms. Peters introduced a man to him as Gerald Wood who was not Mr. Wood.  [Tr. 8/5/24 167:24-168:4].  Mr. Casias did not testify to any "decision, vote, opinion, or action" that he made as a result of this misidentification of Gerald Wood.

**B.    Conspiracy to Commit Criminal Impersonation (Count 6).**

Ms. Peters was convicted of conspiring to commit criminal impersonation in violation of C.R.S. §18-5-113(1)(b)(I), a class 6 felony, and C.R.S. §18-2-201.  The prosecution's theory was that Ms. Peters subjected Gerald Wood to liability by

allowing Hayes to use Wood's keycard, but the prosecution produced no evidence that Gerald Wood would have been subjected to liability if Wood himself had used the Mesa County keycard to attend the software modification.  With no proof of that essential element of criminal impersonation, the conviction must be vacated.

Both the indictment [Cf. 8] and jury instruction number 16 [Cf. 4452] allege that the defendant "<u>might</u> have subjected" Wood to liability, but that language defines a class 1 misdemeanor set out in C.R.S. §18-5-113(1)(b)(II).  The felony conviction cannot stand, because instruction 16 told the jury to convict of a felony if the prosecution established the elements of a misdemeanor.

### C.    First Degree Official Misconduct (Count 8).

The indictment alleged that between April 23 and August 15, 2021, Ms. Peters acted to obtain a benefit for any person or maliciously cause harm to another, [Cf. 9], but did not identify that benefit or that harm.  No evidence indicated that Ms. Peters intended to obtain a benefit, or that she did obtain a benefit.  There was no evidence that she intended to inflict malicious harm, or that she inflicted malicious harm.  The Count 8 conviction cannot stand.

**ISSUE III.  THE CONVICTIONS SHOULD BE REVERSED BECAUSE
THE DISTRICT COURT DENIED MS. PETERS DUE
PROCESS.**

Standard of Review: Due process violations are reviewed *de novo. Quintano v. People,* 105

P.3d 585, 591 (Colo. 2005).

 **A.** The District Court Deprived Ms. Peters of a Meaningful Opportunity to
Present a Complete Defense**.**

Preservation: 4/11/2024 Motion to Dismiss [Cf 2953-2965]; Tr. 8/1/24

202:13-17; Tr. 8/8/24 266:2-19].

 **1.  The court wrongly excluded evidence of Ms. Peters' intent.**

It is a denial of due process to deprive a criminal defendant of a meaningful

opportunity to present a complete defense, *Holmes v. South Carolina,* 547 U.S. 319, 324

(2006); *Rios-Vargas v. People,* 532 P.3d 1206, 1212 (Colo. 2023), which includes an

opportunity to offer a defendant's theory of the case, including the "totality of the

circumstances related to that theory" that might tend to create doubt about her guilt.

*See Riley v. People,* 266 P.3d 1089, 1094-95 (Colo.2011); *People v. Elmarr,* 351 P.3d 431,

438 (Colo. 2015).

In the proceedings below, the district court repeatedly deprived Ms. Peters of

the chance to present evidence that she had a duty under 52 U.S.C. §20701 to

preserve and protect Mesa County digital election records. [Tr 7/19/24 33:1-5; 33:22

– 34:4].  For example, during the cross-examination of Romero, defense counsel sought to present evidence of Ms. Peters' *mens rea*, to show that she acted to preserve election records.  The court ruled that evidence of Ms. Peters intent was irrelevant [Tr. 8/1/24 201:11-25].

Indeed, applying an erroneous notion of relevance, the court excluded any evidence of the accused's intent, generating repeated misapplications of C.R.E. 401, 402, and 403.

Likewise, the court excluded the text of 52 U.S.C. 20701, as well as direct and cross-examination concerning Ms. Peters' duty under that statute.  [Tr 8/6/24 79:21 - 80:1; 8/8/24 285:1-17, 8/9/24 212:15-25, 214:3 – 216:21,, 340:19 - 341:1]  Evidence of Ms. Peters duty under 52 U.S.C. §20701 was key not only to Ms. Peters' *mens rea,* but to her assertion of the statutory affirmative defense of execution of a public duty. C.R.S. §18-1-701. With such grossly erroneous rulings, the court denied her a fair trial.

Similarly, the court ruled that Ms. Peters would not be allowed to testify to her understanding of Conan Hayes' background as a federal informant, which would have explained to the jury why she believed it was necessary to conceal his identity. [Tr. 8/9/24 180:13-14].

