IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00425-STV

**TINA M. PETERS,**

Petitioner,

v.

**MOSES "ANDRE" STANCIL**, in his official capacity as the Executive Director of the Colorado Department of corrections, and
**PHILIP J. WEISER**, in his official capacity as Attorney General of the State of Colorado,

Respondents.

---

**PETITIONER'S RESPONSE TO RESPONDENT'S
SUPPLEMENTAL BRIEF REGARDING JURISDICTION**

---

Petitioner, Tina M. Peters, submits the following brief pursuant to the Court's July 22, 2025, Order (ECF No. 58) and in response to the brief filed by Respondents on August 11, 2025. ECF No. 62:

**PROCEDURAL BACKGROUND**

Petitioner filed her Application for a Writ of Habeas Corpus in this Court on February 7, 2025. ECF No. 1. On February 11, 2025, the Court ordered the filing of a Pre-Answer Response. ECF No. 5. Over the objection of Petitioner, the Court granted Respondents' motion for a 21-day extension to the deadline for filing their Pre-Answer Response on March 2, 2025. ECF No. 11. Respondents filed their Pre-Answer Response on April 2, 2025, without asserting that the Court abstain from exercising its jurisdiction to decide Petitioner's claim based on the doctrine

1

established in *Younger v. Harris,* 401 U.S. 37 (1971). ECF No. 25. On July 18, 2025,

Respondents filed supplemental authority (ECF No. 57) stating: "In the course of preparing for

oral argument, undersigned counsel became aware that *Younger v. Harris…*is relevant to the

discussion of exhaustion." Respondents' Supplemental Brief Regarding Jurisdiction, which was

filed on August 11, 2025, relied primarily on the *Younger* doctrine in requesting that the Court

abstain from exercising its jurisdiction in this proceeding. ECF No. 62 at 6.

Respondents also incorrectly contend that the Court lacks jurisdiction over Petitioner's

claim because it is not cognizable in a federal habeas corpus action. Doc. 62 at 7.

## FACTUAL BACKGROUND

A. Respondents' Supplemental Brief summarizes what they consider to be the "relevant

facts." *See* Supp.Resp.Br. at 2. However, that summary is nothing more than a tendentious

exercise that avoids the relevant facts in order to prejudice Mrs. Peters before this Court.

Respondents' summary fails to capture the caustic and unrestrained language by which the

district judge characterized Mrs. Peters' speech to justify denying her bail pending appeal.

According to the state court district judge, Mrs. Peters' words made her dangerous:

> [Y]ou are a charlatan and **you cannot help but lie** as easy as it is for you to
> breathe. You betrayed your oath for no one other than you. And this is what
> makes **Mrs. Peters such a danger to our community. It's the position she
> held that has provided her the pulpit from which she can preach these lies,
> the undermining of our democratic process, the undermining of the belief
> and confidence in our election systems.**

Appendix ECF No. 2 at 99:18-24 (emphases added).

> So the damage that is caused and continue to be caused is just as bad, if not
> worse, than the physical violence that this court sees on an all too regular basis.
> **And it's particularly damaging when those words come from someone who
> holds a position of influence like you. Every effort to undermine the
> integrity of our elections and the public's trust in our institutions has been
> made by you. You've done it from that lectern.** The voting public provided

2

you with everything you've done has been to retain control influence. The damage is immeasurable. And every time it gets refuted, every time it's shown to be false, just another tale is weaved.

ECF No. 2 at 100:4-14 (emphasis added).

From these characterizations, Respondents portray as a relevant fact the notion that Judge Barrett denied bond because Mrs. Peters "believed that she was above the law," and "that she used her position to commit crimes for the purpose of promoting allegations of election fraud, which benefited her personally." Resp.Supp.Br. at 2. Not one shred of evidence supports this portrayal of Mrs. Peters' speech by the district judge, now echoed here by the Respondents.

Especially shameful was the contribution of District Attorney Daniel Rubinstein to this charade. On February 7, 2022, Mrs. Peters attended a pre-trial hearing for a co-defendant before the same district judge presiding over her case. Mr. Rubinstein claimed *he* observed her improperly recording the hearing on her iPad, which she denied. Mr. Rubinstein then brought a contempt proceeding against Mrs. Peters for supposedly making the recording and lying to the district judge about it. Yet in his deposition for the proceeding, Mr. Rubinstein admitted, "I have no idea if it was recording or not." ECF No. 24-3 at 2:14-15. At the contempt trial, the district judge refused to allow the defense to examine the iPad to see if any recording of the hearing was in fact there. ECF No. 24-4 at 4:19-20. After the judge found Mrs. Peters in contempt, the iPad was returned to Mrs. Peters' counsel, who had it examined by digital experts. Those experts determined that the iPad contained no recording of the hearing and no recording of the hearing had been deleted. Archer Hall Report, ECF No. 24-5 at 2. So Mrs. Peters was telling the truth all along.

