**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **TINA PETERS, Applicant** | |
| | **Civil Action No.** |
| **v.** | **1:25-cv-00425 (STV)** |
| | |
| **JOHN FEYEN, in his official capacity** | Assigned to District Court |
| **as Sheriff of Larimer County, Colorado,** | Judge Scott T. Varholak |
| **and PHILIP J. WEISER, in his official** | |
| **capacity as Attorney General of the State** | |
| **of Colorado,** | |
| | |
| **Respondents** | |

---

_**AMICI CURIAE** BRIEF ON BEHALF OF TERPSEHORE MARAS AND 3,057
ADDITIONAL AMERICAN CITIZENS* IN SUPPORT OF HABEAS CORPUS
PETITION OF APPLICANT TINA PETERS_

<div style="margin-left:50%">

Grant J. Guillot, Esquire
**GRANT GUILLOT, LLC**
5028 River Meadow Drive
Baton Rouge, LA 70820
(225) 614-7838
grant@grantguillot.com

</div>

**\*** A complete list of the 3,057 additional _amici_ signatories is maintained by counsel and will be
made available to the Court upon request.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………….…iii

FRAP RULE 26.1 AND FRAP 29(a)(4)(E) DISCLOSURE……………………………....…1

STATEMENT OF INTEREST OF *AMICI CURIAE*……………………………………..2

PROCEDURAL POSTURE……………………………………………………………………3

INTRODUCTION AND SUMMARY OF THE ARGUMENT………………………………..3

ARGUMENT……………………………………………………………………………...6

    A.  THE DENIAL OF BAIL TO MS. PETERS TRANSFORMS A
        CONSTITUTIONAL SAFEGUARD INTO A PUNITIVE MESAURE, IN
        VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES
        CONSTITUTION………………………………………………………………..6

    B.  BY DENYING BAIL TO MS. PETERS, THE STATE COURT ENGAGED IN
        IMPERISSIBLE OVERREACH IN VIOLATION OF THE NINTH
        AMENDMENT'S PROTECTION OF UNENUMERATED RIGHTS……………...12

    C.  THE STATE COURT'S USE OF BAIL DENIAL AS PUNISHMENT
        CONSTITUTES AN ARBITRARY DEPRIVATION OF LIBERTY CONTRARY
        TO THE FOURTHEENTH AMENDMENT TO THE UNITED STATES
        CONSTITUTION…………………………………………………………………14

    D.  BY DENYING HER BAIL PENDING APPEAL, THE STATE COURT
        INFRINGED ON MS. PETERS' FIRST AMENDMENT RIGHTS AND SET
        A DANGEROUS PRECEDENT FOR ALL CITIZENS…………………………16

CONCLUSION…………………………………………………………………………..17

# TABLE OF AUTHORITIES

**Cases**

Case                                                                                    Page(s)

*Bond v. Floyd*, 385 U.S. 116 (1966)                                                    16

*Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982) 16

*Douglas v. California*, 372 U.S. 353 (1963)                                            14

*Estelle v. Gamble*, 429 U.S. 97 (1976)                                                 10

*First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)                        17

*Griffin v. Illinois*, 351 U.S. 12 (1956)                                               14

*Griswold v. Connecticut*, 381 U.S. 479 (1965)                                          12

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)                                            17

*Mills v. Alabama*, 384 U.S. 214 (1966)                                                 16

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)                            13

*Snyder v. Phelps*, 562 U.S. 443 (2011)                                                 17

*Stack v. Boyle*, 342 U.S. 1 (1951)                                                     6, 9

*Troxel v. Granville*, 530 U.S. 57 (2000)                                               13

*United States v. Salerno*, 481 U.S. 739 (1987)                                         6, 8

**Statutes**

Statute                                                                                 Page(s)

28 U.S.C. § 2254                                                                        3

42 U.S.C. § 1983                                                                        10

Colo. Rev. Stat. § 16-4-201.5 (2024)                                                   7

**Connotational Provisions**

| Provision | Page(s) |
|---|---|
| U.S. Const. amend. I | 2, 3, 5, 16, 17 |
| U.S. Const. amend. VIII | 2, 3, 5, 6, 8, 9, 10, 17 |
| U.S. Const. amend. IX | 2, 3, 5, 12, 13, 17 |
| U.S. Const. amend. XIV | 2, 3, 5, 8, 13, 14, 17 |

