IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00425-STV

TINA M. PETERS,

    Applicant,

v.

MOSES "ANDRE" STANCIL, in his official capacity Executive Director of the Colorado Department of Corrections, and
PHILIP J. WEISER, in his official capacity as Attorney General of the State of Colorado,

    Respondents.

---

## ANSWER

---

Respondents, having been served with this Court's Order, ECF No. 67, file their Answer as follows:

### I.    Introduction

Applicant Tina Peters is a prisoner in the custody of the Colorado Department of Corrections. She initiated this action by filing an Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. ECF No. 1. She challenges the state courts' denial of an appeal bond following entry of a judgment of conviction in Mesa County District Court case 22CR371. ECF No. 1, at 2-3. Ms. Peters filed a motion to dismiss two of her claims, leaving a single claim alleging a violation of her First Amendment rights. ECF No. 1, at 14-17; ECF Nos. 59, 67.

This Court directed Respondents to file a pre-answer response addressing timeliness and exhaustion of state court remedies, as well as supplemental briefing regarding jurisdiction, and Respondents did so. ECF Nos. 5, 25, 58, 62, 66. Respondents have asserted that the *Younger* abstention doctrine requires this Court to abstain from exercising jurisdiction in this case, and

1

that the exhaustion doctrine precludes Ms. Peter's claim. ECF Nos. 25, 62, 66. This Court has now directed Respondents to answer the remaining claim on the merits. ECF No. 67. Respondents do so here.

## II.     Factual background and state procedural history

While serving as the elected Clerk and Recorder of Mesa County, Ms. Peters deceived state and other county employees to obtain security credentials that allowed an unauthorized person to access Mesa County's computerized election system after the 2020 election. ECF No. 2, at 45-53, 65-67. A Colorado jury convicted Ms. Peters of three counts of attempt to influence a public servant, one count of conspiracy to commit criminal impersonation, and one count each of: first-degree official misconduct, violation of duty, and failure to comply with requirements of the Secretary of State. *Id.* at 113-14.

The trial court sentenced Ms. Peters to a total term of eight years and nine months imprisonment. ECF No. 2, at 107-08, 113-16. In explaining the sentence it imposed, the court discussed Ms. Peters' statements during the sentencing hearing, her criminal conduct, and the context of her criminal conduct. *Id.* at 100-07. For the same reasons the court gave for the sentence it imposed, and because it found that Ms. Peters was not likely to succeed on appeal, the court denied a stay of execution. *Id.* at 105. The court also denied Ms. Peters' oral request for an appeal bond. *Id.* at 109. The court subsequently issued a written order denying Ms. Peters' written motion for an appeal bond, "for the reasons stated on the record during today's [sentencing hearing], and for the additional reasons stated in the [prosecution's] response," which addressed Ms. Peters' flight risk, disregard of court orders, and low likelihood of success on appeal. *Id.* at 117.

2

Applicant filed a notice of appeal and motion for an appeal bond in the Colorado Court of Appeals ("CCA"). ECF No. 2, at 170-183, 185-221. The CCA denied the motion. *Id.* at 184. Applicant's direct appeal is currently pending in the CCA.

### III.  Federal Habeas Claim

Ms. Peters asserts that the state district court violated her First Amendment right to free speech because it punished her for her allegedly protected statements, as evidenced, according to Ms. Peters, by the court's statements at her sentencing hearing. ECF No. 1, at 14-17.

### IV.  Habeas Corpus Principles

Habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation marks omitted).

#### A.  Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "with respect to any claim that was adjudicated on the merits in State court proceedings," habeas relief is barred unless the adjudication "resulted in a decision that was . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

It is the Supreme Court's "holdings, as opposed to *dicta*," that are "the exclusive touchstone for clearly established federal law" and must, on habeas review, "be construed narrowly." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). Clearly established federal law "consist[s] only of something akin to on-point holdings" of the Supreme Court, meaning

3

"holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *Id.* at 1016.

According to the Supreme Court, a state court decision is "contrary to" Supreme Court case law only if it "arrives at a conclusion opposite to that reached by this Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). "It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (quoting *Williams*, 529 U.S. at 405).

As for unreasonableness, the question is not whether the state-court decision was correct, but whether it was "objectively unreasonable." *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004). Under this standard, habeas relief is warranted "only if all 'fairminded jurists' would agree that the state court got it wrong." *Stouffer v. Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013) (quoting *Richter*, 562 U.S. at 102). In other words, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006).

