| | |
|---|---|
| COURT OF APPEALS<br>STATE OF COLORADO<br><br>2 East 14th Avenue<br>Denver, CO 80203 | |
| Weld County District Court<br>Honorable Matthew D. Barrett, Judge<br>Case No. 22CA371 | |
| THE PEOPLE OF THE STATE OF<br>COLORADO,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>TINA PETERS,<br><br>Defendant-Appellant. | ▲ **COURT USE ONLY** ▲ |
| | Case No. 24CA1951 |
| PHILIP J. WEISER, Attorney General<br>LISA K. MICHAELS,<br>Senior Assistant Attorney General*<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway<br>Denver, CO 80203<br>Registration Number: 38949<br>*Counsel of Record | |
| **PEOPLE'S ANSWER BRIEF** | |

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of C.A.R. 28 or 28.1 and C.A.R. 32, including all formatting requirements set forth in these rules.  Specifically, the undersigned certifies that:

The brief complies with the applicable word limits set forth in C.A.R. 28(g) or C.A.R. 28.1(g).

 It contains 9,500 words.

The brief complies with the standard of review requirements set forth in C.A.R. 28(a)(7)(A) and/or C.A.R. 28(b).

 In response to each issue raised, the appellee must provide under a separate heading before the discussion of the issue, a statement indicating whether appellee agrees with appellant's statements concerning the standard of review and preservation for appeal and, if not, why not.

I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of C.A.R. 28 or 28.1 and C.A.R. 32.

   */s/ Lisa K. Michaels*

# TABLE OF CONTENTS

                                                                              **PAGE**

STATEMENT OF THE CASE ................................................................ 1

STATEMENT OF THE FACTS .............................................................. 1

SUMMARY OF THE ARGUMENT .......................................................... 8

ARGUMENT ...................................................................................... 11

I.  Denial of the pretrial motion to dismiss on immunity grounds is
    not reviewable here, but in any event, the claim fails........................ 11

    A. Preservation and Standard of Review .......................................... 11

    B. Law and Analysis ................................................................... 11

        1.  Pretrial immunity claims are not reviewable on direct
            appeal ............................................................................ 11

        2.  In any event, the claim fails............................................... 12

II. The evidence supports the jury's verdicts. ...................................... 17

    A. Preservation and Standard of Review .......................................... 17

    B. Law and Analysis ................................................................... 17

        1.  Attempt to influence a public servant ................................ 18

        2.  Conspiracy to commit criminal impersonation..................... 20

        3.  First degree official misconduct ....................................... 22

III. The trial court properly excluded inadmissible evidence, and in
     any event, any error was harmless. .............................................. 23

    A. Preservation and Standard of Review .......................................... 23

    B. Additional Facts ................................................................... 23

i

# TABLE OF CONTENTS

PAGE

C. Law and Analysis ................................................................. 25

IV. The trial court properly declined to give defense-proposed jury
instructions. .......................................................................... 29

A. Preservation and Standard of Review ............................. 29

B. Law and Analysis ........................................................... 30

1. Execution of Public Duty .......................................... 30

2. Supremacy Clause immunity ..................................... 31

V. The criminal impersonation jury instruction was not plainly
erroneous ............................................................................. 32

A. Preservation and Standard of Review ............................. 32

B. Law and Analysis ........................................................... 33

VI. The indictment provided adequate notice of the charges ......... 34

A. Preservation and Standard of Review ............................. 34

B. Additional Facts ............................................................. 34

C. Law and Analysis ........................................................... 36

VII.    The prosecution's statements were proper, did not
constitute misconduct, and were not reversible error in any
event ..................................................................................... 37

A. Preservation and Standard of Review ............................. 37

B. Additional Facts ............................................................. 38

1. BIOS passwords security breach ................................ 38

ii

# TABLE OF CONTENTS

                                                                    PAGE

    2. Dr. Frank's statement ................................................... 40

C. Law and Analysis ........................................................ 41

    1. BIOS passwords security breach ........................... 41

    2. Dr. Frank's statement ................................................... 43

VIII.    The trial court properly denied a hearing to elicit juror
testimony. ................................................................. 44

A. Preservation and Standard of Review ...................... 44

B. Additional Facts .................................................... 44

C. Law and Analysis ................................................. 45

IX. The trial court's sentencing considerations were proper; no
rights were violated. ............................................... 46

A. Preservation and Standard of Review ...................... 46

B. Additional Facts .................................................... 46

C. Law and Analysis ................................................. 47

X. Peters' sentences give rise to no inference of gross
disproportionality. .................................................. 51

A. Preservation and Standard of Review ...................... 51

B. Additional Facts .................................................... 52

C. Law and Analysis ................................................. 53

CONCLUSION ............................................................ 55

iii

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Brown v. Nationsbank Corp., 188 F.3d 579 (5th Cir. 1999) ...................... 13

Cantina Grill, JV v. City & Cnty. of Denver Cnty. Bd. of Equalization
   by & through Kennedy, 2015 CO 15 ...................................................... 11

Cervantes v. People, 715 P.2d 783 (Colo. 1986) ......................................... 36

Clark v. People, 232 P.3d 1287 (Colo. 2010)............................................... 17

Clifton v. Cox, 549 F.2d 722 (9th Cir. 1977)............................................... 13

Colorado v. Nord, 377 Fed. Supp. 2d 945 (D. Colo. 2005).......................... 14

Connecticut v. Marra, 528 F. Supp. 381 (D. Conn. 1982) .......................... 13

Copeland v. People, 2 P.3d 1283 (Colo. 2000) ............................................ 27

Domingo-Gomez v. People, 125 P.3d 1043 (Colo. 2005)........................ 38, 41

Ex parte Conway, 48 F. 77 (C.C.D.S.C. 1891)............................................. 13

Fletcher v. People, 179 P.3d 969 (Colo. 2007) ............................................ 26

Hagos v. People, 2012 CO 63....................................................................... 32

Hunter v. Wood, 209 U.S. 205 (1908) ......................................................... 13

In re Neagle, 135 U.S. 1 (1890)............................................................... 13, 14

In re Quarles, 158 U.S. 532 (1895) .............................................................. 13

James v. People, 2018 CO 72........................................................................ 44

Kentucky v. Long, 837 F.2d 727 (6th Cir. 1988) ......................................... 15

iv

# TABLE OF AUTHORITIES

**PAGE**

Krutsinger v. People, 219 P.3d 1054 (Colo. 2009) ................................. 23, 28

Lopez v. People, 113 P.3d 713 (Colo. 2005) ........................................... 46, 52

Lucero v. People, 2017 CO 49 ........................................................................ 54

Mata-Medina v. People, 71 P.3d 973 (Colo. 2003) ....................................... 30

McDonald v. People, 2024 CO 75 ............................................................ 53, 54

Mesa v. California, 489 U.S. 121 (1989) ........................................................ 13

New York v. Tanella, 374 P.3d 141 (2d Cir. 2004) ...................................... 12

Ohio v. Thomas, 173 U.S. 276 (1899) ........................................................... 12

People v. Archuleta, 2021 COA 49 ................................................................ 45

People v. Carlson, 72 P.3d 411 (Colo. App. 2003) ...................................... 18

People v. Cevallos-Acosta, 140 P.3d 116 (Colo. App. 2005) ....................... 44

People v. Clark, 2015 COA 44 ...................................................................... 44

People v. Conyac, 2014 COA 8M ................................................................. 23

People v. Donald, 2020 CO 24 ...................................................................... 17

People v. Gonzales, 666 P.2d 123 (Colo. 1983) ........................................... 17

People v. Guenther, 740 P.2d 971 (Colo. 1987) .......................................... 31

People v. Hasadinratana, 2021 COA 66 ....................................................... 29

People v. Leske, 957 P.2d 1030 (Colo. 1998) .............................................. 48

People v. Loris, 2018 COA 101 .................................................................... 52

v

# TABLE OF AUTHORITIES

**PAGE**

People v. Lozano-Ruiz, 2018 CO 86 ................................................................. 33

People v. McBride, 228 P.3d 216 (Colo. App. 2009) .................................... 17

People v. Miller, 113 P.3d 743 (Colo. 2005) ................................................. 33

People v. Owens, 2024 CO 10 ......................................................................... 27

People v. Perez-Hernandez, 2013 COA 160 ................................................. 34

People v. Relaford, 2016 COA 99 .................................................... 16, 31, 33

People v. Rhea, 2014 COA 60 ................................................................. 37, 38

People v. Richardson, 58 P.3d 1039 (Colo. App. 2002) ............................. 36

People v. Roberts, 601 P.2d 654 (Colo. App. 1979) .................................... 31

People v. Samson, 302 P.3d 311 (Colo. App. 2012) .................................... 41

People v. Scearce, 87 P.3d 228 (Colo. App. 2003) ...................................... 25

People v. Stellabotte, 2016 COA 106 ............................................................ 32

People v. Tardif, 2017 COA 136 .................................................................... 29

People v. Trujillo, 2018 COA 12 ................................................................... 29

People v. Tyme, 2013 COA 59 ....................................................................... 23

People v. Van Meter, 2018 COA 13 .............................................................. 33

Sowders v. Damron, 457 F.2d 1182 (10th Cir. 1972) ................................. 13

Stewart v. Rice, 47 P.3d 316 (Colo. 2002) ................................................... 45

Tennessee v. Davis, 100 U.S. 257 (1879) ..................................................... 13

vi

# TABLE OF AUTHORITIES

**PAGE**

United States ex rel. Drury v. Lewis, 200 U.S. 1 (1906)................................16

United States v. Moll, 2023 WL 2042244 (D. Colo. 2023)..........................12

United States v. Stewart, 686 F.3d 156 (2d Cir. 2012)..............................48

Wells-Yates v. People, 2019 COA 90 ....................................................53, 55

Wend v. People, 235 P.3d 1089 (Colo. 2010) ..............................................38

Wood v. People, 255 P.3d 1136 (Colo. 2011)..................................11, 12, 16

Wyoming v. Livingston, 443 F.3d 1211 (10th Cir. 2006) ...............12, 14, 31

## CONSTITUTIONS

U.S. Const. Amend. I. .................................................................................48

## STATUTES

§ 18-5-113(1)(b)(I)........................................................................................21

§ 17-22.5-405, C.R.S. (2025)........................................................................53

§ 18-1.3-401(1)(a)(V.5)(A), C.R.S. (2025) ....................................................52

§ 18-1.3-401(1)(b)(I), C.R.S. (2025) ............................................................48

§ 18-1.3-501, C.R.S. (2025)..........................................................................52

§ 18-1-102.5, C.R.S. (2025) ..........................................................................48

§ 18-1-701(1), C.R.S. (2025) ........................................................................30

§ 18-1-701(2), C.R.S. (2025) ........................................................................30

§ 18-1-704.5, C.R.S. (2025)..........................................................................32

vii

# TABLE OF AUTHORITIES

**PAGE**

§ 18-1-710, C.R.S. (2025)......................................................................30, 32

§ 18-2-201, C.R.S. (2025)..............................................................................21

§ 18-5-113(1)(b)(I), C.R.S. (2025) ........................................................21, 33

§ 18-5-113(1)(b)(II), C.R.S. (2025)..............................................................33

§ 18-8-306, C.R.S. (2025)..............................................................................18

§ 18-8-404, C.R.S. (2025)..............................................................................22

§§ 18-1-701 to -709, C.R.S. (2025)...............................................................30

52 U.S.C. § 20701................................................................................14, 15, 30

## OTHER AUTHORITIES

C.A.R. 21 ........................................................................................................11

CRE 201 ..........................................................................................................42

CRE 401 ..........................................................................................................25

CRE 402 ..........................................................................................................25

CRE 403 ..........................................................................................................26

CRE 606(b) ......................................................................................................45

Crim. P. 52(a) ..................................................................................................38

Crim. P. 52(b) ..................................................................................................38

viii

## STATEMENT OF THE CASE

Tina Peters is the former Mesa County Clerk and Recorder. TR 8/1/24, pp 29-30. A jury found her guilty of three counts of attempt to influence a public servant (F4) and one count each of: conspiracy to commit criminal impersonation (F6), first-degree official misconduct (M2), violation of duty (M), and failure to comply with requirements of the Secretary of State (M).[1] CF, pp 4638-51, 5207. The trial court sentenced Peters to a total term of eight years and nine months imprisonment. TR 10/3/24, pp 102-03.

## STATEMENT OF THE FACTS

Government elections administered in Colorado are managed with a computer server called the election management system or EMS. TR 8/1/24, pp 138-39, 162:14-17. Private vendors provide the software. TR 8/1/24, p 140:2-17. In 2021, almost all counties, including Mesa

---

[1] The jury acquitted on criminal impersonation (F6), identity theft (F4), and one count of conspiracy to commit criminal impersonation (F6). CF, pp 4640-44.