24

The district court excluded evidence which proved that Ms. Peters intended to protect the integrity of the voting system. The court rejected Ms. Peters' letters to the County Commissioners and the three expert reports provided to Ms. Peters by experts who confirmed the unlawful features of the voting system, based on the forensic images made by Ms. Peters. [Cf 372-464, 467-634, 635-721, Tr 7/19/24 33:12-17].

The court excluded testimony of Sherronna Bishop, who would have testified that she, Ms. Peters, and other advisors concluded that Mr. Hayes' identity should be concealed to protect him [Tr 8/8/24 238:6 - 239:1].

The court rejected the Declaration of consultant Conan Hayes, which described his service to federal law enforcement as a confidential informant, his use of alternative identities, his security clearances, and his experience and certifications in cyber operations. [Def Special Record A, R. 298, refused Tr 8/5/24 212:21].

The court excluded an audio recording and transcript of the entire April 23, 2021, meeting in Ms. Peters' office, despite allowing the prosecution to introduce an audio recording of part of the meeting. [Tr 8/8/24 254:4 258:10]. Prosecutors claimed that the conspiracy was "hatched" at the meeting. [Tr. 7/31/24 195:22 – 196:1; Tr. 8/12/24 64:17-25; Id. 106:13-16]. Prosecution witness Stephanie Wenholz, who made the prosecution recording, acknowledged that no conspiracy took place

25

while she was present, but speculated that the conspiracy potentially was formed after she left. [Tr. 8/5/24 51:2-15].  Excluding the full audio recording prevented the jury from hearing evidence of Ms. Peters' intent, which denied her a fair trial.  The ruling also violated the rule of completeness. C.R.E. 106; *People v. Montoya,* 546 P.3d 605, 616-18 (Colo. 2024).

On the issue of *mens rea,* Ms. Peters tried to present evidence that her concerns about computer voting were legitimate.  The prosecution dismissed her concerns as "disinformation."  Prosecution witness David Stahl, the Dominion customer service representative, testified on direct that part of his job was to "combat the disinformation that was out there." [Tr. 8/6/24 13:16-17].  When defense counsel attempted to show on cross-examination that there was legitimate debate, the prosecution objected and the court sustained it. [Tr. 8/6/24 58:12 - 59:21].

## 2. The court erred in ruling that a Clerk was not permitted to investigate the destruction of election records.

The court rejected Ms. Peters' argument that she was allowed to use deception in engaging a consultant, Mr. Hayes, to assist her efforts to fulfill her federal duty to preserve election records. [Tr 8/5/24 209:11-20, 8/9/24 357:10-17].  The law has long permitted the use of deception to ferret out unlawful behavior. *See United States v. Russell,* 411 U.S. 423, 436 (1973) (deceit often the only practicable way to uncover

26

unlawful activity); *Sorrell v. United States,* 287 U.S. 435, 441-42 (1932) ("Artifice and

stratagem may be employed to catch those engaged in criminal enterprises….");

*Morones-Quinones v. Holder,* 591 Fed. Appx. 660, 663 (10th Cir. 2014) (C.R.S.§18-5-

113(1)(e) ("proscribes only 'false impersonations undertaken to accomplish *unlawful*

purposes.'"); *People v. Morley,* 725 P.2d 510, 515 (Colo. 1986) (*en banc*)

("[G]overnmental activity in the pursuit of crime 'is not confined to behavior suitable

for the drawing room.'"); *Baucom v. Martin,* 677 F.2d 1346, 1350-51 (11th Cir.

1982)(undercover agent entitled to Supremacy Clause immunity from violation of

state bribery statute). Indeed, the use of deception to uncover illegal activity is

permitted to be employed by individuals other than traditional law enforcement

officers and undercover agents. *Havens Realty Corp.* v. *Coleman,* 455 U.S. 363, 373

(1982) (Private testers posing as potential buyers or renters for an investigation of

racial discrimination permitted to sue.); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 82

F.Supp. 2d 119, 122 (S.D.N.Y. 1999) (private investigators posing as consumers

deemed engaged in an accepted investigative technique).

### 3. The court erred in excluding evidence that prosecution witnesses were biased and had motives to conceal relevant information.

Evidence of witness bias, prejudice, or motive, including extrinsic evidence, is

generally admissible. *People v. Taylor,* 545 P. 2d 703, (Colo. 1976) (en banc); *Davis v.*

27

*Alaska*, 415 U.S. 308, 315-16 (1974) (6th Amendment right of confrontation allows

cross examination of prosecution witness as to bias and motive, and impeachment).