Even in the face of that report, Mr. Rubinstein continued to claim that Mrs. Peters had made the recording and lied to the district judge, arguing at sentencing that her contempt

3

conviction was another justification for her incarceration. On December 19, 2024, the Court of Appeals vacated Mrs. Peters' contempt conviction because the evidence was insufficient. ECF No. 24-6. After that reversal, Mr. Rubinstein did not regret his actions because *his* lie about Mrs. Peters' supposed contempt served to tarnish Mrs. Peters' honesty at the proceeding at which she was sentenced and bond pending appeal was denied. As Mr. Rubinstein told a journalist, "What was important about the contempt action being pursued was the effect that an additional finding of Ms. Peters' dishonesty would have on her sentences in the elections case." ECF No. 24-7 at 5.

B. The district judge's rant purporting to justify denial of an appeal bond is exposed as even more unhinged from anything beyond his hostility to Mrs. Peters when Mrs. Peters' actual conduct and words are examined.

The substantive controversies at the heart of Mrs. Peters' state prosecution center on her legal duty to preserve digital election records and have a qualified expert oversee a purported software "upgrade" mandated by the Secretary of State that would erase election records in violation of 52 U.S.C. § 20701. Mrs. Peters' performance of her federal duty to preserve these records by making forensic images of the Election Management System (EMS) server hard drive resulted in three detailed reports prepared by cybersecurity experts she submitted to the Board of County Commissioners, district attorney, and county attorney explaining the illegal features of the County's computerized election system. *See* ECF No. 2 at 253, 336, 480.

Based on the extensive analysis of three cybersecurity experts of the forensic images of the Mesa County EMS hard drive Mrs. Peters secured – analyses contained in reports Mrs. Peters submitted to the Board of County Commissioners, *id.* – she expressed grave concern about the illegal features of the voting system used in Mesa County. As Mrs. Peters explained in transmitting the second report to the recipients:

I had these images taken to preserve election records and help determine whether
the county should continue to utilize the equipment from this vendor. Because the
enclosed report reveals shocking vulnerabilities and defects in the current system,
planning my office and other county clerks in legal jeopardy, I am forwarding this
to the county attorney and to you so that the county may assess its legal position
appropriately. Then, the public must know that its voting systems are
fundamentally flawed, illegal, and inherently unreliable.

ECF No. 2 at 335.

Mrs. Peters went on:

[I]t appears that our county's voting system was illegally certified and illegally
configured in such a way that "vote totals can easily be changed." We have been
assured for years that external intrusions are impossible because these systems are
"air gapped," contain no modems, and cannot be accessed over the internet. It turns
out that these assurances were false. In fact, the Mesa County voting system alone
was found to contain thirty-six (36) wireless devices, and the system was
configured to allow "any computer in the world" to connect to our EMS server. For
this and other reasons – for example, the experts found uncertified software that
had been illegally installed on the EMS server – our system violates the federal
voting System Standards that are mandated by Colorado law.

*Id.* Additionally, Mrs. Peters raised these concerns in various public fora.

The district judge had no evidence on which to base his claim that such statements were

"lies." Indeed, the district judge had improperly barred from her trial any evidence from Mrs.

Peters explaining her reasons for her conduct. Just as the district judge committed reversible

error by preventing the jury from hearing Mrs. Peters' defense, he paradoxically created a record

so limited that he could not possibly have any basis to characterize her speech as he did.

Far from being "just another tale" being "weaved" by Mrs. Peters, her documented

concerns about the illegal features of the Mesa County voting system were well within the

mainstream of a long-standing, legitimate public debate about the reliability of computerized

voting systems. *See, e.g.,* GAO, *Federal Efforts to Improve Security and Reliability of Electronic*

*Voting Systems are Under Way, but Key Activities Need to Be Completed,* GAO-05-956, at 26

(Sept. 21, 2005); The National Academies of Sciences, Engineering, and Medicine, SECURING THE VOTE: PROTECTING AMERICAN DEMOCRACY, at 9 , 86-88, 91 (2018), *available at* https://nap.nationalacademies.org/catalog/25120?securing-the-vote-protecting-american-democracy; Charlotte Jee, *How to hack an election-and what states should do to prevent fake votes*, MIT TECHNOLOGY REVIEW (Sept. 13, 2018).