**Rules**

| Rule | Page(s) |
|---|---|
| Fed. R. App. P. 26.1 | 1 |
| Fed. R. App. P. 29(a)(4)(E) | 1 |

**Other Authorities**

| Authority | Page(s) |
|---|---|
| Declaration of Independence | 13 |

## FRAP RULE 26.1 AND FRAP 29(a)(4)(E)
## DISCLOSURE STATEMENT

In compliance with Federal Rules of Appellate Procedure ("FRAP") Rule 29(a)(4)(E), proposed *Amici Curiae* (hereinafter sometimes referred to as "*Amici*") are all individual lawful American citizens of the age of majority. *Amici* is not aware of any possibility that any of the Court's Judges or staff or their families have any economic relationship with any of the proposed *Amici*.

*Amici* may seek donations to defray the costs of this Brief.[1] However, none of the funding or concepts or decisions concerning this Brief have been supplied by any attorney or staff connected with the underlying case or these topics. No donor is allowed to determine the content of this Brief or dictate the professional judgment of the attorney drafting it.

---

[1] No counsel for a party authored this Brief in whole or in part, and no counsel who is not a party or an *Amicus* made a monetary contribution intended to fund the preparation or submission of this Brief. No person other than proposed *Amici Curiae* or their counsel made a monetary contribution to its preparation or submission.

1

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici Curiae* submit this brief to ensure that the Court has the full benefit of constitutional arguments that, while critical to the disposition of Ms. Peters' petition, were not fully developed by prior counsel. The Court's decision to proceed to the merits confirms that Ms. Peters' *habeas corpus* petition is not only procedurally proper but also substantively meritorious. *Amici* therefore respectfully supplement the record with analysis that underscores the constitutional infirmities in the denial of bail and demonstrates why relief is warranted.

Proposed *Amici Curiae*, Terpsehore Maras, et al.,[2] are lawful citizens from across all 50 states who, in support of Applicant Tina Peters, respectfully submit this Brief to highlight how the manner in which the state court denied Ms. Peters' request for bail pending appeal violates the First, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. *Amici* have a direct and compelling interest in this matter. Following the 2020 presidential election, millions of Americans, including *Amici*, were left with unresolved concerns after reports surfaced of significant irregularities in the voting process. Yet, for the past five years, courts across the nation have repeatedly denied aggrieved parties the opportunity to present evidence of election-related misconduct. As citizens, *Amici* share with Ms. Peters the experience of being threatened, ridiculed, or subjected to retaliation for exercising their constitutional right to question and speak openly about election integrity.

The state court in Ms. Peters' case underscored this very climate of suppression when it declared: "every time [allegations of irregularities in the 2020 presidential election are] refuted, every time it's shown to be false, just another tale is weaved." [3] Yet subsequent reports of election

---

[2] For the sake of brevity, undersigned counsel will hereafter refer to the collective group of *Amici Curiae* as "*Amici*" or "Terpsehore Maras, *et al.*" A complete list of the 3,057 additional *amici* signatories is maintained by counsel and will be made available to the Court upon request.
[3] App 101:15-16.

impropriety continue to surface, including the recent revelation on August 26, 2025, by Director of National Intelligence Tulsi Gabbard that files concerning the 2020 election were discovered discarded in "burn bags" hidden in safes and government offices.[4]  These developments highlight the ongoing importance of ensuring transparency and accountability in elections—interests that *Amici* share with Ms. Peters and millions of similarly situated citizens.

## PROCEDURAL POSTURE

The Applicant, Tina Peters, has appealed her conviction to the Colorado Court of Appeals, where her appeal remains pending. Because of her deteriorating health and the ongoing constitutional injuries she is sustaining, Ms. Peters has properly filed an Application for a Writ of *Habeas Corpus* with this Court pursuant to 28 U.S.C. § 2254, seeking release from incarceration pending appeal. After directing the parties to address whether it had jurisdiction during the pendency of her appeal, this Court on September 17, 2025, ruled that it would proceed to consider the merits of Ms. Peters' *habeas corpus* petition. That ruling itself reflects that Ms. Peters has presented a petition of substance. *Amici* submit this brief not to restate arguments already before the Court, but to highlight additional constitutional dimensions—arguments that were not fully developed by prior counsel—which further demonstrate why *habeas* relief is warranted. Accordingly, *Amici*'s Motion to File Amicus Brief is timely, having been filed within seven days of this Court's confirmation that it will adjudicate the merits of Ms. Peters' petition.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Tina Peters was denied bail pending appeal not because she posed a flight risk or threat of violence, but because of her speech. The trial judge openly acknowledged that the denial was