Federal courts "assess the reasonableness of the state court's decision and no more." *Wellmon v. Colorado Dep't of Corr.*, 952 F.3d 1242, 1249 (10th Cir. 2020). State courts are given more leeway in applying a general rule to the specific facts of a case than in applying a narrow rule. *Yarborough*, 541 U.S. at 664.

In applying § 2254(d)(2), the question is also not correctness, but reasonableness—"a substantially higher threshold." *Schriro v. Landigan*, 550 U.S. 465, 473-74 (2007). "[A] state-

court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

Further, under § 2254(e)(1), a habeas court must *presume* a state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. *Hooks v. Workman*, 689 F.3d 1148, 1164 (10th Cir. 2012). This presumption applies to factual determinations by both state trial and appellate courts. *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). And it applies to explicit as well as implicit findings, including credibility determinations. *Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

### B. Review outside of § 2254(d)

AEDPA constitutes a "precondition to the grant of habeas relief . . . not an entitlement to it." *Fry v. Pliler*, 551 U.S. 112, 119 (2007). Accordingly, if § 2254(d) is overcome or does not apply, the claim must then be evaluated de novo under pre-AEDPA habeas standards. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 202-03 (2011); *Cargle v. Mullins*, 317 F.3d 1196, 1206 (10th Cir. 2003). If constitutional error is then found, the writ still may not be granted unless the error *in fact* "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry*, 551 U.S. at 116-17 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993)). Even a "reasonable possibility" of prejudice does not justify putting states to the "arduous task" of conducting a retrial. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998). Doing so is warranted only where the applicant establishes that she "was actually prejudiced by the error." *Id.*

### V. Ms. Peters is not entitled to relief.

AEDPA bars relief on Ms. Peters' claim because she fails to satisfy the requirements in § 2254(d)(1) or (2), and relief is not warranted under pre-AEDPA standards in any event.

5

### A. Additional Facts

At her sentencing hearing, Ms. Peters presented a lengthy slideshow. ECF No. 2, at 72. Her comments spanned 24 pages of the hearing transcript. *Id.* at 72-96. Much of it was devoted to allegations that the Colorado Secretary of State used the statewide biannual election software update to destroy records and cover up problems with the computerized election system. *Id.* She also stated repeatedly that she was an honest person. *Id.* at 73, 87, 94.

Explaining its decision to sentence Ms. Peters to prison, the district court rejected her repeated assertions of honesty and dedication as a public servant. ECF No. 2, at 102-03. The court pointed to her deceptive criminal conduct as evidence of Ms. Peters' belief that she was above the law and noted the impact it had on her reputation and the community. *Id.* The court also discussed Ms. Peters' allegations of election fraud as the context of her criminal conduct, explaining that she used her position to commit crimes for the purpose of promoting these allegations, which benefited her personally. *Id.* at 104-05. The court denied an appeal bond for the same reasons and because Ms. Peters posed a flight risk, disregarded court orders, and was not likely to succeed on appeal. *Id.* at 117.

Ms. Peters filed a motion for an appeal bond in the CCA, which the CCA summarily denied. ECF No. 2, at 170-184.

### B. Analysis

A claim is presumed adjudicated on the merits if it was presented to the state courts and relief was denied. *Johnson v. Williams*, 568 U.S. 289, 298-99 (2013). Respondents maintain their position that Ms. Peters failed to fairly present her claim to the CCA in her motion for an appeal bond. *See* ECF No. 66, at 6-8. However, to the extent this Court determines that Ms. Peters did

6

fairly present her claim to the CCA, the claim is presumed to have been adjudicated on the merits by the CCA, and the CCA's decision is reviewed under AEDPA. *Johnson*, 568 U.S. at 298-99.

Furthermore, when a state court does not explain its reasoning, as is the case with the CCA's ruling here, federal habeas courts must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.

### i.  § 2254(d)(1)

Ms. Peters asserts that the state district court violated her First Amendment right to free speech because it punished her for her allegedly protected statements. ECF No. 1, at 15. "[A] fundamental principle of the First Amendment is that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys." *Matal v. Tam*, 582 U.S. 218, 220-21 (2017). However, the Supreme Court has not decided, or even considered, whether denial of an appeal bond (or even a pretrial bond) can constitute a violation of the First Amendment.