1

County, contracted with the same vendor, Dominion Voting Systems.
TR 8/1/24, p 140:4-8.

The system software is updated every other year through a
confidential and secure process called the "trusted build" ("Build").
TR 8/1/24, pp 139-43. During the Build, staff from the Secretary of
State's Office (SOS), with assistance from vendor personnel, upload an
updated and certified version of the software to each county's server.
TR 8/1/24, pp 139-43. Prior election records must be backed up before
the Build; the vendor provides instructions to the counties on how to do
this. TR 8/1/24, p 154:20-22; TR 8/2/24, pp 20-21; TR 8/5/24, pp 30-31.
Paper ballots for each election are also retained under seal for
25 months. TR 8/1/24, pp 154-55; TR 8/2/24, p 21:8-19.

In April 2021, Peters requested that members of the public be
permitted to attend Mesa County's 2021 Build. TR 8/1/24, pp 142-43.
SOS Voting Systems Manager Jesse Romero denied this unusual
request, explaining that only personnel from the vendor, state, and
county could attend. TR 8/1/24, pp 143-44. He added that the cameras

2

in the room would document the Build, which the public could view at a

later time. TR 8/1/24, pp 147-48; EX 13.

Peters held a meeting in her office with her chief deputy clerk,

Belinda Knisley, and non-government individuals, Dr. Douglas Frank,

Sherronna Bishop, and Maurice Emmer. TR 8/6/24, p 174:7-15;

TR 8/8/24, pp 260-61. At different points, Peters also called her elections

staff into the meeting. TR 8/2/24, pp 27-28, 203-05; TR 8/7/24, p 90:5-16;

EX 22A. During the meeting, Dr. Frank gave a presentation about

alleged election fraud. TR 8/2/24, pp 27-30. Peters then invited Dr.

Frank to attend the Build to perform an "audit" of the election

equipment despite the SOS's prohibition of third parties. TR 8/2/24,

pp 27, 30-31. Dr. Frank said he had a team he would send to do the

audit. TR 8/5/24, pp 20-22; TR 8/7/24, pp 93-94. At this point in the

meeting, Peters asked her elections staff to leave. TR 8/2/24, p 31:6-18;

TR 8/7/24, pp 92-93.

Thereafter, Peters contacted a person named Gerald Wood, who

agreed to perform computer work as a county contractor. TR 8/2/24,

pp 118-119. However, Peters directed her chief deputy to tell the county

3

IT department that Mr. Wood was a *state employee* who needed system access. TR 8/5/24, pp 92-94; TR 8/6/24, pp 170-72; EX 20. The county employee who gave Mr. Wood access, David Underwood, testified he would not have provided access had he known Peters misrepresented that Mr. Wood was a state employee. TR 8/5/24, p 121:2-10.

Peters meanwhile told her elections staff that Mr. Wood was a new *county employee*—an administrative assistant who would train as backup to the back-office elections manager. TR 8/5/24, pp 26-27; TR 8/7/24, p 109:12-16. Peters informed staff that Mr. Wood would attend the Build instead of her front-office elections manager. TR 8/5/24, pp 25-27.

SOS Employee Romero sent Build instructions to every county, reiterating that only state, county, and vendor personnel could attend. TR 8/1/24, pp 150-52; EX 17. He explained that the Build would not proceed if unauthorized persons were present. TR 8/1/24, p 153:2-15. Counties were required to affirm that they would follow SOS guidelines, provide the names of the county employees who would attend, and verify that the employees were vetted and part of the security plan.

4

TR 8/1/24, pp 152-53; TR 8/7/24, pp 108-09. Mr. Romero also directed

the counties to back up any elections records not yet backed up.

TR 8/1/24, pp 153-54; TR 8/5/24, pp 30-31.

Based on Peters' representations, the back-office elections

manager told Mr. Romero that Mr. Wood would attend the Build as one

of the three county employees permitted to attend. TR 8/1/24, p 158:2-7;

TR 8/7/24, pp 108-09; EX 18. On this information, Mr. Romero allowed

the Build to proceed. TR 8/5/24, pp 159-60. But he testified at trial that

had he known an unauthorized person was present, he would have

directed his technician to "pack up and leave." TR 8/1/24, pp 166-67.

At Peters' request, the county HR department provided Mr. Wood

with the same highly-exclusive badge access as the back-office elections

manager. TR 8/2/24, pp 97-98; TR 8/6/24, pp 171:2-20. After Mr. Wood

received his badge, computer login, and email, he was directed to give

his badge to Peters' chief deputy, who gave it to Peters. TR 8/2/24,

pp 125-132; TR 8/6/24, p 182:20-24. Peters intended to give the badge to

a third party to access the elections server and Build. TR 8/6/24, pp 182-

83; TR 8/9/24, pp 64-70; EX 71, pp 9, 18.

5

At Peters' direction, the security cameras in the room with the election equipment were turned off a week before the Build and turned back on a month later. TR 8/2/24, pp 81-82; TR 8/5/24, pp 76-78, 81-82; TR 8/6/24, pp 177-79. The county's standard practice was for the cameras to stay on all the time. TR 8/5/24, p 74:16-24.

Peters directed her back-office elections manager to show Mr. Wood around the Sunday before the Build. TR 8/7/24, pp 100-01. But instead of Mr. Wood, Peters brought in Conan Hayes, an associate of Dr. Frank and Mike Lindell. TR 8/8/24, p 183:9-17; TR 8/9/24, pp 40-42, 52:16-21. Posing as Mr. Wood, Mr. Hayes made a "forensic image" of the elections server. TR 8/5/24, pp 137-38; TR 8/7/24, pp 102-104.

SOS Employee Danny Casias subsequently performed the Build. TR 8/5/24, pp 169-70. He first confirmed that prior election records had been backed up. TR 8/5/24, p 170:7-10, 18-22. Because not all counties back up before his arrival, he checks and allows time for backups as needed. TR 8/5/24, p 170:10-12. Counties are required to back up records from every election. TR 8/5/24, p 170:13-15; TR 8/7/24, p 104:14-

6

16. The back-office elections manager confirmed she had already
performed the back-up. TR 8/7/24, pp 104-05.

Mr. Hayes arrived with Peters; she introduced him as county
employee Gerald Wood. TR 8/5/24, pp 167-68; TR 8/7/24, pp 110-11.
Mr. Casias testified he would not have performed the Build had he
known an unauthorized person was present. TR 8/5/24, pp 173:13-15,
174-75. Although cell phones were not permitted in the room, Peters
surreptitiously recorded video of the Build on her cell phone. TR 8/1/24,
p 91; TR 8/5/24, pp 235-36; TR 8/6/24, pp 189-90, 212-13.

After the Build was complete, Hayes downloaded another copy of
the server, which Peters later directed to be shipped to him since he had
to leave before downloading was complete. TR 8/6/24, pp 125-33;
TR 8/7/24, pp 118-120. Peters also sent him, or another person
associated with Dr. Frank and Mike Lindell, the video she recorded of
the Build. TR 8/7/24, pp 113:18-22, 118:10-13, 119-120.

Eventually, the video and still images of the Build were posted
online, triggering an investigation of Peters and her office. TR 8/8/24,
pp 29-33. The SOS issued an order for inspection and to provide

7

documentation. TR 8/8/24, pp 33-37; EX 51. Peters did not comply.

TR 8/8/24, p 62:6-9. She directed her staff not to talk to police, to

purchase "burner phones," and to use a separate email to communicate

with her and their attorneys. TR 8/6/24, pp 198-99; TR 8/7/24, pp 124-

125.

## SUMMARY OF THE ARGUMENT

Ms. Peters' immunity claim is not properly before this Court. But

in any event, the trial court properly ruled that the Supremacy Clause

did not bar the state's prosecution because Peters is not a federal

officer. Moreover, her criminal conduct was not "reasonable and

necessary" to comply with federal law.

The evidence was sufficient to support the jury's verdicts. It

established that Peters made and executed a plan in coordination with

others to provide an unauthorized person with access to the elections

server and Build by making false representations to state and other

county employees.

8

The trial court properly excluded evidence about Peters' reasons for committing the crimes because it was irrelevant and would have created a substantial risk of unfair prejudice, confusion of the issues, and misleading the jury. In any event, any error was harmless.

The trial court's decisions not to instruct the jury on the affirmative defense of execution of a public duty or on Supremacy Clause immunity were proper. Neither were supported by the evidence, and Supremacy Clause immunity is not a trial defense.

The criminal impersonation jury instruction was not plainly erroneous. The extra word did not cast serious doubt on the reliability of the verdict because that element was not at issue and the evidence supporting it was overwhelming.

The indictment provided adequate notice of the charges. The charges, combined with the recitation of facts in the indictment, sufficiently informed Ms. Peters of the elements.

The prosecution's statements were proper, did not constitute misconduct, and were not reversible error in any event. The prosecutors

9

fairly commented on the evidence, and evidence of Peters' guilt was overwhelming.

The trial court properly denied a hearing to elicit testimony from a juror because, absent speculation, the proffered information does not support any exception to the general prohibition on juror testimony. In any event, any error was harmless given the speculative nature of any prejudice and the overwhelming evidence of guilt.

The trial court's sentencing considerations were proper, and Ms. Peters' rights were not violated. The court properly considered Peters' dishonesty as it related to her conduct, her allocution, and other sentencing considerations.

Ms. Peters' sentences do not give rise to an inference of gross disproportionality. None were longer than three-and-a-half years, and the offenses were serious.

## ARGUMENT

**I.    Denial of the pretrial motion to dismiss on immunity grounds is not reviewable here, but in any event, the claim fails.**

### A.    Preservation and Standard of Review

As discussed below, the denial of the pretrial motion to dismiss is not properly before this court; therefore, preservation and standard of review are immaterial. However, if this Court reviews the issue, review is de novo. *See, e.g.*, *Cantina Grill, JV v. City & Cnty. of Denver Cnty. Bd. of Equalization by & through Kennedy*, 2015 CO 15, ¶15.

### B.    Law and Analysis

#### 1.    Pretrial immunity claims are not reviewable on direct appeal.

In *Wood v. People*, 255 P.3d 1136, 1142 (Colo. 2011), the supreme court held that a trial court's pretrial denial of immunity from prosecution under the "make-my-day" statute is not reviewable on appeal after trial. Rather, a defendant must seek review prior to trial under C.A.R. 21. *Id.* at 1141. The *Wood* court reasoned that a pretrial motion on immunity is analogous to a preliminary hearing—both are designed to shield parties from the rigors of trial. *Id.* at 1140. Further,

11

declining to dismiss the charges is not a final judgment—it merely permits the case to proceed to trial. *Id.* at 1141. The same is true for immunity under the Supremacy Clause. *See New York v. Tanella*, 374 P.3d 141, 147 (2d Cir. 2004) (immunity shields federal officer from gauntlet of trial).

### 2.    In any event, the claim fails.

"Supremacy Clause immunity governs the extent to which states may impose civil or criminal liability on *federal officials* for alleged violations of state law committed in the course of their federal duties." *Wyoming v. Livingston*, 443 F.3d 1211, 1213 (10th Cir. 2006) (emphasis added); *accord Ohio v. Thomas*, 173 U.S. 276, 283 (1899) (federal officers are immune from state prosecution when their offenses were committed while discharging their federal duties); *see also United States v. Moll*, 2023 WL 2042244, at *7 (D. Colo. 2023) ("Supremacy Clause immunity protects federal officers, acting within their federal authority, from liability under state law.").

Peters asserts "Supremacy Clause immunity is not limited to federal employees but extends to any individual who acts pursuant to a

12

duty imposed by federal law." OB, p 17. But the cases she cites do not support such a broad proposition. In *Hunter v. Wood*, 209 U.S. 205, 210 (1908), the Court extended immunity to a railroad employee acting under direct federal court order. And the lower federal court cases Peters cites—*Connecticut v. Marra*, 528 F. Supp. 381, 383-84 (D. Conn. 1982), and *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589 (5th Cir. 1999)—extended immunity to persons acting as agents for federal officers. To the extent language in *Marra* could be read to extend immunity to *anyone* acting "pursuant to federal law," such a proposition would be dicta unsupported by *Marra*'s holding or reasoning. *See Marra*, 528 F. Supp. at 385 (referencing *Ex parte Conway*, 48 F. 77 (C.C.D.S.C. 1891), which involved a construction foreman building a telegraph line under congressional authorization).

The other federal cases Peters cites—*Mesa v. California*, 489 U.S. 121, 127 (1989); *In re Quarles*, 158 U.S. 532 (1895); *In re Neagle*, 135 U.S. 1 (1890), *Tennessee v. Davis*, 100 U.S. 257, 263 (1879); *Sowders v. Damron*, 457 F.2d 1182 (10th Cir. 1972); *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977); and *Colorado v. Nord*, 377 Fed. Supp. 2d 945 (D. Colo.