Here, emails exchanged between Dominion programmers and prosecution

witnesses Romero and Casias showed that Dominion programmers, located in other

countries, accessed the Colorado voting system in 2019 and during the 2020 primary

election while votes were being tabulated, and made on-line changes to the software.

Connecting to the internet during an election is illegal.  Defendant's theory was that

Dominion and the SOS had a motive to install new software in 2021, which would

erase the evidence of this unlawful on-line manipulation in all 62 counties that used

Dominion software.  The court barred defense counsel from cross-examining Romero

or Casias about this scheme, a clear denial of Ms. Peters' Sixth Amendment right of

confrontation.  [Tr 8/1/24 201:11-25].

The court likewise granted Dominion's motion to quash Defendant's subpoena

to Dominion vice president Mike Frontera to cross-examine him about collusion

between Dominion, SOS, and law enforcement officials to discredit Ms. Peters by

prosecuting her, as shown by a Dominion email [sealed exhibit at Cf. 5260].  [Tr.

8/7/24 35:20].

28

**B.    The district court erred by refusing defense instructions on the affirmative defenses of execution of a public duty, and of federal constitutional immunity.**

<u>Preservation:</u> Defendant's Tendered Jury Instructions [Cf 4371-4383], Revised

Accepted Jury Instructions [Cf 4434-4468].

The trial court has a duty to correctly instruct the jury on all matters of law for

which there is sufficient evidence to support giving instructions.  *Cassels v. State,* 92 P.

3d 951, 955 (Colo. 2004).  When considering whether a defendant is entitled to

requested instructions, the court must consider evidence in the light most favorable to

the defendant. *Id.*

Ms. Peters tendered an instruction on the statutory affirmative defense

execution-of-a-public-duty, C.R.S. §18-1-701, which the court denied. [Tr 8/9/24

355:14 - 357:9] Whether there was sufficient evidence to support the instruction is

reviewed *de novo. Pearson v. People,* 502 P.3d 1003, 1007 (Colo. 2022). "[A]ny evidence

tending to establish the defense" can support a request for an instruction. *Idrogo v.

People,* 818 P.2d 752, 754 (Colo. 1991). The text of the federal election-records-

preservation statute, 52 U.S.C. §20701, expressly required election officials like Ms.

Peters to preserve election records. No further evidence was necessary to entitle her

to the requested instruction.

29

The court similarly erred in rejecting Ms. Peters' instruction [Cf 4375-76] on
the affirmative defense of Supremacy Clause immunity [Id. 369:20 - 371:22], which
shielded from state prosecution her actions to comply with her duty under 52 U.S.C.
§20701.  Under *People v. Guenther,* 740 P. 2d 971, 981 (Colo. 1987), if the trial court
denies the defendant's pretrial motion to dismiss based on immunity (which it did at
Cf 3067), then defendant is entitled to an affirmative defense instruction at trial.

### C.    The District Court Violated Ms. Peters' Due Process Right to Adequate Notice of the Charges Against Her.

Preservation: Brief in Support of Motion to Dismiss [Cf 2686-2690]; DENIED: [Cf
2913-2918]; Motion to Reconsider [Cf 2927-2931]; DENIED: [Cf 2947-5308]

The district erred in denying Ms. Peters' motion to dismiss the indictment for
failure to provide her with adequate notice of each element of every charge "without
any uncertainty or ambiguity." *See Hamling v. United States,* 418 U.S. 87, 117 (1974);
*People v. Gomez,* 843 P.2d 1321, 1325 (Colo. 1993) (adequate notice serves to prevent
arbitrary treatment by prosecutors); *United States v. Carll,* 105 U.S. 611, 612-13 (1881);
*United States v. Hathaway,* 318 F.3d 1001, 1009 (10th Cir. 2003); *People v. Buckallew,* 848
P.2d 904, 909 (Colo. 1993).. Ms. Peters was convicted on three counts of violating
C.R.S. § 18-8-306 (attempting to influence a public servant in order to "alter or affect
the public servant's decision, vote, opinion, or action"). Two of those counts involved

30

employees of the Colorado Department of State (Counts 1 and 4). [See Indictment,

Cf 7-8] Another count (Count 2) involved an employee of Mesa County [Cf 7]. Each

count failed to identify the essential element of the "decision, vote, opinion, or

action" that Ms. Peters was allegedly trying to influence. By not clearly and

unambiguously stating "the essential facts which constitute the offense," the Peters

indictment fell far below the rudimentary requirements of due process.