In 2019, U.S. Senator Amy Klobuchar (D-MN), along with several of her Democratic colleagues, warned:

> Election security experts have noted for years that our nation's election systems and infrastructure are under serious threat… researchers recently uncovered previously undisclosed vulnerabilities… these problems threaten the integrity of our elections and demonstrate the importance of election systems that are strong, durable, and not vulnerable to attack.

Letter from Sens. Amy Klobuchar (D-MN), Elizabeth Warren (D-MA), Ron Wyden (D- OR) and Rep. Mark Pocan (D-WI) to Michael McCarthy, Chairman, McCarthy Grp. (Dec. 6, 2019).

The vulnerability of electronic voting systems to hacking and manipulation has also been the subject of litigation. In one of the most thorough judicial analyses of the issue, in *Curling v. Raffensperger*, U.S. District Judge Amy Totenberg received testimony from several leading cyber experts on the vulnerabilities of Dominion computer election equipment (the same equipment used in Mesa County).  In her October 11, 2020, opinion, Judge Totenberg stated that

> [a] broad consensus now exists among the nation's cybersecurity experts recognizing the capacity for the unobserved injection of malware into computer systems to circumvent and access key codes and hash values to generate fraudulent codes and data.

493 F.Supp.3d 1264, 1280 (N. D. Ga. 2020).  Her opinion went on to conclude that "[t]he Plaintiffs' national cybersecurity experts convincingly present evidence that this is not a question of 'might this actually happen?'---but 'when it will happen." *Id.,* at 1342.

Moreover, the clerk of Williamson County, Tennessee, found an anomaly in the software supplied by the same vendor used in Mesa, but in that case, the Tennessee Secretary of State and the U.S. Election Assistance Commission conducted an investigation in which the vendor disclosed that its software caused an inaccurate vote tally. ECF No. 2 at 623-627.

At bottom, the district judge's express rationale for denying Mrs. Peters an appeal bond is revealed as nothing more than a harangue untethered to any facts.

C. While Respondents point to Mrs. Peters' supposedly "deceptive conduct" and "promoting allegations of election fraud" to benefit herself as justifications for the denial of the appeal bond, Resp.Supp.Br. at 2, they fail to mention the key fact, so evident in the passages quoted above, that the district judge denied her an appeal bond based on his unsupported mischaracterizations of her speech, and on speech that he had no evidence was in any way a danger to anyone. As he put it, "[P]rison is for those folks where we send people who are a danger to all of us, whether it be *by the pen* or the sword or *the word of mouth*." ECF No. 2 at 101: 14-16 (emphases added). And that preposterous explanation by the district judge surely is a fact relevant to Mrs. Peters' contention that she was denied an appeal bond because of a gross violation of her First Amendment rights.

## ARGUMENT

### I. This Court Has Jurisdiction.

A. Federal habeas corpus on behalf of an individual in state custody provides a remedy to redress violations of federal constitutional rights where the claim was adjudicated by a State court in a decision that was contrary to clearly established law, as determined by the U.S. Supreme Court. 28 U.S.C. §2254(d)(1).

> There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law.

*Harris v. Nelson,* 394 U.S. 286, 292 (1969). "The leading purpose of federal habeas review is to 'ensur[e] that state courts conduct criminal proceedings in accordance with the Constitution." *Graham v. Collins,* 506 U.S. 461,467 (1993). *See also Department of Homeland Security v. Thuraissigiam,* 591 U.S. 103, 117 (2020) ("The writ simply provided a means of contesting the lawfulness of restraint and securing release."). Although "[a] federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v, Harris,* 465 U.S. 37, 41 (1984), it must do so when a petitioner is in custody in violation of his or her federal constitutional rights. *Munaf v. Geren,* 553 U.S. 674, 693 (2008).

Title 28 U.S.C. § 2254(a), the statutory expression of this Court's jurisdiction over applications for the "Great Writ," provides that this Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws … of the United States." The statute does not limit the type of custody subject to habeas corpus.