---

[4] MSN. (2025, August 26). *Gabbard claims 2020 fraud files were found in burn bags* [Video]. https://www.msn.com/en-ie/news/world/gabbard-claims-2020-fraud-files-were-found-in-burn-bags/vi-AA1LhmTS?ocid=socialshar.

intended to silence Ms. Peters' criticisms of Colorado's election systems, equating her political expression to physical violence. Such reasoning transforms bail from a procedural safeguard into a punitive tool, directly violating the United States Constitution. This denial of bail implicates four separate constitutional guarantees. First, the Eighth Amendment forbids the use of bail as punishment and prohibits excessive or arbitrary restrictions on liberty. Second, the Ninth Amendment guards against government overreach into rights retained by the people, including the right to speak without fear of arbitrary punishment. Third, the Fourteenth Amendment prohibits the deprivation of liberty without due process; denying bail to punish speech renders Ms. Peters' statutory right to appeal meaningless. Fourth, the First Amendment forbids government action designed to silence political dissent, yet here bail was denied explicitly to suppress expression on matters of public concern. Because the denial of bail in this case was punitive, arbitrary, and constitutionally infirm, *habeas corpus* relief is warranted.

The denial of bail to Ms. Peters extends beyond her individual circumstances, raising systemic constitutional concerns about punitive use of bail and suppression of political speech. In fact, Tina Peters stands in the shoes of millions of Americans who were unnerved by the irregularities they observed surrounding the 2020 presidential election. Scores of Americans who dared to speak up and call attention to these blatant irregularities and election issues were subjected – and in many cases are *still* subjected – to ridicule and scorn in both their personal and professional lives. As Ms. Peters has noted, Democratic legislators Senator Amy Klobuchar (D-MN), Senator Elizabeth Warren (D-MA), Senator Ron Wyden (D-OR), Representative Mark Pocan (D-WI), as well U.S. District Judge Amy Totenberg, have all done with impunity exactly as Ms. Peters has done – made public statements regarding the vulnerability of America's electronic systems and

4

infrastructure.[5] Yet, they all remain free persons while Ms. Peters, a 70-year old woman experiencing deteriorating health, has been ordered to languish in prison pending her appeal.

What perhaps makes Ms. Peters' Application for *Habeas Corpus* especially compelling is the fact she was denied bail for a non-violent criminal conviction pending appeal due to her refusal to violate federal law by destroying records from the highly contested 2020 election. While the state court judge certainly had the authority to deny Ms. Peters' bail, that right does not extend to cases where the denial of bail is used to arbitrarily and unjustly penalize an American citizen for exercising her First Amendment rights. Indeed, the transcript from Ms. Peters' sentencing reflects that the state court judge denied Ms. Peters bail largely because he was concerned that she would continue to speak out against vulnerabilities in Colorado's election machine systems. As stated by the state court judge:

> [Y]ou are a charlatan and you cannot help but lie as easy as it is for you to breathe. You betrayed your oath for no one other than you. And that is what makes Ms. Peters such a danger to our community. It's the position she held that has provided her the pulpit from which she can preach these lies, the undermining of our democratic process, the undermining of the belief and confidence in our election systems.[6]

The judge continued:

> So the damage that is caused and continue to be caused is just as bad, if not worse, than the physical violence that this court sees on an all too regular basis. And it's particularly damaging when those words come from someone who holds a position of influence like you. Every effort to undermine the integrity of our elections and the public's trust in our institutions has been made by you. You've done it from that lectern. The voting public provided you with everything you've done has been to retain control influence. The damage is immeasurable. And every time it gets refuted, every time it's shown to be false, just another tale is weaved.[7]

---

[5] Application for a Writ of *Habeas Corpus*, p. 12-13.
[6] App 99:18-24.
[7] App 100:4-14.

5

Finally, the judge stated "prison is for those folks where we send people who are a danger to all of us, whether it be by the pen or the sword or the word of the mouth."[8] Thus, it is clear the state court judge denied Ms. Peters bail pending her appeal in order to punish her and prevent her from further speaking out about her concerns with Colorado's election machine systems – despite the fact that she is no longer Mesa County Clerk of Court and unable to speak out from her so-called "pulpit."