Without a Supreme Court decision on the question, there is no clearly established law. *See* § 2254(d)(1) (referencing "clearly established Federal law, as determined by the Supreme Court"). "Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context." *House*, 527 F.3d at 1015. For example, in *Carey v. Musladin*, 549 U.S. 70, 76 (2006), the Supreme Court rejected a habeas claim for lack of clearly established law where the claim alleged deprivation of a fair trial by the courtroom conduct of a murder victim's family members (i.e., wearing buttons with a photograph of the victim). *Id.* The Court held that there was no

clearly established law because its previous decisions had addressed only improper state-sponsored courtroom conduct. *Id.* at 76-77.

"[W]ithout clearly established federal law, a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *House*, 527 F.3d at 1017; *see also Woods v. Donald*, 575 U.S. 312, 318 (2015) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). Instead, "the absence of clearly established federal law is dispositive." *House*, 527 F.3d at 1018; *accord Musladin*, 549 U.S. at 76.

Here, Ms. Peters cites no on-point Supreme Court cases, and Respondents are aware of none. Instead, she relies only on general Supreme Court holdings about the First Amendment. ECF No. 1, at 4, 14-17. Aside from that, she cites nothing more than a single circuit case and one district court case in support of her claim that the state courts' denial of an appeal bond violated the First Amendment. *Id.* at 4, 15. But identifying on-point Supreme Court precedent is the necessary "starting point" for any analysis under § 2254(d)(1). *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (per curiam). Lower court decisions may, of course, shed light on what constitutes one reasonable application of a Supreme Court holding. But as the *Rodgers* Court explained, circuit court precedent may not be used to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced." *Id.* at 64; *see also House*, 527 F.3d at 1015-16 (federal courts may not judge state court decisions against "general principles teased from precedent.").

The Supreme Court case most closely on point is perhaps *Dawson v. Delaware*, 503 U.S. 159 (1992). However, *Dawson* is factually and legally inapposite. In *Dawson*, the Supreme Court held that the admission at sentencing of evidence of a capital defendant's membership in a white

8

supremacist prison gang violated the First Amendment because "the evidence proved nothing more than the defendant's abstract beliefs." *Id.* at 167. However, in so holding, the Court emphasized that "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.* at 165.

The following year, in *Wisconsin v. Mitchell*, 508 U.S. 476, 486 (1993), the Court clarified its holding in *Dawson*, explaining that a sentencing court does not violate the First Amendment by considering protected beliefs or associations if they are relevant to the issues involved in the sentencing proceeding, as was the case in *Barclay v. Florida*, 463 U.S. 939, 942-44 (1983) (plurality opinion). However, neither *Mitchell* nor *Barclay* are directly on point for AEDPA purposes either. In *Mitchell*, the question was whether a sentencing provision implicated the First Amendment's speech protections by punishing a defendant for selecting a victim on the basis of race or other protected status. *Id.* at 481-82. In *Barclay*, the issue was the sentencing court's consideration of evidence of the defendant's membership in the Black Liberation Army. 463 U.S. at 942-44. In other words, none of these three cases involved the defendant's statements or the denial of an appeal bond.

But even if *Dawson*, *Mitchell*, or *Barclay* governed Ms. Peters' claim, she fails to establish that the CCA's decision was contrary to, or an unreasonable application of those cases. At a minimum, fairminded jurists could disagree about whether the CCA's decision was inconsistent with the Supreme Court precedent that a sentencing court may consider First Amendment-protected speech if it is relevant to the issues involved in the sentencing proceeding.

At her sentencing hearing, Ms. Peters presented her allegations of election fraud at length. The trial court addressed these statements and discussed Ms. Peters' criminal conduct in

9

the context of these statements. The court explained that Ms. Peters sought attention and used her position as an elected official to promote allegations of election fraud and further her personal agenda. The court also discussed Ms. Peters' attempts to justify her criminal conduct with allegations of election fraud. The court further pointed to her deceptive criminal conduct and disregard of court orders as evidence of her belief that she was above the law.

Fairminded jurists could determine, under *Mitchell, Dawson*, and *Barclay*, that the trial court did not violate the First Amendment when it considered the allegations of election fraud that Ms. Peters herself presented at her sentencing hearing and how these allegations formed the context of her criminal conduct. For example, in *United States v. Stewart*, 686 F.3d 156, 167 (2d Cir. 2012), the court held that no First Amendment violation occurred when the sentencing court considered the defendant's public statements about her original sentence and lack of remorse. Similarly, in *United States v. Simkanin*, 420 F.3d 397, 417 (5th Cir. 2005), the court determined that the sentencing court's consideration of the defendant's beliefs, which were "directly related to the crimes in question," did not violate the First Amendment. And in *Kapadia v. Tally*, 229 F.3d 641, 648 (7th Cir. 2000), the court concluded that the sentencing court's enhancement of the defendant's sentence on the basis of his statements, which the court found relevant to his motive and showed a lack of remorse, did not constitute a First Amendment violation, explaining that "[n]othing in the Constitution prevents the sentencing court from factoring a defendant's statements into sentencing when those statements are relevant to the crime or to legitimate sentencing considerations."