13

2005)—do not support her assertion either because they concerned federal employees.

Here, no evidence supports a finding that Peters was a federal official or officer, or was acting as an agent of any federal official or officer or pursuant to a direct federal court order, when she committed the crimes in this case.

And even assuming arguendo that she could satisfy this threshold requirement for immunity, the Supremacy Clause would still not apply because her criminal conduct was not reasonably necessary to comply with federal law. *See Livingston*, 443 F.3d at 1222 (Supremacy Clause immunity requires that the federal officer had "an objectively reasonable and well-founded basis to believe [their] actions were necessary to fulfill [their] duties"); *accord In re Neagle*, 135 U.S. at 6 (federal officer's actions must be "necessary and proper" for execution of their duties).

Peters alleges she acted pursuant to her duty to preserve election records under 52 U.S.C. § 20701, which provides in relevant part:

14

> Every officer of election shall retain and preserve,
> for a period of twenty-two months from the date
> of [federal elections] all records and papers which
> come into his possession relating to any
> application, registration, payment of poll tax, or
> other act requisite to voting in such election.

OB, p 16. Notably, the statute does not authorize anyone to conduct an

investigation of election fraud on behalf of the federal government.

Peters' criminal conduct was not reasonable and necessary to

perform the duty set forth in § 20701 because:

- she had the ability to preserve election records by backing them

  up before the Build, and her staff had already done so;

- the "forensic images" of the elections server were not election

  records; they were copies of the vendor's proprietary software;

- she could have simply refused to allow the Build to occur if she

  believed it would destroy election records she had a duty to

  protect.

In sum, "the Supremacy Clause was not intended to be a shield for

'anything goes' conduct by federal law enforcement officers." *Kentucky v.

Long*, 837 F.2d 727, 746 (6th Cir. 1988). Supremacy Clause immunity is

not absolute, and a state may prosecute even a federal officer if their criminal actions cannot reasonably be said to have been committed in performance of their duties. *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 8 (1906).

Peters also contends the Privileges or Immunities Clause barred her state prosecution but makes only passing reference to this provision, without explanation or development of any argument as to how it applies here, *see* OB, pp 11-19. Therefore, this Court need not address it. *See, e.g.*, *People v. Relaford*, 2016 COA 99, ¶70 n.2 ("We do not consider bare or conclusory assertions presented without argument or development."). Finally, her assertion that the trial court lacked jurisdiction to rule on her motion to dismiss also fails. OB, p 18. The Tenth Circuit properly rejected this argument when Peters presented it in her related federal case, *Peters v. United States*, 2024 WL 3086003, *5-6 (10th Cir. 2024). *See also Wood*, 255 P.3d at 1140 (rejecting argument that immunity implicates court's jurisdiction).

## II.    The evidence supports the jury's verdicts.

### A.    Preservation and Standard of Review

The People agree preservation of this issue is immaterial and sufficiency of the evidence is reviewed de novo. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).

### B.    Law and Analysis

In reviewing for sufficiency of the evidence, an appellate court must examine both direct and circumstantial evidence and determine whether such evidence, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person of the defendant's guilt beyond a reasonable doubt. *People v. Donald*, 2020 CO 24, ¶18. This standard is "daunting." *People v. McBride*, 228 P.3d 216, 226 (Colo. App. 2009).

A determination of the credibility of witnesses is solely within the province of the fact finder, and an appellate court will not sit as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion from the same evidence. *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983). Where reasonable minds could differ, the

17

evidence is sufficient to sustain a conviction. *See People v. Carlson*, 72
P.3d 411, 416 (Colo. App. 2003).

### 1.    Attempt to influence a public servant

A person commits attempt to influence a public servant if the
person attempted to influence a public servant by means of deceit with
the intent to alter or affect the public servant's decision, vote, opinion,
or action concerning any matter which was to be considered or
performed by the public servant, agency, or body of which the public
servant was a member. § 18-8-306, C.R.S. (2025).

Here, as outlined above, the evidence established that Peters
executed a plan to provide an unauthorized person access to the
elections server and Build. Specifically, Peters obtained security
credentials for Gerald Wood by falsely representing to County
Employee Underwood that Mr. Wood was a *state employee* who needed
system access. TR 8/5/24, pp 92-94; TR 8/6/24, pp 170-72. Peters also
made false statements to her staff about Mr. Wood, resulting in an
email from her office to SOS Employee Romero falsely listing Mr. Wood

18

as a *county employee* who would attend the Build. TR 8/1/24, p 158:2-7;

TR 8/7/24, pp 108-09; EX 18. Finally, Peters introduced Conan Hayes to

SOS Employee Casias as Mr. Wood. TR 8/5/24, pp 167-68.

Peters asserts the evidence was insufficient to support the charge

related to Mr. Romero because she did not send the email about

Mr. Wood to Mr. Romero herself. But the jury could reasonably infer

that Peters knew and expected that her staff would convey her false

statements about Mr. Wood to Mr. Romero, which would induce him to

allow the Build to proceed. TR 8/1/24, pp 143-44, 166-67; TR 8/7/24,

pp 108-09; EX 18.

Peters next contends no evidence established a decision, opinion,

vote, or action of Mr. Casias as a result of her falsely representing to

him that Mr. Hayes was county employee Gerald Wood. To the

contrary, the evidence established that Mr. Casias proceeded with the

Build because he believed Hayes was an authorized county employee.

TR 8/5/24, pp 167-69. Mr. Casias testified he would not have conducted

the Build had he known an unauthorized person was present.

TR 8/5/24, pp 173:13-15, 174-75.

19

Finally, pointing to testimony elicited by defense counsel that it was Peters who made the decision to issue security credentials for Mr. Wood, and Mr. Underwood merely did as he was told, Peters asserts the evidence was not sufficient to establish a decision, opinion, vote, or action of Mr. Underwood. OB, pp 20-21. But Mr. Underwood's decision was to follow Peters' directive to issue the security credentials. He testified he would not have done so had he known she misrepresented Mr. Wood as a state employee. TR 8/5/24, p 121:2-10.

### 2.    Conspiracy to commit criminal impersonation[2]

A person commits conspiracy to commit criminal impersonation if the person, with the intent to promote or facilitate the commission of the crime of criminal impersonation, agreed with another person or persons that they, or one or more of them, would engage in conduct which constituted the crime or an attempt to commit the crime of criminal impersonation, or agreed to aid another person or persons in

---

[2] Peters' assertion about the criminal impersonation jury instruction, OB, p 22, is addressed in Argument V.

20

the planning or commission or attempted commission of the crime of criminal impersonation, and the person or a co-conspirator, performed any overt act to pursue the conspiracy. §§ 18-2-201, 18-5-113(1)(b)(I), C.R.S. (2025). A person commits criminal impersonation if the person knowingly assumes a false or fictitious identity or capacity, legal or other, and in such identity or capacity performed an act that, if done by the person falsely impersonated, subjects that person to an action or special proceeding, civil or criminal, or to liability, charge, forfeiture, or penalty. § 18-5-113(1)(b)(I).

Here, Peters asserts the evidence did not establish that Mr. Wood would have been subject to liability if he attended the Build and made a forensic image of the elections server. OB, pp 21-22. To the contrary, Mr. Wood would have been subject to liability had he attended the Build because he was not authorized to attend since he was not a county employee; additionally, no person was authorized to copy the vendor's software. TR 8/1/24, pp 166-67. Indeed, the evidence reflected that Mr. Wood was the subject of a criminal investigation because his

21

credentials were used to access the Build and elections server.

TR 8/2/24, pp 152-55.

### 3.     First degree official misconduct

A person commits first degree official misconduct if the person is a
public servant, and with intent to obtain a benefit for any person, or
maliciously to cause harm to another, knowingly commits an act
relating to their office but constituting an unauthorized exercise of their
official function and/or violated a statute or lawfully adopted rule or
regulation relating to their office. § 18-8-404, C.R.S. (2025).

Here, Peters contends no evidence established that she intended
to obtain a benefit for herself or anyone else. OB, p 22. But the
evidence, and the reasonable inferences drawn therefrom, established
that Peters intended to benefit Dr. Frank, his supporters, and herself by
providing "forensic images" of the elections server to non-government
actors. *See, e.g.*, TR 8/2/24, pp 27-31; TR 8/6/24, pp 182-83; TR 8/8/24,
pp 39-40, 249:1-3; TR 8/9/24, pp 40-41, 64-70, 75-77; EX 71.

22

### III.   The trial court properly excluded inadmissible evidence, and in any event, any error was harmless.

#### A.   Preservation and Standard of Review

The People agree this issue was preserved. However, the People

disagree regarding the standard of review. Evidentiary errors are

reviewed for an abuse of discretion. *People v. Tyme*, 2013 COA 59, ¶8.

Additionally, not every erroneous evidentiary ruling that affects a

defendant's presentation of his defense amounts to constitutional error.

*Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009). As discussed

below, any error here did not rise to that level.

Non-constitutional error is harmless unless it substantially

influenced the verdict or affected the fairness of the trial proceedings.

*People v. Conyac*, 2014 COA 8M, ¶94. Constitutional error is harmless

when the reviewing court is confident beyond a reasonable doubt that

the error did not contribute to a guilty verdict. *Id.*

#### B.   Additional Facts

Before trial, the court ruled Peters could not introduce evidence

that the reason for her criminal conduct was that she was trying to

23

preserve election records or investigate destruction of evidence
regarding election system reliability. TR 7/19/24, pp 23:3-10, 32-34, 38-
42. The court ruled such evidence was irrelevant because it did not bear
on the question of whether Peters committed the offenses. TR 7/19/24,
pp 32-33. The court explained that because Peters' reasons for
committing the crimes were not a defense, they could not be used to
justify her crimes. TR 7/19/24, pp 32-33, 41-42; TR 8/1/24, pp 6-7.

Consistent with this ruling, the trial court excluded some evidence
about the alleged reasons for Peters' criminal conduct, including:

- her alleged belief that Mr. Hayes was a government informant,
  TR 8/1/24, pp 4-7, 18;

- her duty to preserve election records, TR 8/1/24, pp 200-01;
  TR 8/6/24, pp 79-80; and

- her alleged concerns about the reliability of the election system
  and her so-called investigation into destruction of such evidence,
  TR 8/1/24, pp 200-03; TR 8/5/24, pp 207-13; TR 8/6/24, pp 59-60;
  TR 8/8/24, pp 254-258.

The court ruled this evidence was not relevant for the purpose Peters was offering it and would be misleading to the jury. TR 8/8/24, pp 254-258, 292. The court also ruled Peters could not argue she was authorized to use deception to investigate her allegations regarding election system reliability and destruction of evidence because no such affirmative defense existed and no law authorized her to do so. TR 8/5/24, pp 207-12; TR 8/9/24, pp 355-57.

### C.    Law and Analysis

Peters asserts the trial court denied her an opportunity to present her theory of the case and evidence that might tend to create doubt about her guilt. OB, p 23. But "the right to present a defense does not guarantee a right to [present evidence] in violation of the rules of evidence." *People v. Scearce*, 87 P.3d 228, 233 (Colo. App. 2003).

Evidence that "is not relevant is not admissible." CRE 402. Evidence is relevant if it has any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Even if relevant, evidence "may be excluded if its probative

25

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

Here, the trial court properly excluded evidence of Peters' alleged reasons for committing the criminal offenses. First, this evidence was not relevant because it was not material. Other than motive, which was not the basis of her proffer, Peters' reasons for her criminal conduct did not bear on the only question before the jury: whether she committed the offenses. *Fletcher v. People*, 179 P.3d 969, 974 (Colo. 2007).

Moreover, the evidence was inadmissible because the danger of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighed any relevance. Peters sought to justify her conduct by presenting this evidence, but because her reasons for committing the offenses were not a legal defense, the evidence would have created a substantial risk of confusing the issues, misleading the jury, and unfairly prejudicing the prosecution. This risk was magnified

26

by the controversial nature of the evidence, which would have resulted in a mini-trial about alleged election fraud.

To the extent Peters asserts that investigating the destruction of election records was a legal defense, the authorities she cites do not support this proposition. *See* OB, pp 26-27. She does not contend on appeal that such investigation served as the basis for the affirmative defense of execution of a public duty, *see id.*,[3] and this argument would fail in any event because no law authorizes her to investigate destruction of records or establishes such a duty.

Peters' contention that her reasons for committing the offenses were "key to [her] mens rea," OB, p 24, is likewise unavailing. Mens rea is the required mental state for a crime—e.g., intent to commit the conduct. *See, e.g., Copeland v. People*, 2 P.3d 1283, 1286 (Colo. 2000). Whether Peters had the requisite mental state for each charge is a different question than her reasons for committing the

---

[3] Nor may she do so in her reply brief. *See People v. Owens*, 2024 CO 10, ¶90 ("It is well-settled that an appellate court will not consider arguments raised for the first time in a reply brief.").