### D.    Prosecutors misled the jury by stating falsely that Ms. Peters caused a "security breach."

Prosecutors repeatedly told the jury that Ms. Peters caused a "security breach"

because her iPhone contained video that included BIOS passwords that later appeared

on the internet with the passwords redacted.  [Tr 7/31/24 191:11 - 192:1, 8/1/24

32:25 - 34:18, 53:17-25, 130:24 - 131:14, 162:18 –165:18, 8/5/24 175:6-22, 195:23 -

196:3, 228:14-22, 8/6/24 109:5-20, 8/8/24 142:7 - 143:18, 8/12/24 57:13-19].  While

there was no evidence that Ms. Peters was responsible for the online publication,

prosecutors failed to tell the jury that the BIOS passwords were partially redacted and

thus useless to a hacker.  They also failed to tell the jury that a hacker, even if he

obtained the complete unredacted BIOS passwords, would also need the Windows

operating system passwords to breach the system.

31

The genesis of the criminal investigation case was an internet posting on August 2, 2021. Jessi Romero testified that Gateway Pundit published a video and a screenshot of a spreadsheet. Romero claimed that he identified Mesa County BIOS passwords on the spreadsheet [Tr. 8/1/24:163:15 – 164:6]. Either Romero was mistaken, or he willfully testified falsely. The Court can take judicial notice that the Gateway Pundit website does not contain the spreadsheet that Romero claimed he saw. The Court can take judicial notice that on August 2, 2021, Telegram published a screenshot containing what appear to be partially redacted passwords, which would be useless to a hacker. https://t.me/CodeMonkeyZ/975.

Prosecutors never showed the jury the redacted spreadsheet image that appeared on the internet. Instead, prosecutors showed the jury Exhibit 68, a screenshot taken by DA investigator Cannon from Ms. Peters' phone [R. 358, admitted Tr. 8/8/24 185:3-10]. Exhibit 68 showed unredacted BIOS passwords, but those unredacted passwords never appeared on the internet. The jury was left with the false impression that complete BIOS passwords were published on the internet, and that Ms. Peters was responsible.

Prosecutors led the jury to believe that the release of Mesa County BIOS passwords was comparable to the life-threatening emergency of the Appollo 13 mission [Tr. 8/1/24 165:10-18].

32

After the trial, it was discovered that from June through October 24, 2024,
while votes were being counted during both the primary and the general election, the
Colorado Secretary of State published complete unredacted BIOS passwords for 34 of
Colorado's 64 counties on its website. After the passwords were discovered,
Governor Jared Polis and Secretary Griswold issued a joint statement on November
1, 2024, that included the following:

> Colorado elections include many layers of security. The passwords that were
> improperly disclosed were one of two passwords needed in combination to
> make changes to a voting system and can only be used with in-person physical
> access.
>
> https://www.sos.state.co.us/pubs/newsRoom/pressReleases//2024/PR20241

101Passwords.html  In an October 29, news release, Secretary Griswold stated:

> There are two unique passwords for every election equipment component,
> which are kept in separate places and held by different parties.
>
> https://www.sos.state.co.us/pubs/newsRoom/pressReleases/2024/PR202410

29Passwords.html

Although the prosecutors in Ms. Peters' case were aware of these security
protections, they repeatedly told the jury that the redacted passwords published
without her knowledge constituted **a security breach** for which she was legally
responsible.  The statements were not only false, they violated the court's pretrial

33

order excluding 404(b) evidence [Tr. 7/19/24 45:1-3], which requires a new trial.

*People v. Rojas,* 2022 CO 8, ¶57 (Colo. 2022).

### E.    The District Court Erred by Refusing to Hold a Hearing Investigating Allegations of Improper Juror Conduct.

Preservation: Motion [Cf 4700-4702], DENIED: [Cf 4703-4704]

In an interview after the trial by a private investigator retained by Ms. Peters'

legal team [Cf 4718-4720], a juror said she discovered that the telephone line at her

business had been cut during the first week of trial, costing her $4,000. She believed

that she was being targeted by supporters of Ms. Peters. [Cf 4733-4734]. There is no

evidence that the juror ever disclosed her obvious bias to the court or other jurors

before she voted to convict Ms. Peters.

In a clear abuse of discretion, the district court denied the defense request for a

post-trial hearing to determine if the juror's bias affected the verdict. [Cf 4700-4704].