While there is no freestanding federal constitutional right to bail pending appeal, once a state has made provision for bail pending appeal, the determination of a person's bail status may not infringe on any of the rights secured by the Constitution, and the writ of habeas corpus has long been recognized as providing relief for a victim of such unconstitutional incarceration, including bail pending appeal. *See, e.g., Petition of Johnson*, 72 S. Ct. 1028, 1030 (1952) ("Habeas corpus, the traditional writ for testing the lawfulness of a person's detention, … is a proper means for obtaining bail by a court or a judge not responsible for committing the prisoner,

as Chief Justice Marshall said in *Ex parte Bollman*."); *Armengau v. Bradley*, 2018 WL 4008371, at *2 (6th Cir. Mar. 22, 2018) ("[I]f a State makes provisions for bail pending appeal, it may not deny it arbitrarily or unreasonably."); *United States v. Lemon*, 723 F.2d 922, 938 & n.47 (D.C. Cir. 1983) ("A sentence based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid. … Similar principles govern the determination of bail status."); *Brown v. Wilmot*, 572 F.2d 404, 405 (2d Cir. 1978) ("[A]ppellant could not have been arbitrarily or unreasonably denied bail consistent with his constitutional rights."); *U. S. ex rel. Walker v. Twomey*, 484 F.2d 874, 875 (7th Cir. 1973) ("[O]nce a state has made provision for bail pending appeal, the arbitrary denial of bail violates the fourteenth amendment."); *Leary v. United States*, 431 F.2d 85, 89 (5th Cir. 1970) ("If the 'danger' [considered in determining bail] includes mere 'advocacy' of the use of illegal drugs or of other law violations, [the bail determination] offends the constitutional guaranty of freedom of speech."); *U. S. ex rel. Means v. Solem*, 440 F. Supp. 544, 549–50 (D.S.D. 1977) (A bond condition "which prohibits most participation in American Indian Movement activities, unconstitutionally infringes upon [the] First Amendment freedoms of speech and association [of a person in state custody]."); Stacy L. Davis, *et al.*, 16A FED. PROC., L. ED. § 41:248, *Bail pending appeal* (Nov. 2024) ("[O]nce a state makes provisions for such bail, the Eighth and Fourteenth Amendments require that it not be denied arbitrarily or unreasonably, and habeas corpus relief is available for a constitutional violation in denial of bail."); Elizabeth M. Bosek, *et al.,* 15 CYCLOPEDIA. OF FEDERAL PROC. § 86:79, *Denial of bail as basis for habeas corpus relief* (3d ed. 2025) ("Habeas corpus is a proper means to secure admittance to bail, if the setting of bail is arbitrary or discriminatory in violation of constitutional requirements.").

B. While in practice many applications for habeas relief are meritless, that does not mean that these principles amount to callously empty promises, for in appropriate cases they do secure the release of state prisoners seeking bail pending their appeals.

One such case is *United States ex rel. Means v. Solem,* 440 F.Supp. 544 (D.S.D. 1977). Means was an activist for American Indian rights who was convicted for the crime of "rioting to obstruct." *Id.,* at 545. Means was originally released on bond pending his appeal of that conviction. One of the conditions for his release was that he refrain from participating in most activities of the American Indian Movement. *Id.,* at 546. Means violated that condition and his bond was revoked by the state courts. *Id.,* at 546-47. Means challenged his state custody via a habeas corpus petition in federal court, contending that such custody was unconstitutional because the condition on his participation in the American Indian Movement "unconstitutionally infringes on his First Amendment freedoms of speech and association." *Id.,* at 550.

The federal judge held that review of Means' appeal bond was an appropriate issue for review under § 2254, *id.,* at 547, and went on to agree with Means on the merits, pointing out that "[a]s to protection of society, an invasion of First Amendment rights can not be predicated on a speculative concern of danger." *Id.*, at 551. In his opinion, the federal judge cited the analysis of the Second Circuit rejecting the effort of the government to deny bail to members of the Communist Party because they posed a danger to the public. As he quoted the Second Circuit:

> If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the Courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a

discretionary judicial technique to supplement conviction of such offenses as those of which defendants stand convicted.

*Id.,* at 552 (quoting *Williamson v. United States,* 184 F.2d 280, 282 (2d. Cir. 1950)).