The state court's denial of bail to Ms. Peters violates several amendments to the United States Constitution, which is why Ms. Peters' Application for a Writ of *Habeas Corpus* is proper and should be granted without further delay. First, the state court utilized denial of bail as a punitive measure, which is a violation of the Eight Amendment's protection against cruel and unusual punishment. Second, in arbitrarily denying Ms. Peters' bail, the state court infringed upon the Ninth Amendment by engaging in impermissible government overreach in violation of Ms. Peters' unenumerated rights. Third, the state court violated Ms. Peters' Fourteenth Amendment protection against arbitrary deprivations of liberty by using bail denial to punish and restrict her speech. Finally, in using bail denial as a tool to silence Ms. Peters from further speaking out about election irregularities, the state court violated her First Amendment rights and set a dangerous precedent for the millions of Americans who may now fear speaking out about matters of grave public importance, such as elections. For these reasons, *Amici* respectfully submit this Court should grant Ms. Peters' Application for *Habeas Corpus*.

## ARGUMENT

### A. THE DENIAL OF BAIL TO MS. PETERS TRANSFORMS A PRETRIAL SAFEGUARD INTO A PUNITIVE MESASURE, IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

---

[8] App 101:14-16.

The Eighth Amendment prohibits excessive bail and forbids using bail as punishment; its purpose is to ensure a defendant's appearance and protect the community from genuine risks, not to silence or penalize speech. See *Stack v. Boyle*, 342 U.S. 1 (1951); *United States v. Salerno*, 481 U.S. 739 (1987). Here, Ms. Peters was denied bail not because she posed a flight risk or threat of violence, but because of her public statements about election systems. The trial judge explicitly described her as a "charlatan" whose words were "as dangerous as violence," and justified bail denial on the ground that her speech undermined public trust. This transforms bail from a procedural safeguard into a punitive tool. Moreover, Ms. Peters is a 70-year-old woman with serious health conditions, convicted of a non-violent offense, and therefore not within the categories of offenders for whom bail is categorically barred under Colorado law. By denying bail to punish Ms. Peters for her speech and silence her political expression, the court violated the Eighth Amendment's ban on excessive bail and cruel and unusual punishment.

The Eight Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Noting the role of bail is to ensure the integrity of the trial process while balancing governmental interests, such as preventing flight or danger to the community, the U.S. Supreme Court has stated that, as opposed to a punitive objective, "a primary function of bail is to safeguard the courts' role in adjudicating the guilt or innocence of defendants."[9] The Court also noted that "[u]nless th[e] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."[10] While Ms. Peters is seeking bail post-conviction pending

---

[9] *Salerno*, 481 U.S. at 753.
[10] *Id.*, citing *Stack*, 342 U.S. at 4, wherein the Court held that setting bail at a figure higher than an amount reasonably calculated to ensure the defendant's presence at trial is "excessive" under the Eighth Amendment. While *Stack* focused on pretrial bail, its central holding applies here: Bail cannot be used as punishment.

appeal rather than before trial, the same general principles apply – bail should not be unreasonably denied if a defendant is determined to not be a flight risk or a danger to the community.[11]

This general principle is codified in Colorado law, with CO Rev Stat § 16-4-201.5 (2024) providing, in pertinent part,

> (1) The court may grant bail after a person is convicted, pending sentencing or appeal, only as provided by this part 2; except that no bail is allowed for persons convicted of:
>
> (a) Murder;
>
> (b) Any felony sexual assault involving the use of a deadly weapon;
>
> (c) Any felony sexual assault committed against a child who is under fifteen years of age;
>
> (d) A crime of violence…;
>
> (e) Any felony during the commission of which the person used a firearm;
>
> (f) A crime of possession of a weapon by a previous offender…;
>
> (g) Child abuse…;
>
> (h) A class 5 felony act of domestic violence…;
>
> (i) A second or subsequent offense for stalking that occurs within seven years after the date of a prior offense for which the person was convicted…; or
>
> (j) Stalking ….
>
> (2) The court shall not set bail that is otherwise allowed pursuant to subsection (1) of this section unless the court finds that:
>
> (a) The person is unlikely to flee and does not pose a danger to the safety of any person or the community; and

---

[11] Of course, the state court made it abundantly clear it considers Ms. Peters to be a danger to the community based on her past actions of informing the public of her concerns regarding vulnerabilities in Colorado's electric voting machine systems. However, for the reasons stated later in this *Amici Curiae* Brief, the state court violated Ms. Peters' Fourteenth Amendment due process rights by arbitrarily denying bail based primarily on the court's fears that Ms. Peters would continue to exercise her First Amendment rights.