In short, there is no clearly established Supreme Court standard for Ms. Peter's claim. But even assuming arguendo that there is, Ms. Peters fails to establish that the CCA's application of this standard was objectively unreasonable such that it represents "an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 86. Nor has she identified a Supreme Court case involving circumstances materially indistinguishable from hers and reaching an opposite conclusion. Accordingly, Ms. Peters fails to satisfy the requirements of § 2254(d)(1).

### ii.   § 2254(d)(2)

Ms. Peters also fails to satisfy the requirement of § 2254(d)(2) to establish that the CCA's denial was based on an unreasonable determination of the facts. To the extent that Ms. Peters asserts that the trial court's determination that her election fraud allegations were lies was unreasonable, she fails to establish that the denial of an appeal bond was based on this determination. Indeed, the trial court's denial of an appeal bond was not based on its determination that the allegations were lies. Rather, the court's decision was based on its determination that Ms. Peters used her position as an elected official to promote the allegations and fuel controversy about the reliability of elections in a quest for fame and power, and that Ms. Peters used the allegations as a justification for her criminal conduct. Thus, whether the allegations were lies was immaterial to the court's ruling.

Ms. Peters also asserts that the court's decision was based on a finding of contempt against her that was later overturned. But it was Ms. Peters herself who broached the topic of the contempt at her sentencing hearing, and the court did not mention it in its rulings. Furthermore, the contempt was not overturned because there was insufficient evidence of Ms. Peters' conduct but because the district court had not made sufficient findings regarding the court order she violated. *See People in re Peters*, 2024 WL 5166237 (Colo. App. Dec. 19, 2024).

Accordingly, AEDPA bars relief on Applicant's claim.

### iii. Pre-AEDPA standards

Ms. Peters' claim would also fail on de novo review under pre-AEDPA standards because, as discussed, she has not established that the sentencing court's consideration of statements she made during the sentencing hearing, which were also relevant to, and formed the context of, her criminal conduct violated the First Amendment. Furthermore, any error is harmless because Ms. Peters would not have been granted an appeal bond under the state's bond statutes in any event.

Colorado's bond statutes prohibit a court from setting bail after a conviction unless certain exceptions apply. Colo. Rev. Stat. § 16-4-201.5(2). This is one of the reasons appeal bonds are rarely granted in Colorado. Only if the court finds that the person is unlikely to flee, is not a danger to the community, and that the appeal is not frivolous or pursued for the purpose of delay may the court proceed to considering various statutory factors to determine if granting an appeal bond would be an appropriate exercise of its discretion. Colo. Rev. Stat. § 16-4-202(1); *People v. Gurule*, 174 P.3d 846 (Colo. App. 2007). These factors are:

(a) The nature and circumstances of the offense before the court and the sentence imposed for that offense;

(b) The defendant's length of residence in the community;

(c) The defendant's employment, family ties, character, reputation, and mental condition;

(d) The defendant's past criminal record and record of appearance at court proceedings;

(e) Any showing of intimidation or harassment of witnesses or potential witnesses, or the likelihood that the defendant will harm or threaten any person having a part in the trial resulting in conviction,

(f) Any other criminal charges pending against the defendant and the potential sentences should the defendant be convicted of those charges;

(g) The circumstances of, and sentences imposed in, any criminal case in which the defendant has been convicted but execution stayed pending appeal;

      (h)      The likelihood that the defendant will commit additional criminal offenses during the pendency of such defendant's appeal; and

      (i)      The likelihood of success on appeal.

§ 16-4-202(1).

Here, the state district court found that Ms. Peters was both a flight risk and a danger to the community. ECF No. 2, at 104, 117. Thus, pursuant to the bond statute, the court was prohibited from setting bail in Ms. Peters' case. But even assuming arguendo that the court had found that Ms. Peters was not a flight risk or danger to the community, the statutory factors weighed against setting an appeal bond. Specifically, the state district court found that Ms. Peters engaged in corruption by betraying her duty to the public as an elected official for her own benefit, that she believed she was above the law, that she would commit the offenses again if given the opportunity, that her reputation had been damaged by her deceptive conduct, that her criminal actions were a severe breach of the public's trust, and that she was not likely to succeed on appeal. *Id.* at 101-05. Therefore, Ms. Peters was not eligible for an appeal bond under Colorado's bond statutes, and thus, any error was harmless.