27

crimes. And if anything, the evidence would have tended to show that
she *had* the requisite mens rea, but again, that limited relevance was
substantially outweighed by the danger the evidence would be
confusing, misleading, and unfairly prejudicial.

Peters also asserts the evidence was key to her affirmative defense
of execution of a public duty. But as discussed in the following section,
the trial court properly ruled that the evidence did not support that
defense.

In any event, any error was harmless. Peters' reasons were not a
legal justification to the offenses, and the evidence of her guilt was
overwhelming. It established that Peters made and executed a plan
with others to provide Build and election system access to an
unauthorized person through false representations to state and other
county employees.

Further, any error did not violate Peters' right to present a
defense. *Krutsinger*, 219 P.3d at 1062. She vigorously cross-examined
the prosecution's witnesses and presented her own witnesses. Moreover,
despite some exclusions, Peters introduced ample evidence of her

28

alleged beliefs that she was preserving election records, investigating

destruction of evidence regarding election system reliability, and had a

legitimate need to conceal Mr. Hayes identity. *See, e.g.*, TR 8/6/24,

pp 216-24, 227-28; TR 8/7/24, pp 91:13-20, 96:11-17, 118-19, 162-63,

169-72, 191:2-17; TR 8/8/24, pp 239:5-8, 242:11-14; TR 8/9/24, pp 25:20-

22, 31:2-4, 23-25, 91:3-5, 91-97, 112-113, 207:10-18. In any event, any

constitutional error was harmless beyond a reasonable doubt for the

reasons discussed above.

## IV.    The trial court properly declined to give defense-proposed jury instructions.

### A.    Preservation and Standard of Review

The People agree these issues are preserved, TR 8/5/24, pp 207-12;

TR 8/8/24, pp 369-71; TR 8/9/24, pp 355-57. Denial of an affirmative

defense instruction is reviewed de novo. *People v. Hasadinratana*, 2021

COA 66, ¶15. Error in denying an affirmative defense is reviewed for

constitutional harmlessness. *People v. Tardif*, 2017 COA 136, ¶34.

However, denial of other proposed jury instructions is reviewed

only for an abuse of discretion. *People v. Trujillo*, 2018 COA 12, ¶11.

29

Any such error is harmless unless there is "a reasonable probability
that [the instructional error] contributed to the defendant's
conviction." *Mata-Medina v. People*, 71 P.3d 973, 980 (Colo. 2003).

### B.    Law and Analysis

#### 1.    Execution of Public Duty

Sections 18-1-701 to -709, C.R.S. (2025) provide very limited,
narrowly-tailored exceptions to criminal liability, known as affirmative
defenses. § 18-1-710, C.R.S. (2025). The affirmative defense of execution
of public duty provides that "conduct which would otherwise constitute
an offense is justifiable and not criminal when it is required or
authorized by a provision of law or a judicial decree binding in
Colorado." § 18-1-701(1). As relevant here, § 18-1-701(2) defines
"provision of law" as "[l]aws defining duties and functions of public
servants."

Here, the trial court properly determined that the proffered
evidence did not support this affirmative defense for the charged
offenses. Peters contends her conduct was required or authorized by
52 U.S.C. § 20701. But while § 20701 sets forth a duty to preserve

30

election records, it does not authorize an election officer to use criminal means to do so. *Cf. People v. Roberts*, 601 P.2d 654, 656 (Colo. App. 1979) (prison guard not entitled to affirmative defense of execution of a public duty where he failed to establish that he was authorized to use undercover techniques to apprehend an escaped convict). Nor does it provide authority to investigate election fraud.

## 2.    Supremacy Clause immunity

As discussed, Supremacy Clause immunity limits state prosecution of federal officials for acts committed in the course of their federal duties. *Livingston*, 443 F.3d at 1213. Peters contends she was entitled to an affirmative defense instruction at trial because the court denied her pretrial motion to dismiss. OB, p 30. Again, Peters fails to provide any meaningful development of her argument. *See Relaford*, ¶70 n.2. And the single case she cites for this proposition, *People v. Guenther*, 740 P.2d 971, 981 (Colo. 1987), does not support it.

Specifically, the *Guenther* court concluded that pretrial denial of immunity under the make-my-day statute did not *preclude* an affirmative defense instruction at trial for that defense. 740 P.2d at 981.

31

It did not hold that the pretrial denial *entitled* the defendant to the affirmative defense at trial. Moreover, unlike Supremacy Clause immunity, the make-my-day defense is a codified affirmative defense. §§ 18-1-704.5, -710.

In any event, as discussed in Argument I, Peters' proffered evidence did not support such a defense at trial even if it was available.

## V.    The criminal impersonation jury instruction was not plainly erroneous.

### A.    Preservation and Standard of Review

Peters does not address preservation or standard of review for this issue. OB, p 22. The issue is unpreserved because she did not raise it in the trial court. Whether an instruction properly informs the jury of the governing law is reviewed de novo. *People v. Stellabotte*, 2016 COA 106, ¶18, *aff'd and remanded*, 2018 CO 66, ¶18. Unpreserved instructional errors are not reversible unless the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶14 (cleaned up).

32

### B.    Law and Analysis

Peters contends that although the indictment charged her with criminal impersonation under § 18-5-113(1)(b)(I), the indictment and jury instruction used the broader language from § 18-5-113(1)(b)(II). OB, p 22. Again, Peters fails to develop this argument or cite any authority. Therefore, this Court need not consider it. *See Relaford*, ¶70 n.2.

In any event, no plain error occurred. "[A] trial court is obligated to instruct the jury correctly on the law applicable to the case." *People v. Van Meter*, 2018 COA 13, ¶41. But failure to instruct the jury properly on an element of an offense is not reversible error where the improperly defined element was uncontested or established by overwhelming evidence. *See, e.g.*, *People v. Lozano-Ruiz*, 2018 CO 86, ¶¶6-7; *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

Here, the addition of the word "might" in the element "subject that person to [liability]" was not plainly erroneous because the evidence overwhelmingly established that the conduct would and did subject Mr.

33

Wood to criminal liability, and the defense theory on the charge—that a

conspiracy did not occur—did not implicate that element.

## VI.    The indictment provided adequate notice of the charges.

### A.    Preservation and Standard of Review

The People agree this issue is preserved. This Court reviews the

sufficiency of the charging instrument de novo. *People v. Perez-*

*Hernandez*, 2013 COA 160, ¶30.

### B.    Additional Facts

The charges of attempt to influence a public official in the

indictment stated that Peters, "unlawfully and feloniously attempted to

influence [each of the relevant three public servants] by means of deceit,

with the intent thereby to alter or affect the public servant's decision,

vote, opinion, or action concerning a matter which was to be considered

or performed by the public servant or the agency or body of which the

public servant was a member, in violation of section 18-8-306, C.R.S."

CF, pp 7-8. The "Criminal Conduct" section of the indictment explained

that:

34

- Peters and Belinda Knisley formed a plan to allow an unauthorized person to be present at the Build, CF, pp 13-15;

- they implemented this plan by obtaining security credentials for the unauthorized person under false pretenses and representing to state officials that only authorized persons would be and were present, CF, pp 13-16;

- SOS Employee Romero denied Peters' request to have members of the public present at the Build, informed her that only county, state, and vendor personnel could attend, and stated that the Build would not proceed if any unauthorized persons were present, CF, pp 13-14;

- Peters subsequently directed County Employee Underwood to create security credentials for Gerald Wood, falsely stating that he was a state employee, and Mr. Underwood did so, CF, pp 14-16;

- Peters' office sent an email to Mr. Romero falsely stating that Mr. Wood was a county employee who would attend the Build, CF, p 15; and

35

- at the Build, Peters introduced Conan Hayes to SOS Employee

  Casias as Gerald Wood, CF, p 16.

### C.    Law and Analysis

A defendant must receive notice of the charges against them, *Cervantes v. People*, 715 P.2d 783, 785 (Colo. 1986), but "it is not necessary to allege every element that must be proved at trial," *People v. Richardson*, 58 P.3d 1039, 1044 (Colo. App. 2002). "An information is sufficient if it advises the defendant of the charges they are facing so they can adequately defend themselves and be protected from further prosecution for the same offense." *Cervantes*, 715 P.2d at 785 (cleaned up).

Here, Peters contends she was not provided adequate notice of the charges of attempt to influence a public servant—for Jesse Romero, Danny Casias, and David Underwood—because they did not specify the decision, vote, opinion or action. To the contrary, the "Criminal Conduct" section of the indictment explained the decision, vote, opinion, or action of each public servant. Specifically, Mr. Underwood's decision, opinion, or action was to create security credentials for Mr. Wood, and

36

Mr. Romero's and Mr. Casias's decision, opinion, or action was to allow

the Build to proceed in the presence of an unauthorized person. CF,

pp 13-16. Accordingly, the indictment provided Peters adequate notice

of the charges against her.

### VII.   The prosecution's statements were proper, did not constitute misconduct, and were not reversible error in any event.

#### A.     Preservation and Standard of Review

Peters does not fully address preservation or the standard of

review for this issue. OB, pp 31-36. Although she objected to the

prosecutor's statement in rebuttal close in a motion for new trial, CF,

p 4567, because Peters did not make a contemporaneous objection, the

challenge is unpreserved. *See People v. Rhea*, 2014 COA 60, ¶44. Peters

objected to only one of the challenged references to a "security breach,"

and did not object to any of the references to the BIOS passwords.

Therefore, only one challenge is preserved.

To justify reversal for prosecutorial misconduct, a defendant must

make two analytically independent showings: (1) evaluated in the

context of the argument as a whole and in light of the evidence

37

presented at trial, the prosecutor's conduct was improper; and (2) such

actions warrant reversal under the appropriate standard of review.

*Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). "Whether a

prosecutor's statements constitute misconduct is generally a matter left

to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043,

1049-50 (Colo. 2005).

Preserved errors are reviewed for harmlessness. Crim. P. 52(a).

Unpreserved errors are reversible only if they are plain. Crim. P. 52(b).

Prosecutorial misconduct during closing arguments "rarely, if ever, is so

egregious as to constitute plain error." *Rhea*, ¶43.

### B.    Additional Facts

### 1.    BIOS passwords security breach

During a pretrial hearing, the trial court ruled the prosecution

could introduce evidence the investigation was initiated when state

officials learned BIOS passwords for Mesa County's Build had been

posted online. TR 7/19/24, pp 53-54. Defense counsel agreed this

evidence was admissible. TR 7/19/24, pp 54-55. During opening

statement, the prosecutor explained that the investigation started after

38

state officials discovered the BIOS passwords online. TR 7/31/24,

pp 191-92. The prosecution likewise introduced evidence about the

investigation and how the secure nature of the BIOS passwords led

investigators to discover Peters' criminal conduct. TR 8/1/24, pp 32-33,

38:2-9, 53:12-24, 130-31, 161-63.

At times, prosecution witnesses referred to the posting of the

BIOS passwords online as a "security breach." TR 8/1/24, pp 32-33;

TR 8/6/24, p 109:5-20; TR 8/8/24, pp 142-43. Peters objected only to the

single instance a prosecutor used the term. TR 8/5/24, p 175:6-13.

However, defense counsel also used the term when questioning the

same witness. TR 8/1/24, p 228:18-22.

Mr. Romero testified about the secure nature of the

BIOS passwords and discovering them online. TR 8/1/24, pp 162-63,

213-215. When Mr. Romero testified about reporting the leak, the

prosecutor responded, "Denver, we have a problem?" referencing the

famous quote from the Apollo 13 mission. TR 8/1/24, p 165:10-18.

During cross-examination, defense counsel referenced the prosecutor's

comment, calling it "cute." TR 8/1/24, pp 223-24.

39

Peters elicited testimony that the county maintains the system passwords, while the state maintains the BIOS passwords, which provides additional security to the elections server. TR 8/1/24, pp 226-27. Peters also presented testimony from cyber security experts that the video and passwords posted online provided no usable information for accessing the server. TR 8/9/24, pp 200-01, 230-31.

### 2.    Dr. Frank's statement

During the meeting in Peters' office, Dr. Frank said it would be illegal to open the election equipment because it contained the vendor's proprietary information and Peters had signed a contract with the vendor. TR 8/2/24, p 31:6-12; TR 8/5/24, pp 18-19. During rebuttal closing argument, the prosecution referenced this discussion, which also included Dr. Frank's statement about sending an audit team—"the best in the country." TR 8/9/24, pp 40-41; TR 8/12/24, p 104:9-14. The prosecutor summarized Dr. Frank statements as, "That would be illegal but I have the best guy in the country." TR 8/12/24, p 104:9-14.

40

### C.    Law and Analysis

The prosecution has wide latitude in the language it uses to make arguments based on facts in evidence and reasonable inferences therefrom. *Domingo-Gomez*, 125 P.3d at 1048. "[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." *People v. Samson*, 302 P.3d 311, 317 (Colo. App. 2012).