*People v. Borelli*, 624 P. 2d 900,903 (Colo. App. 1980)(discovery of juror misconduct

after the trial may require new trial); *People v. Rael*, 578 P.2d 1067, 1068 (Colo. App.

1978)(same). Without a hearing, there was no way to determine if the juror's bias

affected the verdict.

**F.    The Court erred by ruling that the prosecutor's false statement in
rebuttal closing argument was harmless.**

<u>Preservation:</u> Cf. 4567.

During rebuttal closing, the prosecutor told the jury that during the April 23,
2021 meeting in Ms. Peters' office Dr. Frank told Ms. Peters that it would be illegal
for him to attend the trusted build:

> Let's talk about the beginning of this scheme. April 23rd Dr.
> Frank says to the Defendant, wouldn't it be a feather in your cap
> to reveal all this fraud? And she's like, you know what? I'm
> gonna go out on a limb. Let me invite you into the trusted build.
> And he's like, whoa, whoa, whoa. <u>That would be illegal but I have
> the best guy in the country</u>.

[Tr. 8/12/24 104:9-14 (underline added].

The jury understood that (1) it would be illegal to have an observer at the
Trusted Build, and (2) notwithstanding that it would be illegal, Dr. Frank would
supply "the best guy in the Country" to perform the illegal act. The prosecutor thus
deceitfully led the jury to believe that Ms. Peters knew that having Hayes present was
illegal, and despite knowing it was illegal, she intentionally brought Hayes into the
software installation.  The prosecutor's untruth annihilated the defense argument that
Ms. Peters believed that having Conan Hayes present during the software installation

was legal. Such plain error meets the standard of *People v. Tardif*, 433 P.2d 60, 69

(Colo. App. 2017), and requires a new trial.

**ISSUE IV.   THE DISTRICT COURT VIOLATED THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS IN SENTENCING MS. PETERS TO NINE YEARS INCARCERATION FOR NONVIOLENT CRIMES.**

Standard of Review:  This Court reviews constitutional violations *de novo. Quintano v. People,* 105 P.3d 585, 591 (Colo. 2005); *Holliday v. Reg'l Transp. Dist.*, 43 P.3d 676, 681

(Colo. App. 2001).

**A.    The District Court Erred by Arbitrarily Restricting Factors Considered in Sentencing to Those Favoring the Prosecution.**

In sentencing Ms. Peters, the district court violated her right to due process by

arbitrarily restricting the factors to be considered in sentencing to reach a

predetermined result, a striking violation of the district court's duty to act in a "neutral

and detached" manner. *Morrisey v. Brewer,* 408 U.S. 471, 489 (1972).

The court announced that Ms. Peters should be severely punished for

expressing her concern that computerized voting systems are unreliable and subject to

manipulation. There was no evidence that her opinion was false (especially in light of

the three expert reports she presented to the County Board), much less that it

constituted a threat to anyone or "undermin[ed] the democratic process." [Tr

36

10/3/24 99:20-24] The judge demonstrated an extraordinary animus – hardly "neutral and detached" --that precluded an evenhanded and impartial sentencing.  His characterization of Ms. Peters as a "charlatan" who "cannot help but lie as easy as it is for you to breathe" disregarded the proffered evidence of voting manipulation discovered in the 2020 election in Williamson County, Tennessee under circumstances similar to what occurred Mesa County. [Id 18-19].  Ignoring Ms. Peters' insistence that her actions were compelled by a duty imposed by federal statute, the court stated: "You betrayed your oath for no one other than you."  [10/3/24 99:19-20].  The imposition of a nine-year sentence for non-violent offenses on a 69-year-old woman with no history of criminal activity without considering the factors that motivated her actions was a violation of Ms. Peters' most fundamental right to fairness and due process.

### B. The court violated the First Amendment by incarcerating Ms. Peters for non-violent statements.

Government may not prohibit or punish speech unless it is likely to produce violence or lawless action. *See Counterman v. Colorado,* 600 U.S. at 72-74; *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 909-11 (1982); *People v. Vaughan,* 514 P.2d 40, 44-49 (Colo. 1973). Colorado courts have been resolute in permitting the withdrawal of First Amendment protections only from proven serious expressions of an intention to

37

inflict bodily injury or take the life of an individual. *People of Interest of R.D.,* 464 P.3d 717, 729 & n. 20, 734 (Colo. 2020); *People v. Janousek,* 871 P.2d 1189, 1193 (Colo. 1994). *See generally* C. Calvert, *Counterman v. Colorado: Defining True Threats of Violence under the First Amendment,* 2023 CATO SUP. CT. REV. 113. The trial court's reliance on Ms. Peters' protected speech as grounds for incarceration violated Free Speech Clause of the First Amendment to the U.S. Constitution. *United States v. Lemon,* 723 F.2d 922, 937-38 (D.C. Cir. 1983)(citing cases), and Article II, §10 of the Colorado Constitution.