The federal judge in *Means* concluded that revoking Means' bond pending appeal based on his participation in the American Indian Movement "represented an unconstitutional restraint on relator's First Amendment liberties of speech and association." *Id.,* at 553. Accordingly, the *Means* Court ordered Means to be released from state custody. *Id.*

In *Speight v. Whiddon,* 516 F.Supp. 905 (M.D.Ga. 1980), the habeas petitioner had been convicted of a drug offense and contended that denying her bond pending appeal violated her due process rights under the Fourteenth Amendment. The federal judge first found that "habeas corpus relief solely on the question of bail pending exhaustion of state remedies on the merits of her conviction and sentence … is authorized." *Id.,* at 908. He then concluded that the state court had been arbitrary in its application of the state standards for bond pending appeal, and so granted the habeas petition on due process grounds. *Id.,* at 910. The federal judge then ordered the Respondent – a county sheriff – to release the petitioner to the custody of the United States Marshall, who in turn was to present her before a United States Magistrate for the setting of a reasonable appeal bond. *Id.*

A third example is *United States ex rel. Nistler v. Chrans,* 720 F.Supp. 115 (N.D.Ill. 1989). Nistler was convicted of two counts of aggravated battery. Up to sentencing, he had been released on bond, and moved to continue that bond pending appeal. *Id.,* at 116. The state court revoked his bond pending appeal, solely based on "the conduct Nistler had displayed in committing the batteries." *Id.* In his habeas petition, Nistler argued that denial of bond pending appeal violated his rights under the Eighth Amendment and his due process and equal protection

rights under the Fourteenth Amendment. *Id.,* at 117. The federal court concluded that the state

proceedings had violated Nistler's equal protection rights, finding that the decision to deny bond

pending appeal was arbitrary in light of the fact that the state apparently released on bond others

in Nistler's position. *Id.*, at 119. The federal court gave the state 30 days to hold a bond hearing.

If it did not, the federal court would hold its own bond hearing. *Id.*

      C. In the face of this unequivocal precedent that habeas corpus can release a state

prisoner on bail pending appeal, Respondents make the naked assertion that "such claims are not

cognizable in federal habeas corpus." Resp.Supp.Br. at 6. In support they cite five cases, not one

of which supports a proposition so sweeping and so at odds with the weight of precedent.

      In the first case, *Hamilton v. New Mexico,* 479 F.2d 343 (10TH Cir. 1973), the Tenth

Circuit rejected the appellant's claim to habeas relief on the ground that "his constitutional right

to bail has been denied," *id.,* at 344, correctly holding that a "state prisoner has no absolute

federal constitutional right to bail pending appeal." *Id.* As explained above and in the Application

for a Writ of Habeas Corpus, at 3-4 [ECF No. 1], Mrs. Peters does not make such a broad claim,

but rather contends under well-established precedents that she is entitled to habeas relief because

Respondents have violated her First Amendment rights in denying her bail under Colorado's

detailed regime for granting bail pending appeal. Thus *Hamilton* does not support the unbounded

proposition that claims for bail pending appeal are inherently not "cognizable" under federal

habeas corpus.

      *Strickland v. Murphy,* 279 Fed.Appx. 673 (10th Cir.2008), did not itself involve a claim to

bail pending appeal at all, but was a habeas challenge to the merits of the appellant's conviction.

*See id.,* at 674-75. The Tenth Circuit noted in a footnote that the *pro se* appellant had previously

filed a habeas petition concerning the denial of bail pending review and that the district judge

had dismissed the petition, finding that "such issues are not cognizable in Section 2254 proceedings." *Id.,* at 674 n.2. However, the appellant had framed his request for habeas relief as the *Hamilton* appellant had, claiming a constitutional right to bail pending appeal. *See* Petition for a Writ of Habeas Corpus Pursuant to 28 USC 2254 by a Person in State Custody at 7, *Strickland v. Everett,* No. 1:02-cv-01052-CAB (D. Wyo. July 22, 2002) [ECF No. 1]. Accordingly, the district judge dismissed the petition on the ground that a "state prisoner has no absolute federal constitutional right to bail pending appeal." Order Dismissing Petition for Writ of Habeas Corpus at 1, *Strickland v. Everett,* No. 1:02-cv-01052-CAB (D. Wyo. Nov. 15, 2002) [ECF No. 3]. Indeed, the district judge cited *Hamilton* in support of his ruling. *Id.,* at 2. Again, the principle that there is no constitutional right to bail pending appeal does not as a matter of law mean that habeas relief is not available for a constitutional violation in denial of bail when bail is otherwise available under state law.

Respondents describe the holding in the third case, *Qualls v. Kaiser,* 930 F.2d 34 (Table) (10th Cir. 1991), as "state denial of appeal bond alone is not a proper basis for habeas review." Resp.Supp.Br. at 6. This statement is true, but irrelevant, for Mrs. Peters' contention here is that she is entitled to habeas relief because of a violation of her First Amendment rights, not simply because bail was denied. Again, this case does not remotely support Respondents' notion that all claims concerning the denial of an appeal bond are beyond the reach of federal habeas corpus.