(b) The appeal is not frivolous or is not pursued for the purpose of delay.

\*\*\*

Colorado law permits bail pending appeal when a defendant is not a flight risk or danger to society. While the decision to grant bail is discretionary, that discretion cannot be exercised in a way that infringes upon constitutional rights. Here, the trial judge's own words reveal that bail was denied not to ensure appearance or protect the public, but to punish and silence Ms. Peters: "You are a charlatan and you cannot help but lie as easy as it is for you to breathe. … That is what makes Ms. Peters such a danger to our community."[12] "So the damage that is caused and continue to be caused is just as bad, if not worse, than the physical violence that this court sees on an all too regular basis."[13] "Prison is for those folks where we send people who are a danger to all of us, whether it be by the pen or the sword or the word of the mouth."[14] These statements confirm that bail was denied as punishment for Ms. Peters' speech. Bail is a safeguard, not a weapon. Denying it to a non-violent defendant absent compelling justification transforms a constitutional protection into a penalty, violating the Eighth Amendment and undermining the very principles it was designed to uphold.

The Eighth Amendment ensures bail remains a fair safeguard, not a backdoor penalty. When a judge openly denies bail as punishment, the measure ceases to be regulatory and becomes unconstitutional. That action collides with the Eighth Amendment's bar on cruel and unusual punishment and the Fourteenth Amendment's guarantee against arbitrary deprivations of liberty. Together, these provisions draw a bright line: bail cannot be weaponized. To deny it to a non-

---

[12] App. 99:18–24.
[13] App. 100:4–14.
[14] App. 101:14–16.

9

violent defendant who is neither dangerous nor a flight risk—where state law expressly permits bail pending appeal—is to transform a constitutional protection into an unlawful sanction.

Ms. Peters' incarceration pending appeal violates the Eighth Amendment because Colorado law permits post-conviction bail, and she is neither a flight risk nor a danger to the public. The denial of bail here serves no procedural purpose; it is a punitive act to confine and silence her before appellate review. As *Stack v. Boyle* warns, this is punishment masquerading as process. Ms. Peters is elderly, in fragile health, and her continued detention inflicts harm that modern standards of decency and fairness cannot tolerate. When punishment precedes appeal, constitutional safeguards collapse into meaninglessness.

Moreover, Ms. Peters' Eight Amendment rights are further violated by the conditions to which she has been subjected during her incarceration pending appeal. The U.S. Supreme Court has noted, the Cruel and Unusual Punishments Clause "can fairly be deemed to … cover conditions of confinement which may make intolerable an otherwise constitutional term of imprisonment."[15]  Therefore, the Eighth Amendment is concerned not only with the duration but also with the conditions of punishment.

The United States Supreme Court in *Estelle v. Gamble*[16] held that deliberate indifference by prison personnel to a prisoner's serious illness or injury constitutes cruel and unusual punishment contravening the Eighth Amendment. In *Estelle*, a state inmate sued several medical personnel and other state workers, alleging their failure to treat his back injury incurred during labor was a cruel and unusual punishment in violation of the Eight Amendment.[17] The district court

---

[15] *Ingraham v. Wright*, 430 U.S. 651 (1977), 670, citing *Johnson v. Glick*, 481 F.2d 1028, 1032 (CA2), cert. denied, 414 U.S. 1033 (1973) (citation omitted).
[16] 429 U.S. 97 (1976).
[17] *Id.*

dismissed the prisoner's complaint for failing to state a claim upon which relief can be granted.[18]

The United States Court of Appeal for the Fifth Circuit ordered the reinstatement of the prisoner's

complaint.[19] However, the Supreme Court opined that the medical doctor's actions did not arise to

the level of such deliberate indifference constituting an Eight Amendment violation as:

> [The prisoner's] claims against [the prison doctor], both in his capacity as treating physician and as medical director of the Corrections Department, are not cognizable under § 1983. [The prisoner] was seen by medical personnel on 17 occasions spanning a three-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is 'based solely on the lack of diagnosis and inadequate treatment of his back injury.' The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants, and pain relievers.[20]