***

Accordingly, Ms. Peters is not entitled to relief on her claim.

    **VI.**    **Were relief warranted, the proper remedy would be a conditional writ.**

Respondents maintain their position that: (1) *Younger* requires this Court to abstain from exercising jurisdiction in this case because Ms. Peters' direct appeal is currently pending in state court, *see* ECF Nos. 62, 66; (2) the exhaustion doctrine precludes relief because (a) Ms. Peters failed to fairly present her claim to the CCA in her motion for an appeal bond and (b) this Court must defer ruling because the same underlying constitutional claim is currently pending before

the CCA in Ms. Peters' state court direct appeal, ECF Nos. 25, 66; (3) relief is barred under AEDPA; and (4) relief is not warranted under pre-AEDPA standards.

However, to the extent this Court determines that it may exercise its jurisdiction, that review is not precluded by the exhaustion doctrine, that AEDPA does not bar relief, and that relief is warranted under pre-AEDPA standards, the proper remedy is a conditional writ that allows the state courts to reconsider Ms. Peters' request for an appeal bond as an alternative to this Court holding a bond hearing itself. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("[T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."); *see also Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) (conditional writs "enable habeas courts to give States time to replace an invalid judgment with a valid one"); *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("District courts rightly favor conditional grants, which provide states with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns.").

For example, in a case Ms. Peters has cited, *United States ex rel. Nistler v. Chrans*, 720 F. Supp. 115, 119 (N.D. Ill. 1989), after concluding that the state violated the Equal Protection Clause when it denied the prisoner an appeal bond, the court issued a conditional writ giving the state courts an opportunity to hold a bond hearing as an alternative to the habeas court holding its own bond hearing. As noted, this remedy accords the proper respect to comity and federalism principles. Furthermore, allowing the state courts to reconsider Ms. Peters' request for an appeal bond in the first instance serves the interests of judicial economy.

The state district court that presided over Ms. Peter's criminal prosecution already has the information necessary to make findings and weigh the factors set forth in the state's bond statute,

whereas the parties would have to submit substantial evidence to this Court for it to be able to perform this task. Likewise, the state bond statute is more appropriately applied by the state courts, which are more familiar with it. Finally, a federal bond pending Ms. Peters' state court direct appeal would require coordination between this Court and the state courts and agencies, while coordination of a state appeal bond between the state courts and agencies would happen automatically under established state protocols and procedures.

Regarding any health issues Ms. Peters may be suffering, she has the option of petitioning the Colorado Department of Corrections for relief, including for transfer to a medical custodial facility. *See* Colo. Dep't Corrections, Admin. Regs. 700-02(IV)(B)(13), (J) (2025); 850-04(IV)(C)(1) (2024) (available at https://cdoc.colorado.gov/about/department-policies).

## VII.   Conclusion

Based on the reasons and authorities set forth above, Respondents request that this Court deny relief and dismiss the application with prejudice.

## VIII.   Transcripts

Transcripts of the trial, sentencing hearing, and pre-trial hearings are available and can be furnished by the state district court upon order of this Court. Ms. Peters filed a copy of the transcript of the sentencing hearing in the appendix to her application. ECF No. 2, at 6-112. Respondents have cited to this transcript in this Answer.

## IX.   State court appeal briefs

The amended opening brief filed in Ms. Peters' state court direct appeal was previously filed as a supplement to the pre-answer response. ECF No. 51-1. The answer and reply briefs filed in Ms. Peters' direct appeal are attached as an appendix. Ms. Peters filed a copy of the

CCA's denial of her motion for an appeal bond in the appendix to her application. ECF No. 2, at 174.

Respectfully submitted,

PHILIP J. WEISER
Attorney General


*s/ Lisa K. Michaels*
LISA K. MICHAELS, 38949*
Senior Assistant Attorney General
Criminal Appeals Section
Attorneys for Respondents

Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado  80203
Telephone:  (720) 508-6000
E-Mail:  lisa.michaels@coag.gov
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy of same to be served on opposing counsel via the email addresses that opposing counsel has registered with the Court's ECF system.

s/ Lisa K. Michaels