### 1.    BIOS passwords security breach

The term "security breach" was a fair comment on the evidence. The evidence established that the BIOS passwords were a security feature, which was breached when the passwords were leaked online. Indeed, even defense counsel used the term. TR 8/1/24, p 228:18-22.

Contrary to Peters' assertion, OB, p 33, the prosecution did not contend that she was legally responsible for the passwords being posted online. Rather, the prosecution discussed the password breach in relation to how Peters' criminal conduct was discovered. These comments were not inconsistent with the court's pretrial ruling, *see* OB,

41

pp 33-34, which ordered only that the prosecution could not comment about whether copying the software and filming the Build was illegal. TR 7/19/24, p 53:16-19.

Based on the foregoing analysis, the prosecution had no obligation to introduce evidence that the posted passwords were redacted or could not be used to access the server. *See* OB, pp 31-33. In any event, Peters' judicial notice argument is unavailing. Not only is the website she cites inaccessible (as of 7/28/25), its contents could have changed since the date at issue (8/2/21). *See* CRE 201 (judicial notice requires absence of reasonable dispute based on general knowledge or an unquestionably accurate source). Similarly, the SOS news release and public statement *after* the trial do not establish what the prosecutors knew *at the time* of trial. Moreover, the governor's and the SOS's knowledge are not attributable to the prosecutors.

Finally, the record belies Peters' assertion that the prosecutor compared the password leak to the life-threatening emergency of Apollo 13. The prosecutor merely borrowed the now-commonplace

42

quote, "Houston, we have a problem" in response to the witness's testimony about reporting the leak. TR 8/1/24, p 165:13-17.

Accordingly, the prosecution did not commit misconduct, much less any constituting plain error. And any error in the singular preserved comment was harmless. The defense itself discussed a "security breach" and BIOS passwords and introduced evidence that the information posted online could not be used to access the elections server. Further, as discussed above, the evidence of Peters' guilt was overwhelming.

### 2.    Dr. Frank's statement

The prosecutor's statement in rebuttal close was also a fair comment on the evidence. As outlined above, the prosecutor summarized Dr. Frank's statements as "that would be illegal but I have the best guy in the country." Even if the phrase could be characterized as ambiguous or inartful, this Court should afford the prosecutor the benefit of the doubt. In any event, the prosecutor's comment was isolated and fleeting. When considered in the context of the entire closing argument, the remark had a negligible effect on the verdict. It

43

cannot be said to be "flagrantly, glaringly, or tremendously improper" or to have "so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Cevallos-Acosta*, 140 P.3d 116, 122 (Colo. App. 2005). Therefore, any error was not plain.

## VIII. The trial court properly denied a hearing to elicit juror testimony.

### A.    Preservation and Standard of Review

The People agree this issue is preserved and reviewed for an abuse of discretion. CF, pp 4700-02; *People v. Clark*, 2015 COA 44, ¶215. Even if a juror is exposed to improper outside influence, any error is harmless absent "a reasonable possibility that the [outside] influence would have adversely affected the verdict of a typical jury." *James v. People*, 2018 CO 72, ¶20.

### B.    Additional Facts

According to Peters' trial court motion, a juror told a defense investigator the telephone line at her business was cut during trial. CF, pp 4700, 4733. Although she mentioned an initial concern—which was

44

later dispelled—that it was related to her jury service, she did not say

who she thought was responsible. CF, p 4733.

### C.    Law and Analysis

"CRE 606(b) is a broad ban against the solicitation and use of

juror testimony, affidavits, or statements addressing the validity of a

jury verdict." *Stewart v. Rice*, 47 P.3d 316, 320 (Colo. 2002), *as modified

on denial of reh'g* (June 3, 2002). "Substantial policy considerations

support the broad prohibition on post-verdict challenges based on juror

testimony. *People v. Archuleta*, 2021 COA 49, ¶19. "Chief among them

are the interests in verdict finality and protecting the secrecy of jury

deliberations." *Id.*

CRE 606(b) provides three exceptions, specifically: (1) improper

exposure to extraneous prejudicial information, (2) improper outside

influence on any juror, and (3) mistakes concerning the verdict form.

Here, as the trial court properly determined, CRE 606(b)

precluded a hearing. Peters does not assert that any exception applies,

and her argument that a hearing was required is based only on her own

speculation that the juror believed "she was being targeted by

45

supporters of Ms. Peters." OB, p 34; *see* CF, p 4733 (no statement of who

the juror thought was responsible). In any event, given that no

improper influence was actually brought to bear since the phone line

was in fact cut in an unrelated incident, any error was harmless. *See*

CF, p 4733. Any error was also harmless given the speculative nature of

any prejudice and the overwhelming evidence of guilt.

### IX.    The trial court's sentencing considerations were proper; no rights were violated.

### A.    Preservation and Standard of Review

These issues are unpreserved because Peters did not raise them in

the trial court. A trial court has broad discretion in sentencing

decisions, which are upheld absent a gross abuse of discretion. *Lopez v.*

*People*, 113 P.3d 713, 720 (Colo. 2005). However, constitutional

challenges to sentencing decisions are reviewed de novo. *Id.*

### B.    Additional Facts

At sentencing, several people spoke on Peters' behalf. TR 10/3/24,

pp 7-59. Her allocution included a slideshow and spans 24 pages of the

transcript. TR 10/3/24, pp 67-91. Much of it was devoted to allegations

46

that the SOS used the Build to destroy records to cover up election
reliability issues. TR 10/3/24, pp 67-91.

In sentencing Peters, the court addressed her allegations about
election fraud, the publicity she received, and her repeated assertions of
being an honest and devoted public servant. TR 10/3/24, pp 97-98. The
court found that Peters purposefully sought attention and used her
position as an elected official to promote allegations of election fraud
and further her personal agenda. TR 10/3/24, pp 97-98. The court
explained that Peters chose herself over her duty as a public servant by
using her position to gain fame and its benefits by fueling controversy
about the reliability of elections through lies. TR 10/3/24, pp 99-100.
Addressing the damage her deceptions had caused to the public's trust,
the court found that Peters' deceptive conduct and willingness to
sacrifice her duty as a public servant for her own interests made her a
danger to society. TR 10/3/24, pp 99-100.

### C.    Law and Analysis

Pointing to the court's comments about her dishonesty, Peters
alleges the trial court based its sentencing decision on her protected

speech, violating the First Amendment. OB, pp 36-38. To the contrary, the court's consideration of her dishonesty was proper, particularly here, where the court considered it as it related to her allocution, her ties to the community, and her criminal conduct.

A sentencing court must consider the offense; the offender's record, character, and rehabilitative potential; aggravating and mitigating circumstances; deterrence of crime; and protection of the public. §§ 18-1.3-401(1)(b)(I), 18-1-102.5, C.R.S. (2025); *People v. Leske*, 957 P.2d 1030, 1043 (Colo. 1998).

The First Amendment protects a person's right to free speech. U.S. Const. Amend. I. As a general matter, this means the government may not punish a person for their speech. *Id.* In the sentencing context, a court may consider the defendant's protected beliefs, association, or speech "so long as it is relevant to the issues involved in the sentencing proceeding." *United States v. Stewart*, 686 F.3d 156, 167 (2d Cir. 2012) (cleaned up).

During her allocution, Peters repeatedly stated that she is an honest person. TR 10/3/24, pp 68, 82, 89. The trial court rejected these

48

assertions, noting various instances of her dishonesty. In considering

mitigating factors, including Peters' age, limited criminal history, and

ties to the community, the court noted that her deceptive conduct had

damaged her reputation and community ties. Addressing Peters'

assertion that she did not ask for the publicity she received, the court

rejected the notion. The court found that Peters sought power and fame

and betrayed her oath to benefit herself and her interests.

The court further found that Peters' actions demonstrated she

believed she was above the law. It pointed to the deceptive conduct

underlying her offenses and her disregard of the State's rules governing

its election system. The court also cited her violation of a protection

order in appearing at the county elections office (with a camera crew)

and her dishonesty about kicking the police officer who arrested her.

TR 10/3/24, pp 85:9-14, 99:9-11.

In short, the trial court did not punish Peters for her statements

but weighed her dishonesty as a factor in its sentencing decision. While

the court disagreed with Peters' allegations of election fraud, the court

did not punish her for making the allegations. Rather, the court

49

discussed Peters' allegations because they formed the context of her criminal conduct. As the trial court stated, Peters used her position to commit crimes for the purpose of promoting allegations of election fraud, which benefitted her personally. She also tried to use those allegations as a justification for her criminal conduct.

Accordingly, Peters' assertion that "the court announced that [she] should be severely punished for expressing her concern that computerized voting systems are unreliable and subject to manipulation," OB, p 38, is simply not true. Similarly lacking support in the record is her contention that the court based its decision on her (later overturned) contempt finding.[4] It was Peters herself who broached the topic, and the court did not mention it in its sentencing explanation. TR 10/3/24, pp 68-69, 95-103.

Peters' allegations that the court failed to act in a neutral and impartial manner in violation of her rights to fairness and due process

---

[4] The contempt was not overturned because there was insufficient evidence of her conduct but because the district court had not made sufficient findings regarding the court order she violated. *See People in re Peters*, 23CA1073 (Colo. App. Dec. 19, 2024) (unpublished).

50

are likewise unavailing. In addition to her five supporters, the court

listened attentively to Peters' lengthy slideshow presentation, asked

clarifying questions, and engaged with Peters on her account of the

facts. The fact that the court rejected Peters' attempt to justify her

criminal actions and her assertions of honesty and service to the

community does not mean the court was not impartial or did not

consider information favorable to Peters. Indeed, the opposite is true.

The court had to consider her assertions to reject them, which it did

based on all the information it had before it. Ultimately, the trial court

based its sentence on the corruption Peters exhibited through her

criminal conduct. *See, e.g.*, TR 10/3/24, p 98:13-15. Therefore, the court's

sentencing considerations were proper, and Peters' First and

Fourteenth Amendment rights were not violated.

**X.    Peters' sentences give rise to no inference of
gross disproportionality.**

### A.    Preservation and Standard of Review

Peters did not seek a proportionality review in the trial court, but

an appellate court may conduct an abbreviated proportionality review.

51

*People v. Loris*, 2018 COA 101, ¶10. The People agree proportionality of

a sentence is reviewed de novo. *Lopez*, 113 P.3d at 720.

### B. Additional Facts

The trial court sentenced Peters to a term of imprisonment on

each count as follows:

> Counts 1 and 4, attempt to influence a public official (Romero and
> Casias): <u>3.5 years</u>, to be served concurrently;
>
> Count 2, attempt to influence a public official (Underwood):
> <u>3.5 years</u>, to be served consecutively;
>
> Count 6, conspiracy to commit criminal impersonation: <u>15 months</u>,
> consecutive;
>
> Count 8, first degree official misconduct: <u>120 days</u>, concurrent to
> Counts 9 and 10; otherwise consecutive
>
> Counts 9 and 10, violation of duty and SOS violation: <u>180 days</u>,
> concurrent with Count 8, otherwise consecutive.

TR 10/3/24, pp 102-03. All sentences are in the presumptive range.

§§ 18-1.3-401(1)(a)(V.5)(A), -501, C.R.S. (2025).

Peters' total term of imprisonment is eight years and nine months.

TR 10/3/24, pp 102-03. As of July 28, 2025, she will be eligible for parole

in less than four years. Her current parole eligibility date is March 2,

2029. *See* DOC offender website. That date will move closer if Peters

earns additional time credits. *See* § 17-22.5-405, C.R.S. (2025).

### C.    Law and Analysis

Upon request, a court must conduct an abbreviated

proportionality review by comparing the gravity of the offense to the

harshness of the penalty. *Wells-Yates v. People*, 2019 COA 90, ¶¶8, 11.

If an abbreviated proportionality review yields no inference of gross

disproportionality, the reviewing court must affirm the sentence. *Id.* at

¶8. Only when an abbreviated review gives rise to an inference of "gross

disproportionality" is an extended proportionality review warranted. *Id.*

at ¶15. "[A]n abbreviated proportionality review will almost always

yield a finding that the sentence is not unconstitutionally

disproportionate." *McDonald v. People*, 2024 CO 75, ¶21.

In considering the gravity or seriousness of an offense, the

reviewing court looks to the facts and circumstances underlying the

defendant's conviction. *Id.* at ¶12. In considering the harshness of the

penalty, the penalty established by the legislature "deserves great

deference." *Id.* at ¶62. Parole eligibility is a relevant consideration

"because parole can reduce the actual period of confinement and render the penalty less harsh." *Id.* at ¶14.

Importantly, this Court reviews each sentence imposed separately, even if the sentences are to be served consecutively. *Lucero v. People*, 2017 CO 49, ¶23.