A reason asserted for the district court's sentencing decision was its conclusion that Ms. Peters was in some way dishonest about the risk associated with computer voting. [Tr 10/3/24 98:8-12; 100:4-18] Strikingly, the court did not address, much less rebut, the three expert reports Ms. Peters submitted to the County Board supporting her concern, or the broader public debate about the reliability of computer voting. Calling her opinion "dishonest" in that context exposed the depth of the district court's hostility and ignorance, an abuse of its discretion that was a mistake of fact and a misapplication of the law. *See People v. Montoya,* 546 P.3d 605, 616-17 (Colo. 2024).

**C.  The sentence violates the Eighth Amendment.**

The Eighth Amendment, which forbids cruel and unusual punishments, prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime.  *Ewing v. California*, 538 U.S. 11, 20-21 (2003).  This is such a case.  Ms. Peters did not threaten community safety, or cause bodily harm or property damage.

Ms. Peters is 69 years of age and resided in Mesa County for 20 years.  The presentence investigation confirmed that she is probation eligible, employed, and owns her home.  Prior to current employment, she served as County Clerk and Recorder.  Before winning election to that office, she and her late husband of 35 years operated a construction business.  Prior to that, she worked as a flight attendant.  She is the gold star mother of a Navy SEAL who died tragically on Memorial Day, 2017. Studies published by the National Institute of Corrections and the Journal of Gerontological Nursing show that persons who are incarcerated above age 55 suffer accelerated aging and die more rapidly.[1]

---

[1]  https://pmc.ncbi.nlm.nih.gov/articles/PMC10129364/

39

**D.  The district court based its sentence in part on a contempt
conviction that was later vacated.**

On February 7, 2022, Ms. Peters attended a pretrial hearing for a co-defendant,
Belinda Knisley.  The district attorney, Dan Rubinstein, personally accused Ms. Peters
in open court of recording the hearing on her iPad. [Cf 4912:7-8].  She denied using
her iPad to record the proceedings. [Id.16-17]. The district attorney brought a
contempt proceeding based on allegations that Ms. Peters recorded part of the judicial
proceeding on her iPad and then lied to Judge Barrett when she denied it.  In his
deposition, the district attorney admitted that he had "no idea" whether the iPad was
recording or not. [Cf 4914:14-15].  On February 8, 2022 the district attorney obtained
a warrant to seize the iPad.  The government kept the iPad for 15 months, but never
searched it to see if it contained a recording of the judicial proceeding.  After the
contempt hearing, the government returned the iPad to Appellant's counsel, who
submitted the iPad to forensic experts.  The experts examined the iPad, and
determined that it contained no recording of a judicial proceeding on February 7,
2022, and that no such recording had been deleted from the iPad. [Cf 4931-4935].  A
separate division of this Court vacated the contempt conviction for insufficient
evidence. [2023CA1073, 1/30/25].

40

The district court considered the contempt conviction in sentencing Ms. Peters to incarceration. [Tr. 10/3/21 68:7-25]. Because the court based its sentence in part on a void conviction, Ms. Peters is entitled to a new sentencing hearing. *Lacy v. People,* 775 P. 2d 1 (1989).

## CONCLUSION

For the foregoing reasons, this Court should vacate the convictions of Ms. Peters, and

A. dismiss the case on the ground that Ms. Peters is immune from this prosecution under the Supremacy and Privilege or Immunities Clauses of the U.S. Constitution, or

B. alternatively, remand the case for new trial and proceedings consistent with this Court's ruling; and

C. order any proceedings on remand be conducted by a different judge.

Respectfully Submitted May 30, 2025.  JOHN CASE, P.C.
Co-Counsel for Appellant
*s/ John Case*
John Case, #2431
*s/ Patrick M. McSweeney*
Patrick M. McSweeney, Pro Hac Vice
*s/ Robert Cynkar*
Robert Cynkar, Pro Hac Vice

41

<u>CERTIFICATE OF SERVICE</u>

I certify that, on May 30, 2025, a copy of this Appellant's Second Amended Opening Brief was electronically served through Colorado Courts E-Filing on opposing counsel of record.

<u>*s/ John Case*</u>