Respondents' fourth case, *Holloman v. Ortiz,* 2009 WL 798836 (D.Colo. March 24, 2009), is of a piece with the others, as it simply recognizes the undisputed principle – which applies to all forms of habeas relief, not just appeal bonds – that "there is no federal constitutional right to postconviction review in state courts." *Id.,* at *15. Besides not having exhausted state remedies, the *Holloman* Court pointed out that the *pro se* Applicant, in arguing

13

that he had been deprived of bail pending appeal promised by his plea agreement, essentially was raising errors in the state's postconviction procedures. *Id.* As *Sellers v. Ward,* 135 F.3d 1333, 1336 (10th Cir. 1998) (cited by *Holloman*) put it, "errors in postconviction procedures are not cognizable federal habeas corpus claims." Mrs. Peters is not alleging simply errors in the denial of bail pending appeal, but rather contends that she was denied bail because of her speech in a gross violation of her First Amendment rights.

Finally, the *pro se* Applicant in *Deskins v. Zenon,* 2007 WL 1701717 (D.Colo. June 11, 2007), raised five substantive habeas claims challenging his conviction, i*d.,* at *3, but brought no claim that he was denied an appeal bond because of a federal constitutional violation. Rather the Applicant claimed the ineffective assistance of the counsel who argued an appeal bond motion on his behalf, which the district judge rejected because he concluded that the Applicant had not been prejudiced by his counsel's work. 2007 WL at *33.

The district judge also rejected the Applicant's claim because it did "not address the validity of [the Applicant's] conviction or sentence." *Id.* But this brief statement cannot be taken out of context as purporting to be a more sweeping statement of law foreclosing habeas challenges to other aspects of a state criminal proceeding. It is true that habeas "challenges *typically* involve defects in the underlying conviction," *Graham v. White,* 101 F. 4th 1199, 1205 (10th Cir. 2024) (emphasis added), but being typical does not make them exclusive.

## II. The Denial of an Appeal Bond Violated Petitioner's First Amendment Rights.

A decision by a court "based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid." *United States v. Lemon,* 723 F.2d at 938 n.47. Mrs. Peters' public statements regarding the integrity of computerized voting systems – clearly a

14

matter of grave public concern -- constitutes core political speech that is given the highest protection accorded by the Free Speech Clause. *See Meyer v. Grant,* 486 U.S. 414, 424 (1988); *Mills v. Alabama,* 384 U.S. 214, 218 (1966); *United States v. Hernandez-Calvillo,* 39 F.4th 1297, 1308-09 (10th Cir. 2022).

State officials may not prohibit or punish speech unless it is likely to produce violence or lawless action. *Counterman v. Colorado,* 600 U.S. 66, 72-74, 81 (2023); *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 909-11 (1982); *Brandenberg v. Ohio,* 305 U.S. 444, 447 (1969) (*per curiam*). Likewise, a court may not deny bond pending appeal based on speech that does not incite imminent lawless conduct. *Leary,* 431 F.2d at 89-90 (advocacy of the use of illegal drugs or other law violations does not constitute "danger" for the purposes of setting bail).

Speech is constitutionally protected if there is no intent by the speaker to incite lawlessness or violence. The "strong intent requirement" was adopted to prevent a chilling effect on "dissenting political speech at the First Amendment's core." *Counterman,* 600 U.S. at 81. Only speech that is intended as a "true threat" loses Free Speech protection. *Id.,* at 82; *cf. Elonis v. United States,* 575 U.S. 723, 740 (2015).

Government may not prohibit or punish speech because of the "mere tendency of speech to encourage unlawful acts." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002). "The government may not prohibit speech because it increases the chance an unlawful act will be committed 'at some indefinite future time.'" *Hess v. Indiana,* 414 U.S. 105, 108 (1973); *see also Brandenberg*, 305 U.S. at 447. "[A] function of free speech under our system of government is to invite dispute. It may indeed serve its highest purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chicago,* 337 U.S. 1, 4 (1949).

There is no evidence that Mrs. Peters ever intended to intimidate anyone. She acted in her official capacity to provide as much transparency as possible to other state officials and to her constituents regarding the evidence she had raising serious questions about the integrity of Mesa County's computerized voting system. The sober and professional statements of Mrs. Peters to the Board and other audiences were not threats of any kind, and, therefore, were protected by the Free Speech Clause. The baseless statements made by the district judge which purported to justify his refusal to release her on bond pending her appeal were based on his distortions of Mrs. Peters' protected speech and so was an unmistakable violation of her right to free speech.