Unlike the prisoner in *Estelle*, Ms. Peters in the instant matter has been subjected to cruel

and unusual punishment because the medical personnel have been deliberately indifferent to her

adverse health conditions. As stated in her Application for a Writ of *Habeas Corpus*,

> Ms. Peters is 69 years old, is monitored for recurrence of her lung cancer, and suffers from fibromyalgia. Since she has been incarcerated, her health has deteriorated. As her pastor has observed, her physical vigor and cognitive function has declined. She is pale, has lost weight, and has difficulties with memory and word-finding.[21]

Because the state defendants have been deliberately indifferent to Ms. Peters' chronic medical

conditions, which are negatively impacting her physical and mental health, Ms. Peters has

---

[18] *Id.*

[19] *Id.*

[20] *Id.* at 107 (internal citation omitted). See also, *Farmer v. Brennan*, 511 U.S. 825 (1994); *Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Brown v. Plata*, 563 U.S. 493 (2011).

[21] Application for a Writ of *Habeas Corpus*, p. 1, citing App 617-618.

sustained a violation of her Eight Amendment right to freedom from cruel and unusual punishment.

In sum, denying bail to a non-violent defendant with a pending appeal—where state law permits release—serves no legitimate purpose and operates solely as punishment. That result is compounded here by the state's indifference to Ms. Peters' health, turning confinement into cruelty. Absent a compelling justification, bail denial becomes preemptive punishment in direct violation of the Eighth Amendment's ban on excessive bail and cruel and unusual punishment.

### B.   BY DENYING BAIL TO MS. PETERS, THE STATE COURT ENGAGED IN IMPERISSIBLE OVERREACH IN VIOLATION OF THE NINTH AMENDMENT'S PROTECTION OF UNENUMERATED RIGHTS.

The Ninth Amendment affirms that fundamental rights exist beyond those enumerated, protecting individuals against arbitrary government overreach. *Griswold v. Connecticut*, 381 U.S. 479 (1965) (Goldberg, J., concurring). The trial court denied Ms. Peters bail not because of risk of flight or danger, but because she might continue speaking about election irregularities. That rationale intrudes on rights retained by the people — the freedom to speak without fear of arbitrary punishment. The court's description of Ms. Peters as a danger "by the pen or the word of the mouth" shows the denial was aimed at silencing expression, not preserving order. By using bail to suppress constitutionally protected liberty, the state court exceeded its discretion and engaged in impermissible overreach. In doing so, it injured not only Ms. Peters but also *Amici*, who join this case because they too are citizens silenced when courts punish speech under the guise of bail.

The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Supreme Court has recognized this as a safeguard against government intrusion into liberties not expressly listed in the Constitution. In *Griswold v. Connecticut*, Justice Goldberg explained that

"fundamental personal rights...are protected from abridgment by the Government though not specifically mentioned in the Constitution."[22] He emphasized that no clause of the Constitution should be treated as without effect, and that "real effect should be given to all the words it uses."[23] The Framers, he noted, intended the Ninth Amendment to confirm that fundamental rights exist beyond those enumerated in the first eight amendments, and that the list of rights was never meant to be exhaustive.[24]

Justice Goldberg emphasized the Ninth Amendment's relationship to other constitutional guarantees, explaining that while it originally restricted only federal power, the Fourteenth Amendment extended its protection of fundamental liberties against the States.[25] By confirming that not all rights are listed in the first eight amendments, the Ninth Amendment supports the view that the "liberty" protected by the Fifth and Fourteenth Amendments includes unenumerated rights.

The United States Supreme Court has applied this reasoning. In *Richmond Newspapers v. Virginia*,[26] it recognized the unenumerated right of the public and press to attend criminal trials under the First and Fourteenth Amendments, describing the Ninth as a "saving clause" that prevents the denial of rights simply because they are not enumerated. As James Madison explained, the Ninth Amendment was designed to foreclose the inference that the expression of some rights excludes others.[27] This understanding was echoed by Justice Scalia in his dissent in *Troxel v. Granville*,[28] where he noted that the parental right to direct the upbringing of children is among

---

[22] *Griswold,* 381 U.S. at 495-96 (Goldberg, J., joined by Warren, C.J. &amp; Brennan, J., concurring in the judgment).
[23] *Id.* at 490-91, citing *Myers v. United States*, 272 U.S. 52, 151 (1926).
[24] *Id.* at 492.
[25] *Id.* at 493, citing *United Public Workers v. Mitchell*, 330 U.S. 75, 94—95 (1947).
[26] 448 U.S. 555 (1980).
[27] *Id.* at 581, n.15 (internal citations omitted).
[28] 530 U.S. 57 (2000) (Scalia, J., dissenting).

the unalienable rights referenced in the Declaration of Independence and retained by the people under the Ninth Amendment. While Scalia cautioned against judicial invention of rights, his recognition underscores the Framers' intent: the Ninth Amendment affirms that liberties beyond the enumerated guarantees are real, fundamental, and shielded from government infringement.