Here, Peters' criminal conduct is serious because it involved corruption. She betrayed her community so she could put her own agenda and interests above her duty to those she was elected to serve. She used deception to facilitate non-government actors gaining unauthorized access to the secured election system she was entrusted to protect. Her actions were a severe breach of the public's trust and will have a ripple effect of public distrust of the government and elections.

The longest individual sentence Peters received was three-and-a-half years. All of her sentences fell with the presumptive range, and she will be parole-eligible after serving less than half of her total sentence. Weighing the gravity of Peters' offenses against the penalties established by the legislature with the required deference, the sentences the trial court imposed for each offense give rise to no

54

inference of gross disproportionality. Accordingly, an extended

proportionality review is neither required nor appropriate. *Wells-Yates*,

¶15.

## CONCLUSION

Based on the foregoing reasons and authorities, Ms. Peters'

judgment of conviction should be affirmed.


PHILIP J. WEISER
Attorney General

**/s/ Lisa K. Michaels**
LISA K. MICHAELS, 38949*
Senior Assistant Attorney General
Criminal Appeals Section
Attorneys for Plaintiff-Appellee
*Counsel of Record

| | |
|---|---|
| COURT OF APPEALS, STATE OF COLORADO Ralph L. Carr Judicial Center 2 East 14th Avenue Denver, Colorado 80203 <br><br> Appeal from Mesa County District Court Judgment of Conviction and Sentence. Honorable Matthew D. Barrett. Case Number 22CR371 | |
| Plaintiff-Appellee: PEOPLE OF THE STATE OF COLORADO v. Defendant-Appellant TINA PETERS | |
| Appellant's Attorneys: John Case, Atty reg. # 2431 John Case, P.C. 6901 South Pierce St. #340 Littleton CO 80128 Phone: (303) 667-7407 E-mail: brief@johncaselaw.com <br><br> Patrick M. McSweeney, Pro Hac Vice Robert J. Cynkar, Pro Hac Vice McSweeney, Cynkar & Kachouroff, PLLC 3358 John Tree Hil Woodbridge VA 22192 | Case Number: 2024CA1951 |
| **APPELLANT'S REPLY BRIEF** | |

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of C.A.R. 28 and C.A.R. 32, including all formatting requirements set forth in these rules. Specifically, the undersigned certifies that:

This brief complies with the applicable word limit set forth in C.A.R. 28(g).

It contains 5605 words.

I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of C.A.R. 28 and C.A.R. 32.

*s/ John Case #2431*

## TABLE OF CONTENTS

CORRECTIONS TO MISREPRESENTATIONS OF ANSWER BRIEF ...............1

    *1. The People misrepresent that counties "backed up" election records* .................................1

    *2. The People misrepresent that Peters illegally copied Dominion software* ...........................2

    *3. Peters made lawful forensic images because federal law required it* ....................................3

ARGUMENT ..................................................................................................5

*I. PETERS IS IMMUNE FROM PROSECUTION IN STATE COURT* .................5

    *A. This Court has jurisdiction to review the denial of immunity* ........................................5

    *B. Peters Is Immune from This Prosecution for Acts Taken to Comply With Her*

       *Federal Statutory Duty* ..........................................................................7

*II. THE DISTRICT COURT DENIED PETERS DUE PROCESS)* ......................14

    *A. The court denied Peters due process right to present a complete defense. The court excluded*

       *evidence that Peters' had a federal duty to preserve election records, and then refused to*

       *instruct the jury on the affirmative defense of execution of a public duty* .......................14

*III. THE EVIDENCE WAS INSUFFICIENT* .......................................................19

*IV. THE SENTENCE VIOLATED PETERS' RIGHTS UNDER THE FIRST,*

    *EIGHTH, AND FOURTEENTH AMENDMENTS* .........................................24

*CONCLUSION* ............................................................................................25

*CERTIFICATE OF SERVICE* ......................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Baucom v. Martin,* 677 F.2d 1346, 1350 (11th Cir. 1982) ................................................12

*Clifton v. Cox,* 549 F.2d 722, 730(9th Cir. 1977) ...........................................................12

*Colorado v. Nord,* 377 F.Supp. 2d 945, 949 (D.Colo. 2005) ..........................................13

*In re Fair,* 100 F. 149, 151(D. Neb. 1900) .....................................................................12

*Idrago v. People,* 818 P.2d 752, 754 (Colo. 1991) ..........................................................17

*Irizarry v. Vehia,* 38 F.4th 1282, 1289-92 (10th Cir. 2022) ...........................................13

*Kentucky v. Long,* 837 F.2d 727, 745 (6th Cir. 1988)......................................................10

*Martinez v. People,* 550 P.3d 713, 716 (2024) ................................................................18

*New York v. Tanella,* 374 F.3d 141, 147 (2d. Cir. 2004) ...........................................6, 11

*People v. Barber*, 799 P.2d 936, 940 (Colo. 1990) ..........................................................10

*People v. Dunlap,* 975 P.2d 723, 748 (Colo. 1999) ..........................................................10

*People v. Edwards,* 598 P. 2d 126, 130 (Colo. 1979)........................................................25

*People v. Roberts*, 601 P.2d 654, 656 (Colo. App. 1979) ................................................17

*People v. Wambolt*, 431 P. 3d 681, 690 (Colo. App. 2018)...............................................23

*Perez v. Plaqueminas Par. Com. Council,* 391 S. 2d 1308, 1312 (La. Ct. App. 1980) .........13

*Peters v. United States,* 2024 WL 3086003 (10th Cir. 2024) .......................................9, 10

*Petition of McShane*, 235 F.Supp. 262 (N.D.Miss. 1964) ................................................12

iv

*Texas v. Kleinert,* 855 F.3d 305, 314-15 (5th Cir. 2017) ...................................................10

*Trump v. Anderson*, 601 U.S. 100, 112 (2024) .................................................................14

*U.S. v. Gaudin*, 515 U.S. 506, 522-23 (1995) ...................................................................18

*West Virginia v. Laing,* 133 F. 887, 891(4th Cir. 1904) ...................................................12

*Wood v. People,* 255 P.3d 1136 (Colo. 2011).......................................................... 5, 6, 7

*Wyoming v. Livingston,* 443 F.3d 1211, 1229 (10th Cir. 2006 ......................................9, 12

### Statutes

C.R.S. §1-1-110.............................................................................................................7

C.R.S. §18-1-701...........................................................................................................14

C.R.S. §18-8-306...........................................................................................................22

C.R.S. 1-5-601 ..............................................................................................................2

### Colorado Election Rules (8 CCR 1505-1)

Election Rule 20.5.3 .....................................................................................................19

### Other Authorities

Federal Law Constraints on Post-Election "Audits" Published July 28, 2021 ..............3

### Constitutional Provisions

U.S. Const. amend. I .....................................................................................................25

U.S. Const. amend. V.....................................................................................................18

U.S. Const. amend. VI................................................................................................. 16, 18

U.S. Const. amend. VIII ................................................................................25

U.S. Const. amend. XIV ...............................................................................25

Art VI, cl. 2 .................................................................................................14

**United States Code**

52 U.S.C. §20701 ................................................................ 3, 4, 5, 7, 9, 14, 15

52 U.S.C. §20706 ........................................................................... 3, 4, 7, 8

52 U.S.C. §21081 .............................................................................. 1, 2, 4

**Federal Voting Systems Standards**

2002 VSS. §2.2.4.1 .........................................................................................2

2002 VSS §2.2.5.1 .......................................................................................2, 4

**CORRECTIONS TO MISREPRESENTATIONS OF ANSWER BRIEF**

**1.  The People misrepresent that counties "backed up" election records**

The People claim that before the "trusted build" was performed, each county "backed up" records of prior elections. (AB p.2,5,6,7).  Unfortunately, the "election projects backup" preserves only part of the required digital election information. Federal law requires <u>all</u> digital election information on voting system hard drives to be preserved for 22 months.  The "election projects backup" referred to in the Answer Brief preserved only <u>some</u> of the data.  As Peters explained to the trial court in her Declaration:

> The Mesa County "election project" records retained the results of the election, but not how the results were obtained. "Election projects" records did not include all electronic information that experts said was essential for a postelection audit.

CF 2713.

52 U.S.C. §21081(a)(2)(A) required every county electromechanical voting system to "<u>produce a record with an audit capacity</u> for such system."  §21081(b)(1)(D) required the system "to <u>maintain and produce any audit trail information</u>." §21081(a)(5) refers to voting systems standards issued by the Federal Election Commission in effect on October 29, 2002 ("2002 VSS" available at https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines).

1

Colorado election statute §C.R.S. 1-5-601 required voting systems to comply with

2002 VSS.  Section 2.2.4.1 (h) of VSS specified in part that "all systems shall maintain

a permanent record of all original audit data that cannot be modified or overridden."

> Election audit trails provide the supporting documentation for verifying the correctness of reported election results. They present a concrete, indestructible, archival record of <u>all system activity related to the vote tally</u>, and are essential for public confidence in the accuracy of the tally, for recounts, and for evidence in the event of criminal or civil litigation.

VSS §2.2.5.1 (underline added).

The "election projects backup" included <u>only</u> data specified by the vendor,

Dominion Voting Systems.  It <u>did not include all data necessary to audit the prior

election</u> as required by 52 U.S.C. §21081 and VSS §2.2.5.1. [CF 3259-3260][1]

## 2.  The People misrepresent that Peters illegally copied Dominion software.

The People claim that "forensic images were not election records; they were

copies of the vendor's proprietary software" (AB p.15), and "no person was

authorized to copy the vendor's software." AB p.21.  This is false.  Paragraph 6.1 of

the software license agreement between Dominion and Mesa County permitted the

---

[1]  The Answer Brief acknowledges at p.2 that Dominion instructed the counties how to perform the "election projects backup."  Dominion had no legitimate reason to instruct counties <u>not</u> to preserve records required by federal law.

2

county to "copy the Software in whole or in part . . . for purposes of system backup."
R. Defendant's Exhibits p. 67, Ex. JJ8-029, admitted Tr. 8/2/24 62:23. The forensic
images made by Peters were lawfully made for purposes of system backup, to preserve
election records before the SOS wiped them from the hard drive.

### 3. Peters made lawful forensic images because federal law required it.

Peters made forensic images of the EMS server hard drive to comply with
federal and state preservation statutes. 52 U.S.C. §20701 requires every "officer of
election" in the United States to retain and preserve all election records for 22 months
after each federal election. 52 U.S.C. §20706 defines "officer of election" to include
any person who under color of federal or state or local law performs "any function,
duty, or task" requisite to voting in any federal election. Peters, as the elected Clerk
and recorder of Mesa County, had a duty under §20701 to preserve records. The U.S.
Department of Justice interprets the word "records" in §20701 to include "all records
relating to any act requisite to voting" and specifically including "records created in
digital or electronic form." (https://www.justice.gov/archives/opa/press-
release/file/1417796/dl?inline=).

The criminal penalty for willfully failing to comply with §20701 is a $1,000 fine
or imprisonment for one year, or both. To comply with §20701, Peters engaged
Conan Hayes, a qualified consultant with federal security clearances, to make a

3

forensic image of the voting system hard drive.  A forensic image is an unalterable bit-for-bit copy of the original hard drive.

The Answer Brief refers to the software modification performed by SOS as "the Build."  The People concede that the software modification performed by SOS on May 25, 2021, erased all digital information on the Mesa County election management server hard drive, and then installed a new version of Dominion software called "the golden image."  SOS employee Jessi Romero admitted that the software installation "wipes out everything that's on there."  TR 8/1/24 212:8-9. After SOS employee Danny Casias erased everything from the hard drive, and installed new software, it was impossible to audit the 2020 election, as required by 52 U.S.C. §21081 and VSS §2.2.5.1.  Like Tina Peters, the Colorado Secretary of State and her employees are "officers of election" as defined in 52 U.S.C. §20706, and as such they owe the duty under §20701 to preserve all election records for 22 months. When Casias and SOS willfully erased the 2020 election records from the Mesa County hard drive, they violated §20701 and became subject to its criminal penalties.

The "BUILD" should be renamed "WIPE."  We invite this Court to re-read the Answer Brief substituting the word "Wipe" for the word "Build."  The individuals who attempted to destroy evidence, who violated federal law, remain free without charges, while the only elected Clerk and Recorder in Colorado who obeyed federal

law and preserved evidence languishes in prison. The manifest injustice in this case

screams for this Court to vacate Tina Peters' convictions, and forthwith release her

from custody.

## ARGUMENT

### I. PETERS IS IMMUNE FROM PROSECUTION IN STATE COURT

#### A. This Court has jurisdiction to review the denial of immunity

The People argue that Peters' claim to immunity under the Supremacy and

Privileges or Immunities Clauses of the United States Constitution is not reviewable

on direct appeal, relying solely on the discussion of the appealability of "make-my-

day" statutory immunity in *Wood v. People,* 255 P.3d 1136 (Colo. 2011). They merely

state, "The same is true for immunity under the Supremacy Clause." AB p. 12. Even

a cursory review of *Wood* shows that is not true.