The denial of Mrs. Peters' request for bond pending appeal was driven by an unmistakable intent to punish her for her constitutionally protected speech. Accordingly, the denial of the appeal bond violated Mrs. Peter's First Amendment rights; it offends our most basic principles of justice under the Constitution; and Mrs. Peters' request for bond pending appeal should be granted forthwith.

### III. Petitioner Has Exhausted Her State Remedies.

The exhaustion requirement goes to the appropriate exercise of this Court's habeas jurisdiction. *Smith v. Kansas,* 356 F.2d 654, 656 (10th Cir. 1966). At bottom, to satisfy the exhaustion requirement for federal habeas relief, the petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018). *See also Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) ("[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim.").

The relief sought by the habeas application before this Court was directed at the decision of the district court to deny Mrs. Peters bond pending appeal and seeks her temporary release during those appellate proceedings. Thus this application does not seek habeas review of the merits of Mrs. Peters' conviction, but addresses a state proceeding distinct from the merits proceeding now on appeal.

In her appeal of the district judge's bond decision, Mrs. Peters clearly identified the facts on which her First Amendment challenge to that decision was based. ECF No. 2 at 183-85. She then explained how well-established precedents applied to those facts – the district judge's rationale for denying her appeal bond – showed the denial of the appeal bond to be unlawful as a violation of the First Amendment, requiring reversal. ECF No. 2 at 201-202. This advocacy fully satisfies the exhaustion requirement.

Indeed, this Court has found that Mrs. Peters "fairly presented" her First Amendment claim to the Colorado Court of Appeals. ECF No. 47, at 8. Respondents have not raised anything further about exhaustion in their Supplemental Brief, other than to acknowledge that "she has already presented [her federal constitutional challenge] to the Colorado Court of Appeals in her motion for an appeal bond." ECF No. 62 at 4.

### IV. The Court Cannot Abstain From Mrs. Peters' Habeas Corpus Application Under *Younger v. Harris.*

#### A. Respondents have waived any claim to *Younger* abstention.

Respondents submitted to the jurisdiction of this Court by filing their Pre-Answer Response on March 2, 2025. Their obligation under FED.R.CIV.P. 12 was to present any claim to *Younger* abstention in a filing within 21 days of the Order to file the Pre-Answer Response. FED.R.CIV.P. 81(a)(4)(A) (Rules apply in federal habeas proceedings); *see Nygaard v. Taylor,*

563 F.Supp.3d 992, 1010 (D.S.D. 2021). Respondents failed to suggest to the Court that the *Younger* doctrine might be relevant and could serve as a defense until they filed their notice of supplemental authority on July 18, 2025. ECF No. 57. By waiting to raise the *Younger* defense for several months, Respondents have waived the defense and have violated the terms of FED.R.CIV.P. 12. *Ohio Bur. of Employment Services v. Hodory,* 431 U.S. 471, 480 (1977); *Morrow v. Windlow,* 94 F.3d 1386, 1390 (10th Cir. 1996); *ACORN v. Municipality of Golden,* 744 F.2d 739, 742 n.2 (10th Cir. 1984); *see Z.J. Gifts D-4, LLC v. City of Littleton,* 311 F.3d 1220, 1227 n. 4 (10th Cir. 2002); *cf. Robinson v. Kansas,* 295 F.3d 1183, 1189-90 (10th Cir. 2002) (State can waive 11th Amendment sovereign immunity), *overruled on other grounds by Verizon Md., Inc. v. Pub. Serv. Com'n of Md.,* 535 U.S.. 635, 645 (2002); *see* WRIGHT & MILLER, FED. PRAC. & PROC. §4252 (2025) (collecting cases of waiver).

Waiver in this situation is particularly appropriate because the federal habeas corpus action is intended to provide a "swift, flexible, and summary determination" of the applicant's claim. *Preiser v. Rodriguez,* 411 U.S. 475, 495 (1973). Respondents should not be permitted to protract the proceedings by waiting for months to raise a defense or otherwise to delay the ultimate determination of the claim asserted in the Application. *Cf. Smith v. Kansas,* 356 F.2d 654, 656 (10th Cir. 1966) ("[I]nordinate delay in the adjudication of an asserted post-conviction remedy may well work a denial of due process cognizable in the federal court.").