*Amici* do not contend that the Ninth Amendment grants a substantive right to bail pending appeal. Rather, it is implicated here because of the state court's overreach. The judge branded Ms. Peters a "charlatan"[29] who belonged in "prison…where [the state government] send[s] people who are a danger to all of us, whether it be by the pen or the sword or the word of the mouth."[30] Denying bond to a non-violent defendant with a live constitutional appeal, based primarily on the prospect that she might continue to speak, is not a risk-based determination but an arbitrary exercise of carceral power. This is precisely the type of government intrusion the Ninth Amendment was designed to restrain. In short, the Ninth Amendment safeguards unenumerated liberties from erosion by judicial or executive overreach. The Framers understood that rights not expressly listed — including the right to be free from arbitrary punishment for speech — are fundamental to the sovereignty of the American citizen and essential to the constitutional order.

### C. THE STATE COURT'S USE OF BAIL DENIAL AS PUNISHMENT CONSTITUTES AN ARBITRARY DEPRIVATION OF LIBERTY CONTRARY TO THE FOURTHEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

The Fourteenth Amendment forbids states from depriving any person of life, liberty, or property without due process of law. When a state provides bail pending appeal, it must apply that process fairly and not arbitrarily. See *Griffin v. Illinois*, 351 U.S. 12 (1956); *Douglas v. California*, 372 U.S. 353 (1963). Ms. Peters was eligible for bail under Colorado law, yet the trial court denied

---

[29] App 99:18-24.
[30] App 101:14-16.

it not for risk of flight or danger, but to silence her speech. Such punitive reasoning strips her of liberty without lawful justification.

This misuse of bail also renders her appeal meaningless. If Ms. Peters serves her sentence before review, her statutory right to appeal is effectively nullified. Due process does not permit punishment to precede appellate review. By denying bail on impermissible grounds, the state court acted arbitrarily, depriving Ms. Peters of liberty and undermining the very safeguards the Fourteenth Amendment was designed to protect.

The state court's denial of bail to punish Ms. Peters for speaking out on election irregularities squarely violates the Fourteenth Amendment. Section 1 provides: "Nor shall any State deprive any person of life, liberty, or property, without due process of law." The Supreme Court has held that the touchstone of due process is protection against arbitrary government action: procedural due process guards against the exercise of power without legitimate justification, while substantive due process forbids power exercised arbitrarily and oppressively. Here, the court's ruling was a substantive due process violation. Bail was denied not to serve a lawful purpose but to silence Ms. Peters for exercising her right — and her statutory duty — to preserve and speak about election records. Such punitive use of bail is the very definition of arbitrary government action the Fourteenth Amendment was designed to prevent.

The Supreme Court has long held that bail serves a narrow purpose: to secure a defendant's appearance and, in limited cases, to protect the community from imminent danger. It is not, and cannot be, a tool of punishment. Punishment may follow conviction but never precede it. By expressly denying bail to punish Ms. Peters, the trial court converted a safeguard into a sanction, directly violating the presumption of innocence at the core of due process. This misuse of bail offends the Fourteenth Amendment, which forbids arbitrary deprivations of liberty and demands

15

lawful justification for state action. Here, bail was withheld not for legitimate purposes, but to silence political speech. In doing so, the court abandoned constitutional principle and trampled Ms. Peters' rights.

Worse still, this denial effectively turns her appeal into a nullity. The Supreme Court has made clear that when a state provides a first appeal as of right, due process requires it to be meaningful, not illusory. If Ms. Peters serves her sentence before her appeal is decided, the right to appeal ceases to exist in practice. While no defendant has a constitutional right to bail pending appeal, once Colorado enacted a statute authorizing it, the State was bound to apply it fairly. By using bail denial as punishment, the court stripped Ms. Peters of liberty without due process of law. That denial also strikes *Amici*'s due process interests, for when courts silence political voices arbitrarily, the public's right to meaningful debate and to a fair appellate process is diminished as well.