*Wood* held that make-my-day immunity is an affirmative defense created by

statute – not a limit on subject-matter jurisdiction – so that pre-trial denial of such

immunity simply allows that claim to be raised at trial. 255 P.3d at 1139, 1140-41. A

guilty verdict means the jury found that statutory conditions for make-my-day

immunity were absent, and the immunity claim is subsumed in the verdict. *Id.,* at

5

1139, 1141-42.  *Wood* likened pre-trial proceedings to a preliminary hearing. *Id.,* at 1141.

In contrast, the federal immunity at issue in this case is a function of the U.S. Constitution's allocation of state and federal authority, OB pp. 14-15, which deprives state courts of subject-matter jurisdiction over cases like this one. *Id.,* at 15-16.  The beneficiary of federal immunity has a constitutional right not to be tried in state court, as *New York v. Tanella,* cited by the People, makes clear. 374 F.3d 141, 147 (2d Cir. 2004) (Supremacy Clause immunity serves "to avoid requiring a federal officer to run the gauntlet of standing trial and having to wait until later to have the [immunity] issue resolved.").

The district court not only denied Peters' federal immunity in pretrial proceedings, but barred Peters from raising at trial either her immunity claim or its variation in the state statutory affirmative defense of execution of a public duty. OB pp.3, 9, 27-28.  For *Wood,* the opportunity for the defendant to raise make-my-day immunity as a trial defense was central to its reasoning that pre-trial proceedings on that claim could not be the basis of a direct appeal. 255 P.3d at 1141.  Sharpening the contrast with *Wood* even further, the district court did not even hold a hearing on

6

Peters' motion to dismiss on federal immunity grounds, hardly the preliminary hearing

model described in *Wood*.

There is no basis to conclude that this Court lacks jurisdiction over this appeal.

**B. Peters Is Immune from Prosecution for Acts Taken to Comply With
Her Federal Statutory Duty.**

Neither the district court nor the People directly addressed the combination of

three statutes that unmistakably imposed a federal duty on Peters to preserve election

records, which is the foundation for her immunity from this prosecution.

52 U.S.C. §20701 requires every "officer of election" to preserve federal

election records for 22 months.  52 U.S.C. §20706 defines "officer of election" as

"any person who, under color of any Federal, State, Commonwealth, or local law . . .

performs or is authorized to perform any function, duty, or task in connection with

any [federal election]."  C.R.S. §1-1-110(3) provides that the county clerk and recorder

shall be the chief designated election official for all coordinated elections.

In sum: while Peters served as clerk and recorder, she was the chief election

official for Mesa County.  As the chief election official, she was an "officer of

election" under federal law §20706.  And as an officer of election, she had a duty to

preserve federal election records for 22 months or suffer federal criminal penalties.

7

The People provide no legal support for their baseless argument that
Supremacy Clause immunity applies only to federal employees. AB pp. 12-14.  No
legal rule limits Supremacy Clause immunity to people who receive a federal paycheck,
because the primary beneficiary of Supremacy Clause immunity is the federal
government itself, preserving its operations, prerogatives, and initiatives from state
interference. OB pp. 14-15.  During federal elections, the government operates only
through individuals like Peters, who act as federal "officers of election," and
necessarily are beneficiaries of Supremacy Clause immunity. OB pp. 18-19.

The People ignore that Peters was an "officer of election" under §20706.  They
quibble that she was not a "federal official or officer," and was not acting as "an agent
of a federal official or officer," and was not acting "pursuant to a direct federal court
order." AB p. 14.  Peters was following the command of a direct federal statute.  It is
indisputable that a federal statute can create a federal duty, OB pp. 18-19, and, as
described above, it is equally indisputable that a federal duty to preserve election
records was imposed on Peters by §20701.  Accordingly, she qualifies for Supremacy
Clause immunity.

The People argue that Peters' actions were not reasonably necessary to fulfill
her federal duty. AB pp. 14-16. As a threshold matter it is improper to make such an

argument to this Court because whether actions taken to satisfy a federal duty were

reasonably necessary is a highly specific factual inquiry to be made by the lower court

(assuming it has jurisdiction at all), not this Court, in the first instance. As the Tenth

Circuit explained:

> Supremacy Clause immunity cases require courts to evaluate the
> circumstances as they appear to federal officers at the time of the act in
> question, rather than the more subtle and detailed facts later presented to
> a court.

*Wyoming v. Livingston,* 443 F.3d 1211, 1229 (10th Cir. 2006). The efforts of this Court

must be directed to review of the district court's decision, not to engage in its own

fact-finding.

The district court did conclude that Peters' actions were not reasonably

necessary for Supremacy Clause immunity purposes. [Cf 3067] However, it did not

have the jurisdiction to adjudicate Peters' federal immunity claim, much less make

such conclusions. OB pp. 14-16, 19. The People cite *Peters v. United States,* 2024 WL

3086003 (10th Cir. 2024), as rejecting this proposition. AB p. 16. But Colorado's

courts are not bound the decisions of lower federal courts. *People v. Dunlap*, 975 P.2d

723, 748 (Colo. 1999)(Colorado courts are "not bound by a federal circuit court's

interpretation of federal constitutional requirements."); *People v. Barber*, 799 P.2d 936,

9

940 (Colo. 1990)("Lower federal courts … are not conclusive on state courts, even on questions of federal law."). And the People do not explain how *Peters* could even be persuasive authority for this Court in light of the fact that it is at odds with the uniform body of precedent from the Supreme Court and the other federal courts of appeals that hold that state courts do not have jurisdiction over Supremacy Clause immunity claims. *Compare* OB pp. 14-16.

The district court's error in exercising jurisdiction it did not have was compounded by its error in how it exercised that jurisdiction, specifically by failing to hold an evidentiary hearing.  An evidentiary hearing was required because the evaluation of whether conduct was reasonably necessary is a fact-bound inquiry – highly disputed in this case – dependent on both the subjective belief of Peters that her actions were necessary and an objective determination that her conduct was reasonable in the particular circumstances of this case. *See Texas v. Kleinert,* 855 F.3d 305, 314-15 (5th Cir. 2017); *New York v. Tanella,* 374 F.3d 141, 147 (2d. Cir. 2004); *Kentucky v. Long,* 837 F.2d 727, 745 (6th Cir. 1988).

Instead of hearing evidence in the manner developed over centuries, with live testimony of key witnesses tested by cross-examination, the district judge simply indulged his own speculation to conclude that Peters' actions were not reasonably

10

necessary. [Cf. 3067.] Unbound by any testimonial record, the court used faulty

reasoning like: "If Defendant believed her actions to be lawful then there would have

been no need for her to … engage in the criminal conduct alleged in the indictment."

*Id.* Of course, this excludes half of the equation – the objective facts concerning what

SOS was doing and would do, if their secretive protocol to erase election records was

in any way hindered. The court made the absurd finding that Peters had no immunity

because she engaged in criminal conduct. If only innocent defendants are entitled to

immunity, there is no such thing as immunity. Those found innocent do not need it,

and those found guilty are not entitled to it.

The People claim that Peters "could have simply refused to allow the Build to

occur if she believed it would destroy election records." AB p.15. This is not true, as

the record demonstrates. SOS had made it clear that if their protocol for erasing and

upgrading the election computers on site was not followed to the letter, the

computers would be shipped to Denver, where the erasing and updating would occur

anyway. Email from Jessi Romero, Office of the Secretary of State (April 30, 2021) at

2. [People Ex 17, R. p. 24-25; Admitted Tr 8/1/24 149:21.]

The People state that any federal duty to preserve election records does not

allow anyone to commit a crime under state law. AB pp. 30-31. This is absurd. The

Supremacy Clause comes into play *by definition* when state authorities claim that federal
law is being enforced by "illegal means" under state law.  In *Livingston,* federal officials
violated state trespass and littering laws to install monitoring devices on wolves. *Id.,* at
1213-15. In *Petition of McShane*, 235 F.Supp. 262 (N.D.Miss. 1964), federal marshals
violated state laws when their actions to secure James Meredith's entrance into the
University of Mississippi provoked a riot in which people were killed.  In both cases,
the federal actions were held to be immune from state prosecution.  Federal officers
have been held immune from state prosecution even for using lethal force in carrying
out their duties under federal law. *Clifton v. Cox,* 549 F.2d 722, 730(9th Cir. 1977); *West
Virginia v. Laing,* 133 F. 887, 891(4th Cir. 1904); *In re Fair,* 100 F. 149, 151(D. Neb.
1900).

Similarly, the People claim that the federal duty to preserve election records
does not allow anyone to investigate "election fraud." AB p. 15. But that is an
overblown description of Peters' conduct, which involved observation and
videotaping the SOS deletion of election records during the "Wipe," and copying
those records to preserve them.  Such conduct, even if requiring some deception, was
certainly within the "general scope" of Peters' duty under the Civil Rights Act.
*Colorado v. Nord,* 377 F.Supp. 2d 945, 949 (D.Colo. 2005)(quoting *Baucom v. Martin,* 677
F.2d 1346, 1350 (11th Cir. 1982)). *See* OB pp. 10-12, 26-27.

12

Using the name "Gerald Wood" instead of "Conan Hayes" was no more harmful than Samuel Clemens using the name Mark Twain.  It was reasonable for Peters to conceal the identity of a person who had been instrumental against criminal cartels.

Furthermore, an elected public officer has authority to investigate malfeasance by third parties that are within the scope of the official's duties. *Perez v. Plaquemines Par. Com. Council,* 391 S. 2d 1308, 1312 (La. Ct. App. 1980) (holding that, notwithstanding district attorney's prosecutorial independence, elected parish council may investigate district attorney's use of parish funds).  Moreover, every citizen enjoys the right to copy public records. *Irizarry v. Vehia,* 38 F.4[th] 1282, 1289-92 (10th Cir. 2022).

Finally, the People dismiss Peters' claim to immunity under the Privileges or Immunities Clause because, according to the People, it has no "explanation or development of any argument." AB p.16.  But this claim is hardly limited to "bare or conclusory assertions."  The argument builds on the extensive discussion concerning Supremacy Clause immunity, with which the Privileges or Immunities Clause is closely allied. OB p. 16.  The argument cites law review analyses of the Clause and major cases construing the Clause (which has not been subject to extensive litigation).  The argument, though succinct, is much more than an unsupported assertion.

13

Colorado's constitutional overreach in this case parallels the defect the United

States Supreme Court unanimously condemned in *Trump v. Anderson*, 601 U.S. 100,

112 (2024): a willful disregard for the supremacy of the U.S. Constitution.  In

*Anderson*, Colorado exceeded its lawful reach by attempting to enforce Section 3 of the

Fourteenth Amendment against a federal candidate—a power the Constitution vests

exclusively in Congress.  Here, the State has again crossed that line, prosecuting Tina

Peters for doing precisely what §20701 commands: safeguard federal election records.

By imprisoning a county clerk for performing federally required duties, Colorado has

placed its prosecutorial power in direct conflict with Art VI, cl. 2 of the U.S.

Constitution.

## II.    THE DISTRICT COURT DENIED PETERS DUE PROCESS

### A. The court denied Peters due process right to present a complete defense.  The court excluded evidence that Peters had a federal duty to preserve election records, and then refused to instruct the jury on the affirmative defense of execution of a public duty.

Peters' conduct was justifiable and not criminal if it was required or authorized

by a provision of law or judicial decree binding in Colorado.  C.R.S. §18-1-701,

Execution of Public Duty.  In order to establish her affirmative defense, Peters had

the burden to present evidence of the provision of law that required her to preserve

14

election records, namely 52 U.S.C. §20701.  Under the Supremacy Clause of the U.S.

Constitution, §20701 is binding in Colorado.

The court deliberately prevented Peters from meeting her burden to establish a

federal duty.  In a pretrial order, the court ruled that information about 52 U.S.C. §

20701 was irrelevant [CF 3401].  The court excluded evidence related to Peters

preserving election records, and how she would have best preserved those records

[*Id*].  During trial, Peters offered a copy of §20701 (Def. Exhibit H, R. Def. Exhibits

p. 85), which the trial court refused to admit Tr. 8/8/24 99:4-104:9.  Peters offered

witness testimony that federal law required her to preserve records, but the court

sustained every objection by the People. [Tr 8/6/24 79:21 - 80:1; 8/8/24 285:1-17,

8/9/24 212:15-25, 214:3 – 216:21, 340:19 - 341:1].  The court misused relevancy as a

barrier to prevent the jury from learning about Peters' federal duty.