### B. In any event, *Younger* does not apply here.

The *Younger* doctrine requires a court to abstain from exercising its jurisdiction over a matter pending in state court. *Younger,* 401 U.S. at 43. "Circumstances fitting within the *Younger* doctrine, we have stressed, are 'exceptional.'" *Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69, 73 (2013). *Younger* abstention is appropriate only where (1) federal court action will interfere

with an ongoing state criminal prosecution, (2) the party seeking that action has an adequate remedy at law and (3) will not suffer irreparable injury if the federal court abstains. *Id.*, at 77-78. Application of each of those elements to this case conclusively shows that *Younger* abstention does not apply here.

First, the habeas relief sought by Mrs. Peters will not interfere with any ongoing state prosecution. In *Gerstein v. Pugh,* 420 U.S. 103 (1975), the Court held that the district court correctly declined to abstain under *Younger* where the relief sought in the federal action was different from the relief requested in the state proceeding. *Id.,* at 108 n. 9. Lower federal courts have reached the same conclusion. *E.g., Page v. King,* 932 F.3d 898, 902 (9th Cir. 2019); *Rhodes v. Harrington,* 12 F.3d 989, 991-92 (10th Cir. 1993); *Riggi v. Charlie Rose, Inc.,* 777 F.Supp.3d 356, 362 (S.D.N.Y. 2025). Mrs. Peters' habeas Application seeks only the relief of her release on bond pending appeal, not reversal of her conviction. Such a temporary release while her appeal is pending will not in any way interfere with her prosecution or the merits of those state proceedings.

Indeed, the claim asserted in Mrs. Peters' Application can be decided in a timely manner by this Court, whereas the arguments asserted in the appeal of her criminal conviction and sentencing cannot and will not be decided for months, if not longer. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 437 (1982) (There must be an "opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit."). Again, this demonstrates that Mrs. Peters' claim in this federal habeas proceeding to immediate release pending the outcome of her appeal is far different relief than she seeks in her direct appeal of her conviction. The concerns animating *Younger* abstention simply are not evident here.

19

Second, by definition, Mrs. Peters having exhausted all state remedies to secure her release pending appeal, she no longer has any state remedy available to her.

Third, Mrs. Peters will be irreparably injured if this Court does not grant the habeas relief she seeks. As explained above, the driving force behind the denial of Mrs. Peters' request for bail pending her appeal was the violation of her First Amendment rights. It was her "dangerous" speech, according to the district judge, that required her to be immediately locked up.  This constitutional violation should not be allowed to continue. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo,* 592 U.S. 14, 19 (2020). No further showing of irreparable injury is required. *Adams by and through Adams v. Baker,* 919 F.Supp. 1496, 1505 (D.N.M. 1996).

## CONCLUSION

For the foregoing reasons, this Court should find that it has jurisdiction over Mrs. Peters' Application for a Writ of Habeas Corpus.

Mrs. Peters has been incarcerated for nearly 11 months. Also, the filings already made by the parties in this proceeding fully brief and show that Mrs. Peters was unconstitutionally denied bail pending appeal because of a violation of her First Amendment rights. Accordingly, we beseech the Court to immediately proceed to the adjudication of Mrs. Peters' Application and to grant it.

Following the example of *Speight v. Whiddon*, discussed above, we request that the Court then issue an order commanding the Respondents to expeditiously, and in no longer than ten days, to release Mrs. Peters to the custody of the United States Marshal, who shall then present Mrs. Peters to this Court for the setting of a reasonable appeal bond.

Respectfully submitted this 26th day of August, 2025.

Patrick M. McSweeney, Esq.
Robert J. Cynkar, Esq.
McSweeney, Cynkar & Kachouroff, PLLC
3358 John Tree Hill Road
Powhatan, VA 23139
(804) 937-0895
patrick@mck-lawyers.com
rcynkar@mck-lawyers.com

_s/ John Case_
John Case, Esq.
John Case, P.C.
6901 S. Pierce St. #340
Littleton, CO 80128
(303) 667-7407
brief@johncaselaw.com

s/ _Peter Ticktin_
Peter Ticktin, Esq.
The Ticktin Law Group
270 S.W. Natura Avenue
Deerfield Beach, Florida 33441
(561) 232-2222

*Co-counsel for Applicant Tina M. Peters*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy of same to be served on opposing counsel via the email addresses that opposing counsel has registered with the Court's ECF system.

_s/ Linda Good_