### D. BY DENYING HER BAIL PENDING APPEAL, THE STATE COURT INFRINGED ON MS. PETERS' FIRST AMENDMENT RIGHTS AND SET A DANGEROUS PRECEDENT FOR ALL CITIZENS.

The First Amendment protects political expression and prohibits government restraint of speech, particularly where action functions as prior restraint. See *Mills v. Alabama*, 384 U.S. 214 (1966); *Bond v. Floyd*, 385 U.S. 116 (1966). The trial court denied Ms. Peters bail not for risk of flight or danger, but to silence her criticisms of Colorado's election systems. That is government suppression of political expression under the guise of bail regulation.

This restriction is especially indefensible. Ms. Peters was no longer a public official with a "pulpit," yet the court still sought to silence her. The First Amendment protects not only the right to speak but also the right of citizens to hear, consider, and engage with dissenting views. See *Board of Education v. Pico*, 457 U.S. 853 (1982). By removing her from public discourse, the

16

court not only silenced Ms. Peters but also deprived *Amici* — and the American people they represent — of speech on a matter of grave national concern.

The Supreme Court has consistently recognized that suppression of political expression strikes at the heart of the freedom of expression so essential to the effective functioning of a democracy. See, e.g., *Mills*, *supra*. In *Bond v. Floyd*, *supra*, the Court held that silencing elected voices also harms voters who have a right to hear them. Here, the harm is greater: unlike the legislators in *Bond*, Ms. Peters is out of office, yet she has been silenced altogether. Denying bail has excluded her from the public square at the very moment her speech remains most vital.

The Court has also emphasized that the First Amendment protects both the right to speak and the right of citizens to receive information. "The right to receive ideas is a necessary predicate" to meaningful political freedom. *Kleindienst v. Mandel*, 408 U.S. 753 (1972); *Pico*, 457 U.S. at 867). As *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 777 (1978), confirmed, the value of speech does not depend on its source. And as *Snyder v. Phelps*, 562 U.S. 443 (2011), reaffirmed, speech on public issues occupies "the highest rung of the hierarchy of First Amendment values."

By using bail denial as a tool of suppression, the trial court converted a procedural ruling into an unconstitutional restraint on political speech. This Court should recognize that such punishment not only violates Ms. Peters' First Amendment rights but also sets a precedent that chills democratic participation for all citizens. Bail may regulate appearance, but it may never be weaponized to silence dissent — to do so is to strike at the very core of the First Amendment.

## CONCLUSION

Colorado was not required to provide post-conviction bail. But once it enacted a statute authorizing bail for non-violent defendants who are not flight risks, it was bound to apply that statute consistent with the Constitution. The trial court did not. It denied Ms. Peters bail as

17

punishment for her speech, in direct violation of the Eighth, Ninth, Fourteenth, and First Amendments. If allowed to stand, this ruling establishes a precedent that bail may be weaponized to silence dissent, chill public discourse, and punish citizens critical of government conduct. That is not the purpose of bail, nor the role of courts in a constitutional democracy. The Founders crafted the Constitution precisely to guard against such arbitrary and oppressive exercises of power.

Because the denial of bail here functioned as punishment for protected expression, inflicted cruel and unusual confinement on a non-violent defendant, deprived her of liberty without due process, and suppressed political speech at the core of the First Amendment, *Amici* respectfully urge this Court to grant Ms. Peters' petition for *habeas corpus* and order her immediate release pending appeal. When courts punish speech through bail denial, they abandon the safeguards the Framers enshrined and silence not only one citizen but all, for the First, Eighth, Ninth, and Fourteenth Amendments protect the liberty of every American. This Republic was never built to endure such judicial overreach, and to permit bail to be weaponized against speech is to surrender liberty itself — a result the Constitution does not allow. Where one citizen's voice is silenced, all are diminished — for where we go one, we go all.

/s/ Grant J. Guillot
Grant J. Guillot, Esquire
Louisiana Bar Roll No. 32484
**GRANT GUILLOT, LLC**
5028 River Meadow Drive
Baton Rouge, LA 70820
(225) 614-7838
grant@grantguillot.com

Counsel for *Amici Curiae*,
Terpsehore Maras, et al.

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy of same to be served on counsel of record via the email addresses registered with the Court's ECF system.

<u>/s/ Grant J. Guillot</u>
Grant J. Guillot, Esquire

19