In addition to excluding evidence of federal duty, the court rejected expert

testimony that the Mesa County voting machines, and SOS, illegally deleted election

records.  Peters proffered declarations from five qualified experts in different

disciplines [CF 3222-3291].  The Court ruled that the functionality, reliability and

efficacy of the voting machines was not at issue, therefore such evidence was

inadmissible [CF 3399-3404].  At the pretrial conference, the court summarized its

rulings that foreclosed Peters from presenting a complete defense:

15

> So whether the machine worked or not doesn't really matter, whether
> the image taken was accurate or not doesn't really matter. Whether she
> had a duty to take the image, make the image in the first place doesn't
> really matter when it relates to the charges here.

Tr 7/19/24 p 33:1-6

The court also prevented the jury from knowing that Dominion and SOS
conspired to conceal election crimes. Peters' evidence showed that the object of the
conspiracy was to erase digital evidence from the county hard drive during the
"Wipe," and to prosecute Peters for revealing what happened. The court violated
Peters' 6th Amendment right of confrontation by protecting SOS witnesses Romero
and Casias from cross examination about allowing Dominion programmers located
outside the U.S. to have illegal real-time access to the Colorado voting system during
the 2019 and 2020 primary elections (OB p. 29). The court quashed Peters' subpoena
served on Dominion vice president and general counsel Mike Frontera. It excluded
an email that showed coordination between Dominion and SOS to investigate Peters.
(OB p. 28).

> This trial is not about whether Dominion and the Secretary of State
> conspired to cover up vulnerabilities in the voting process. . .
> Accordingly, and without leave of Court, neither party may introduce
> argument or evidence regarding whether voting machines work as
> designed or as the public at large is told they are designed to work.

16

[CF 3403].  If the jury knew that Dominion conspired with SOS to prosecute Peters, and that the object of the conspiracy was to conceal their own election crimes, the jury would have reasonably doubted that Peters was guilty of any crime.

The most telling denial of due process was the trial court's refusal to instruct the jury on Peters' affirmative defense of execution of a public duty.  The People concede that there was sufficient evidence in the record to support the instruction. "Peters introduced ample evidence of her alleged beliefs that she was preserving election records, investigating destruction of evidence regarding system reliability, and had a legitimate need to conceal Mr. Hayes' identity." AB pp. 28-29.  Where the record contains <u>any</u> evidence tending to establish an affirmative defense, the defendant is entitled to have the jury properly instructed with respect to that defense. *Idrago v. People,* 818 P.2d 752, 754 (Colo. 1991).  The remedy for the court's failure to instruct on an affirmative defense is a new trial, because the jury could have had a reasonable doubt as to Peters' guilt if properly instructed. *Id* at 756.

The People argue that Peters was not entitled to affirmative defense instruction based on the duty to preserve records under §20701, because according to the People, §20701 "does not authorize an election officer to use criminal means to do so." AB p. 31, citing *People v. Roberts*, 601 P.2d 654, 656 (Colo. App. 1979), which is easily distinguishable.  In *Roberts,* the defendant was a DOC prison guard, who accepted a

17

$5,000 bribe from a CBI undercover agent, to assist in the escape of an inmate, Jesse

Nichols. Defendant's theory was that he participated in the scheme in order to

apprehend Nichols' brother, who had already escaped. Roberts tendered an

instruction on execution of a public duty, but the appellate court ruled he had failed to

present evidence to support the affirmative defense. *Roberts* at 656. Here, there is a

mountain of evidence to support the affirmative defense.

The Fifth and Sixth Amendments of the U.S. Constitution require that the jury

must decide whether the prosecution has proven beyond a reasonable doubt each

element of the offense, and the ultimate issue of guilt or innocence. *U.S. v. Gaudin*,

515 U.S. 506, 522-23 (1995)(holding that trial court violated defendant's Fifth and

Sixth Amendment rights by determining that one element of the charge had been

proven, without submitting that element to the jury for its determination). An

affirmative defense becomes an additional element of the charged offense, which the

prosecution must disprove beyond a reasonable doubt. *Martinez v. People*, 550 P.3d

713, 716 (2024). Here, the People concede that evidence in the record supported the

affirmative defense of execution of a public duty. Under *Martinez*, the affirmative

defense became an additional element of the charged offenses, and the prosecution

had the burden to disprove that element beyond a reasonable doubt. Here, as in

*Gaudin*, the trial court refused to instruct the jury on that element. The court thus

18

violated Peters' Fifth Amendment right to due process and her Sixth Amendment

right to trial by jury.  This error requires reversal of the felony convictions, and a new

trial in which Peters is allowed to present a complete defense, and the jury is properly

instructed.

Concerning the remaining due process issues, Peters relies on the arguments

made at pages 23-35 of her Second Amended Opening Brief.

### III.    THE EVIDENCE WAS INSUFFICIENT

The Answer Brief uses the word "unauthorized" thirteen times to insinuate

that Peters was guilty of criminal conduct by bringing Conan Hayes into the secure

area.  (AB  pp. 7,8,19,54).  Examples: "Peters made and executed a plan in

coordination with others to provide an <u>unauthorized person with access to the</u>

<u>elections server and Build</u>." (AB p. 8); "Casias would not have performed the Build

had he known an <u>unauthorized person</u> was present." (AB pp. 7,19); "[Peters] used

deception to facilitate non—government actors gaining <u>unauthorized access to the</u>

<u>secured election system</u>." (AB p. 54).  The People's insinuations are false.

First, it was legal for Peters to bring Hayes into the secure area.  The People

concede that Election Rule 20.5.3(b), then in effect, allowed Peters to admit Hayes

into the secure area so long as he was supervised by her or elections manager Sandy

Brown.[2]  The People do not dispute that Peters and Brown supervised Hayes at all times.

Second, it was legal for a county clerk to engage a consultant to make a backup image of the voting system.  The trial court recognized this, and at the pretrial conference, it forbade prosecutors from arguing at trial that making the forensic images was illegal. Tr. 7/19/24 53:14-19.  As noted at p. 2 above, Dominion granted Peters a contractual right to "copy the Software in whole or in part . . . for purposes of system backup."

When the People say that Hayes was an "unauthorized person," they refer to SOS employee Jessi Romero's email April 30, 2021 [People's Ex. 17] which suggested that because of Covid concerns only "authorized" staff from the state, county, and Dominion should be present.  The term "authorized" was not defined in Romero's email, or by rule or statute.  The term "unauthorized" is not an element of any of the felonies of which Peters was convicted.  The words "authorized" and "unauthorized" were not defined for the jury in Instruction 25, "Definitions and Special Rules [CF 4630-31].  Romero told the jury that the term "authorized" meant, "a county

_____

[2] The Answer Brief does not mention Rule 20.5.3(b), and it is not listed in the People's Table of Authorities.

20

employee who was background checked and someone who was authorized to work with the voting system." [Tr. 8/1/24 152:19-21].  The machination employed by the People, both at trial and in their Answer Brief, was using the word "unauthorized" to falsely suggest that it was illegal for Hayes to enter the secure area because SOS had not "authorized" him to be present.

At trial, prosecutors and their witnesses played the words "authorized" and "unauthorized" like their theme song.  Opening statement: Tr. 7/31/24 194:20-24, 198:9-10, 199:5-8, 202:3-4; Direct examination: Tr. 8/1/24 105:5-6-7, 120:10-12, 150:23 – 151:13 and Tr. 8/5/24 173:13-14; Closing argument Tr. 8/12/24 58:1-9, and 102:6-9.  All of this was to convince the jury that Peters committed a crime by allowing person in the room who had not been "authorized" by SOS.

The pertinent legal question is, which elected official had legal authority to control who entered the secure area?  Was it the elected clerk and recorder, or was it the Secretary of State?  SOS employee Jessi Romero admitted that SOS lacked this authority:

> Q. (By the Court) Why didn't you check the ID of the authorized individuals for the trusted build?
> A. (By Romero) I was not on site, and **we do not have the authority to do that.**

21

[Tr. 8/1/24 243:11-14].  Mesa County assistant elections clerk Stephanie Wenholz admitted that having a member of the public present to observe the trusted build was not a crime. [Tr. 8/5/24 53:20-22].  Section 5.2 of the contract between Mesa County and Dominion states that the county has responsibility "for review, analysis and acceptance of the System and the coordination of Customer personnel, equipment, vehicles and facilities" [R. Def. Ex. p.41, Ex. JJ8-003].  It was Clerk Peters, not the SOS, who had authority to determine who was present in the county's facility.

Since Peters had the authority to control who was present, there was no need to convince, persuade, or influence any other public officials.  Her choice to use a different name to protect Hayes' personal safety does not satisfy the element of intent required by C.R.S. §18-8-306, Attempt to Influence a Public Servant.  The statute requires "intent to alter or affect the decision, vote, action of the public servant concerning any matter which was to be considered or performed by the public servant."  Here, SOS had no authority to control who was present from the county. Using Hayes' alternate identity did not affect a decision that SOS had authority to make.  The evidence was therefore insufficient as a matter of law to sustain the guilty verdicts on count 1 (Romero), and count 4 (Casias).

The same logic requires vacating the conviction on count 2, in which the alleged victim, Mesa County employee David Underwood, testified that Peters had the authority and made the decision to issue credentials to Gerald Wood (OB p. 20-21).

The conviction for conspiracy to commit criminal impersonation (count 6) must be vacated because there was no evidence that Gerald Wood would have been subjected to liability if he had attended the software modification. The People argue that Wood would have liability "because he was <u>not authorized</u> to attend" (AB p. 21). This argument fails because it was Peters, not SOS, who had control of the facilities. The People next argue that "no person was <u>authorized</u> to copy the vendor's software." (Id.) This argument fails because, as we pointed out on p. 2 above, the Dominion allows its software to be copied "for purposes of system backup." Thus, there is no evidence that Wood would have been subjected to liability, and the conviction for count 6 must be vacated.

The People concede that Jury instruction 16 [CF 4452] failed to set forth the elements of felony criminal impersonation. (AB p. 33). This error undermined the fairness of the trial, because failure to instruct the jury on each element of the offense requires vacating the verdict. *People v. Wambolt*, 431 P. 3d 681, 690 (Colo. App. 2018).

As to the sufficiency of evidence to support count 8, official misconduct, the People fail to identify any evidence demonstrating that Peters intended to obtain a benefit. Instead, the People invite this Court to speculate by "drawing inferences" that Peters intended to benefit "Dr. Frank, his supporters, and herself by providing 'forensic images' of the election server to non-government actors." (AB p. 22). Because there is no evidence of a benefit, this Court must vacate the conviction for official misconduct.

## IV. THE SENTENCE VIOLATED PETERS' RIGHTS UNDER THE FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS

The People state correctly that the judgment of conviction shows sentences totaling eight years and nine months (AB p. 52). Judge Barrett said the total sentence was nine years. [Tr. 10/3/24 103:9].

The People argue that, "the trial court based its sentence on the <u>corruption</u> Peters exhibited through her criminal conduct." (AB p. 51). This is incorrect. There is no evidence that Peters was "corrupt" in the sense that she used her office to solicit bribes, embezzle money, or engage in similar corrupt activity.

The trial court stated three times that Peters deserved prison because of words she used to criticize the computer voting system. [Tr. 10/3/24 99:20-24; 100:4-11;

24

101:14-16].  The record demonstrates that the trial court incarcerated Peters for

speech that produced no threat of violence or lawless action, in violation of her rights

under the First, Eighth, and Fourteenth Amendments. See OB pp. 37-38.

The consecutive sentences imposed on Peters were not supported by

any evidence that justified the trial judge's action.  In *People v. Edwards*, 598 P.

2d 126, 130 (Colo. 1979), the court reversed the imposition of consecutive

sentences that were not justified by the record.  Here, as in *Edwards*, the trial

court abused its discretion by imposing consecutive sentences without

justification.  If all sentences ran concurrently, Peters would serve a maximum

of three and one-half years instead of eight years and nine months.  This Court

should follow *Edwards* and order concurrent sentences on remand.

## CONCLUSION

For the foregoing reasons, this Court should:

A. dismiss the case on the ground that Peters is immune from this prosecution

under the Supremacy and Privilege or Immunities Clauses of the U.S. Constitution, or

B. alternatively, vacate the convictions unsupported by sufficient evidence, and

remand the case for new trial and proceedings consistent with this Court's ruling; and

C. order any proceedings on remand be conducted by a different judge.

25

Respectfully Submitted August 18, 2025.

JOHN CASE, P.C.
Co-Counsel for Appellant
*s/John Case*
John Case, #2431


*s/Patrick M. McSweeney*

Patrick M. McSweeney, Pro Hac Vice


*s/Robert Cynkar*

Robert Cynkar, Pro Hac Vice

26

<u>CERTIFICATE OF SERVICE</u>

I certify that, on August 18, 2025, a copy of this Appellant's Reply Brief was

electronically served through Colorado Courts E-Filing on opposing counsel of

record.

<u>*s/ John Case*</u>