# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00425-STV

**TINA M. PETERS,**

      Petitioner,

      v.

**MOSES "ANDRE" STANCIL**, in his official capacity as the Executive Director of the Colorado Department of corrections, and
**PHILIP J. WEISER**, in his official capacity as Attorney General of the State of Colorado,

      Respondents.

---

## PETITIONER'S REPLY TO RESPONDENTS' ANSWER

---

The Petitioner, Tina M. Peters, respectfully submits her Reply to the

Respondents' Answer (ECF No. 72.)

### PRELIMINARY STATEMENT

In their Answer, the Respondents essentially employed two strategies to

attempt to persuade this Court to reject Mrs. Peters' Application for a Writ of

Habeas Corpus. Each has no merit.

First, they argued that Mrs. Peters' Petition failed because "the Supreme

1

Court has not decided, or even considered, whether denial of an appeal bond (or even a pretrial bond can constitute a violation of the First Amendment." [ECF 72 (hereafter "Answer") at 7.[1]]  However, that argument ignores the text of the statute, which examines the legal justification for the incarceration of a habeas petitioner in light of federal law, which is distinct from the type of custody the Petitioner is enduring.

Moreover, the requirement of §2254(d)(1) that the federal law at issue be "clearly established" does not require a Supreme Court precedent addressing the precise factual or procedural circumstances in which the petitioner finds herself. "Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 666 (2004)).  No federal rule could be clearer – no principle of law a more fixed star in our constitutional firmament – than the mandate of the First Amendment that no person may be punished for speech that is not intended to produce violence or incite lawless action.

---

[1] Respondents also raise the alternative standard of §2254(d)(2) concerning the "unreasonable determination of facts." Answer at 11. While the state district court made reversible errors in its exclusion of evidence which distorted the jury's understanding of the facts, that issue pertains to Mrs. Peters' appeal in state court. Section 2254 (d)(2) and is not a basis for her habeas application.

As the Respondents noted, the current version of §2254(d) was enacted in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). [Answer at 3.] The Respondents do not explain how "pre-AEDPA standards" could possibly apply here. They use their irrelevant argument to advance two manifestly erroneous points. *Id.,* at 12. First, they posited that the First Amendment violations justifying habeas relief concern only "statements [Mrs. Peters] made during the sentencing hearing." *Id.* This is incorrect. The denial of Mrs. Peters' motion for bond pending appeal was based on her statements made before her indictment concerning the dangerous vulnerabilities of her county's computerized voting system exposed by expert analyses of the forensic images she had made of the Election Management System ("EMS") server hard drive. [Application for a Writ of Habeas Corpus, at 6-10 (ECF 1)] ("Application").

Secondly, citing no authority in support, the Respondents claim that "any error was harmless because Mrs. Peters would not have been granted an appeal bond under the state's bond statutes in any event." [Answer at 12.] While the Respondents' application of those bond statutes is incorrect, more fundamentally, the other grounds supposedly justifying Mrs. Peters' continued incarceration do not excuse the violation of her First Amendment rights at work in the denial of her motion for bond pending appeal. Treading on Mrs. Peters' First Amendment rights

3

to keep her imprisoned pending appeal is not, and can never be, harmless error.

The second strategy adopted by the Respondents was to slur her. The Respondents falsely accuse Mrs. Peters of malfeasance including outright lying and deceit, Answer at 6, 10, 13, disregarding court orders, *Id* at 2, 6, 10, pursuing a "quest for fame and power," *Id* at 11, being a flight risk, *Id* at 2, 6, 13, and the like. Strikingly, the Respondents hurl this invective at Mrs. Peters while she has been muzzled by the state trial court, preventing her from explaining the federal duty that compelled her actions, [Application at 2-3, 6-8], that is, effectively preventing her from defending herself and exposing the mendacity of the accusations leveled against her. *Id.*, at 14.

In the end, a careful examination of the Answer exposes the ugly hostility that has been at work in the proceedings against Mrs. Peters, which abandoned the ideal of faithfulness to the truth.

## ARGUMENT

### I. Clearly Established Federal Law Provides That No Person May Be Punished for Speech That Is Not Intended Or Likely to Produce Violence or Lawless Action.

The habeas statute provides that "a person *in custody* pursuant to the judgment of a State court" is entitled to habeas relief only if that State court decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."
28 U.S.C. §2245(d)(1) (Emphasis added.)

Obviously, the Supreme Court has enforced the right to Freedom of Speech and the decision of the state court that Tina Peters should remain in custody because otherwise, she will utter dangerous speech is contrary to Federal law, as determined by the Supreme Court.

The statutory text is not complicated and its meaning is unequivocal. The premise of the provision is that a person already in State custody is applying for habeas relief. Congress did not differentiate between types of custody or where in the criminal proceedings that person's imprisonment is occurring. Clearly, such distinctions were not of concern to Congress.

§2254(d)(1) is concerned with the justification of the incarceration, not the size of the cell, the time of year, or whether the wrongful incarceration is while pending appeal. This Court must be empowered to free any citizen who is wrongfully incarcerated.

This Court cannot subscribe to a new rule that Habeas Corpus does not apply to an exception of the wrongful imprisonment being while awaiting the outcome of an appeal. If so, it could be the new zone of impervious incarcerations which could be prolonged.

The "clearly established" standard does not mean that § 2254(d)(1) requires an "identical factual pattern before a legal rule must be applied." *Panetti v. Quarterman,* 551 U.S. 930, 953 (2007). *See also Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) ("[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since "a general standard" from this Court's cases can supply such law."). As Justice Kennedy elaborated:

> The rule settled by these cases requires a court, on either direct or collateral review, to order a new trial when a defendant shows his conviction has been obtained in a trial tainted by an atmosphere of coercion or intimidation … This would seem to be true whether the pressures were from partisans, or … from persons reacting to the drama of the moment who created an environment so raucous that calm deliberation by the judge or jury was likely compromised in a serious way. If, in a given case, intimidation of this nature was brought about by the wearing of buttons, relief under … AEDPA would likely be available even in the absence of a Supreme Court case addressing the wearing of buttons. While general rules tend to accord courts more leeway ... in reaching outcomes in case-by-case determinations, … AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.

*Carey v. Musladin*, 549 U.S. 70, 80–81 (1992) (Kennedy, J., concurring in the judgment).

The rule of federal law violated by denying bond pending appeal to Mrs. Peters is a foundational rule of our constitutional order. Simply put, under the First Amendment, no person may be punished for speech that is not intended nor likely

to produce violence or lawless action. *Counterman v. Colorado*, 600 U.S. 66, 72–76, 81 (2023); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002); *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 909-911, 927–28 (1982); *Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969); *Noto v. United States*, 367 U.S. 290, 297-98 (1961).

The force of this rule is amplified when the speech at issue concerns matters of public policy, as Mrs. Peters' speech concerning the integrity of the election machinery does in this case.  Such speech is "at the core of our electoral process" and marks an arena "where protection of robust discussion is at its zenith." *Meyer v. Grant*, 486 U.S. 414, 425 (1988) (internal quotation omitted).

> Moreover, even where the utterance is false, the great principles of the Constitution which secure freedom of expression in this area preclude attaching adverse consequences to any except the knowing or reckless falsehood. Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth.

*Garrison v. State of La.*, 379 U.S. 64, 73 (1964). *See also Rankin v. McPherson*, 483 U.S. 378, 387 (1987) ("Just as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected.") (internal quotation omitted).

Respondents fault Mrs. Peters because she "cites no on-point Supreme Court cases." [Answer at 8.]  However, this argument proves that they lack a valid argument.  They cite *Marshall* for the proposition that "identifying on-point Supreme Court precedent is the necessary 'starting point' for any analysis under §2254(d)(1)." *Id.*  However, *Marshall* does not say that. *Marshall* says: "The starting point for cases subject to §2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claim." 569 U.S. at 61 (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)). Not only does the phrase presented by the Respondents not appear anywhere in *Marshall*, the *Marshall* Court expressly approved the Court of Appeal's recognition that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since a 'general standard' from this Court's cases can supply such a law." 569 U.S. at 62 (citing *Yarborough*).  Moreover, the issue in *Marshall* was very different from the issue before this Court.  *Marshall* confronted two federal rules that were in "tension": the rule that a criminal defendant facing incarceration has the right to counsel at all stages of the criminal process and the rule that that defendant also has the right to proceed without counsel when he voluntarily and knowingly elects to do so. *Id.,* at 61-64. The *Marshall* Court held that the state court's effort to

8

harmonize those conflicting rules in the context of the case before it could not be held contrary to clearly established federal law. *Id.*

Again, the Respondents are wrong; "on-point" cases are not required to satisfy §2254(d)(1). In the statutory endeavor to identify the clearly established federal rule, the type of punishment is not the issue; any punishment in violation of constitutional rights is the issue. That issue has been clearly resolved: imprisonment in violation of constitutional rights is forbidden. The punishment of Mrs. Peters for fear that she will exercise of her First Amendment rights is unconstitutional. No rule of federal law could be more clearly established in a detailed, long-standing body of numerous Supreme Court precedents, as discussed above. Here, federal law has been unequivocally violated and Mrs. Peters must be released if the safeguard of habeas corpus is to have continuing vitality.

## II. The Violation of Mrs. Peters' First Amendment Rights Cannot Be Excused as Harmless Error.

The Respondents contend that the violation of Mrs. Peters' First Amendment rights is "harmless error" because, according to Respondents, she would not have otherwise been granted bond pending appeal under state law. [Answer at 12.] This claim is incorrect for several reasons, most basically because the state judge expressed his reasons for denying bail to Mrs. Peters.

He was explicit that he considered Mrs. Peters' speech to be more damaging

than physical violence perpetrated by brutal criminals. ECF 2 105:4-6.

It is an elementary principle of law that a decision by a court "based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid." *United States v. Lemon*, 723 F.2d 922, 938 (D.C. Cir. 1983). *See also United States v. Stewart*, 686 F.3d 156, 169 (2d Cir. 2012) ("We again emphasize the complete bar on the use of protected speech, belief, or association at sentencing for the purpose of punishment based on the feature that warrants its First Amendment protection."); *United States v. Bangert*, 645 F.2d 1297, 1308 (8th Cir. 1981) ("Consideration of political beliefs, as distinguished from criminal activity, would clearly be impermissible in determining defendants' sentences, because it would impair the rights of the defendants under the First Amendment, protecting public expression of their political beliefs, by words and symbols."). Indeed, courts are so attentive to the protection of constitutional rights that a general verdict of guilt must be set aside if it could have been based on an invalid constitutional ground. *Zant v. Stephens*, 462 U.S. 862, 883 (1983); *Street v. New York*, 394 U.S. 576, 585-87 (1969); *Williams v. North Carolina*, 317 U.S. 287, 292 (1942); *Stromberg v. California,* 283 U.S. 359, 367-68 (1931).

Simply put, the state judge's refusal to grant Mrs. Peters bond pending appeal because of her speech concerning the vulnerabilities of her county's

computerized election machinery is an unconstitutional outrage, not a harmless error.  This Court is a beneficiary of the great writ of habeas corpus, an engine of the rule of law surmounting political power hard won generations ago by our legal forbearers. If there ever was a case justifying this Court's exercise of its habeas powers to release a state prisoner and thereby to vindicate a fundamental federal constitutional right, this is it. Mrs. Peters is incarcerated as punishment for her anticipated speech.  She should be released on bond pending her appeal without further delay.

### III. Mrs. Peters' Statements Are Not an Incitement to Violence or Any Danger to the Community.

The First Amendment violation that engineered Mrs. Peters' imprisonment pending her appeal is readily exposed by simply comparing the state judge's characterization of her speech with her actual words. Though the state judge did not identify the statements by Mrs. Peters which he was fearing, they are detailed in the sentencing record. Hence, the First Amendment issue here is not a fuzzy appeal to general First Amendment principles in the face of a hostile judge. Rather, there is a collection of specific statements by Mrs. Peters that can be the only basis for the state judge's decision to deny her request to continue her bond while her appeal was pending.[2] The state judge made no bones about the fact that he was punishing Mrs. Peters for her words. The key passages of his harangue of Mrs. Peters bear repeating:

> [Y]ou are a charlatan and you cannot help but lie as easy as it is for

---

[2] The Respondents argue that if this Court grants Mrs. Peters' habeas application, it should do so only conditionally, to allow the state court to correct the constitutional violation at issue. [Answer at 14.] The circumstances of this case, however, do not warrant such a move. Under Colorado law, danger to the community is an essential element of any decision to deny release on bail. *See* Application, at 4-5 (ECF No. 1). The only evidence adduced in the state proceedings that Mrs. Peters would pose such a danger are these statements. Thus any effort to develop a constitutional basis for keeping Mrs. Peters imprisoned pending her appeal would be futile. Moreover, Mrs. Peters has been incarcerated for a year. Further pointless proceedings on her motion for bond pending appeal before a clearly hostile state judge would only perpetuate that injustice.

you to breathe. You betrayed your oath for no one other than you. And this is what makes Mrs. Peters such a danger to our community. It's the position she held that has provided her the pulpit from which she can preach these lies, the undermining of our democratic process, the undermining of the belief and confidence in our election systems.

ECF 2 at 104:18-24.

So the damage that is caused and continues to be caused is just as bad, if not worse, than the physical violence that this court sees on an all too regular basis. And it's particularly damaging when those words come from someone who holds a position of influence like you. Every effort to undermine the integrity of our elections and the public's trust in our institutions has been made by you. You've done it from that lectern. The voting public provided you with everything you've done has been to retain control influence. The damage is immeasurable. And every time it gets refuted, every time it's shown to be false, just another tale is weaved.

ECF 2 at 105:4-14.

The words to which the judge is referring must be found somewhere in three documents in the state court record which contain all the evidence of Mrs. Peters' statements. The first is Mrs. Peters' cover letter for her submission of the first expert report on the forensic images taken before and after the Trusted Build upgrade of the county's EMS. ECF 2 at 257. For the Court's convenience, we include an image of that letter below.



Board of County Commissioners

SEP 1 7 2021

### CONFIDENTIAL LEGAL DOCUMENTS
### EXEMPT FROM COLORADO OPEN RECORDS ACT

Hon. Janet Rowland, Chair, Board of County Commissioners
Scott McInnis, County Commissioner
Cody Davis, County Commissioner
544 Rood Avenue
Grand Junction, CO 81501

RE:    Forensic Report No. 1 on EMS Server Images

Dear Commissioners:

Enclosed is the first report from the cybersecurity experts who have analyzed thoroughly the two forensic images of the drive of the DVS Democracy Suite Election Management System in my office which we used for the management of the 2020 election. Because the report documents a substantial amount of data destruction during the May 25 "Trusted Build" conducted by the Secretary of State's office and the vendor, I wanted to get this in your hands immediately.

I just received this report today. From my review of the executive summary, it does appear that my concerns were more than justified. As you know, the legal duty to preserve election records falls solely to me and my office. "Extensive" amounts of data required to be preserved were instead destroyed, and done in a way that was totally beyond my control or knowledge. Among other things, these deletions would preclude a forensic audit of the last election. Thanks to the pre-Trusted Build image I had commissioned in May, these data have been preserved, in full compliance with my obligations under federal and state law, preserving the integrity of our county's election record archive and permitting a forensic audit if one were conducted.

According to this report, the forensic examination has determined that this system and procedures "cannot meet the certification requirements of the State of Colorado and should not have been certified for use in the state." Obviously, this is highly relevant to any decision whether to continue to use these systems in our county. You already know of my opposition to continued use of these systems, which prevent me from discharging the duties of my office and the requirements of the law.

The experts conducting the forensic analysis are apparently issuing additional reports in the near future, and of course I will promptly deliver these to you. In the meantime, I would welcome a discussion of these findings and the proper course forward for our county to preserve the integrity of our elections.

Very truly yours,

Tina M. Peters

## Tina M. Peters
### Mesa County Clerk & Recorder
200 S. Spruce Street | Grand Junction, CO 81501
Tina.Peters@MesaCounty.US Office (970) 244-1714

14

The language of this letter can only strike the fair-minded reader as measured and professional, neither partisan nor extreme, and certainly not in any way inciting violence or encouraging unlawful conduct.

The second document is Mrs. Peters' cover letter for her submission of the second report of expert analysis of those forensic images. ECF 2 at 340. Again, below is an image of that letter.



Hon. Janet Rowland

Board of County Commissioners

544 Rood Ave. Grand Junction, CO

RE:    Forensic Report No. 2 on EMS Server Images

*March 1, 2022*

Dear Commissioner Rowland:

Enclosed is the second report, in electronic and hard copy form, from the cybersecurity experts who have continued to analyze the forensic images of the drive of the DVS Democracy Suite Election Management System in my office which we used for the management of the 2020 general election and the 2021 City Council Election. As you know, I had these images taken to preserve election records and help determine whether the county should continue to utilize the equipment from this vendor. Because the enclosed report reveals shocking vulnerabilities and defects in the current system, placing my office and other county clerks in legal jeopardy, I am forwarding this to the county attorney and to you so that the county may assess its legal position appropriately. Then, the public must know that its voting systems are fundamentally flawed, illegal, and inherently unreliable.

From my initial review of the report, it appears that our county's voting system was illegally certified and illegally configured in such a way that "vote totals can be easily changed." We have been assured for years that external intrusions are impossible because these systems are "air gapped," contain no modems, and cannot be accessed over the internet. It turns out that these assurances were false. In fact, the Mesa County voting system alone was found to contain thirty-six (36) wireless devices, and the system was configured to allow "any computer in the world" to connect to our EMS server. For this and other reasons—for example, the experts found uncertified software that had been illegally installed on the EMS server—our system violates the federal Voting System Standards that are mandated by Colorado law.

As the county officer elected to manage our elections in accordance with the law, I cannot hide behind the Secretary of State's certification of the Democracy Suite system and ignore the numerous and profound deficiencies revealed in this report. As the experts point out, the Secretary of State's certification itself was unlawful, based as it was on testing performed by an unaccredited lab, a lab that missed 100% of the security issues that render the system unusable, uncertifiable, and illegal. The county must reassess its recently-renewed lease agreement and consider its legal options immediately. We cannot continue to use this equipment. Please respond once you have read the enclosed report.

Very truly yours

*Tina M. Peters*

Tina M. Peters

## Tina M. Peters
### Mesa County Clerk & Recorder
200 S. Spruce Street | Grand Junction, CO 81501
Tina.Peters@MesaCounty.US Office(970) 244-1714 Cell (970) 812-2610

16

Like her first letter, this letter contains nothing remotely incendiary that could legally justify the withdrawal of the shelter of the First Amendment.

The final document is People's Sentencing Exhibit 1, titled "Recordings of Statements made by Ms. Tina Peters." This document is a transcript prepared by the District Attorney's Investigator, James Cannon, recounting eleven statements made by Mrs. Peters in four public fora. Below is an image of that three-page document.

**(s1950) 12-18-23 Tina Statements Report_CANNON**



**OFFICE OF THE DISTRICT ATTORNEY**
**21ˢᵗ JUDICIAL DISTRICT OF COLORADO**
**INVESTIGATIONS DIVISION**

Daniel P. Rubinstein
District Attorney

| Originating Agency Case # | Originating Agency | Court Case # |
|---|---|---|
| 21-257 | 21ˢᵗ Judicial District, D.A.'s Office | 22CR371/372 Peters / Knisley |
| Report Type | | |
| D.A. Agency Assist Case # | D.A. Investigator | Date |
| NA | James Cannon | 12-14-23 |

All locations referred to are in the County of Mesa, State of Colorado, unless specifically noted otherwise.

**Activity**

I gathered videos and media containing statements made by Tina Peters. I am familiar with Tina Peters's voice and her likeness from both election s fraud investigations and from obtaining certified documents from her office both in DMV and Recording. The following references quotes and which video/media contains the statement.

3_Tina on Lindell
TV_21-257_00011
89_0001_AA

The Lindell Report on 08-21-21

At 12:41 Tina Peters stated: "The Dominion equipment..and I have been researching and wanting to switch to another vendor or just do paper ballots."

At 15:27 Tina Peters stated: "I decided because of all these concerns to do a back-up. We were encouraged by Secretary of State to do backups of our system...and I decided to go ahead and do so, so that we would preserve, I was concerned that, that vital statistics and information was being deleted from the system or could be deleted from the system and I wanted to preserve that."

At 18:10 Tina Peters stated: "I decided to find out if there was a 'there-there'."

At 24:13 Mike Lindell stated: "So is it your understanding that the prior elections data was deleted from your Dominion server?"  In response to this question Tina Peters first shrugged her shoulders and verbally replied to Lindell's last question by saying, "I don't know.  The forensic experts would have to give you the details of that, but that is my understanding."

pg. **1** of **3**



4_Tina on Truth and Liberty show 21-257_0001210_0004_AA

Truth and Liberty Show 09/20/21

At 11:30 Tina Peters stated, "The Secretary of State had put out a mandate that they were coming to each of the 64 counties in Colorado and they were going to do what they called a Trusted Build. And I have trouble with that word cause for me it was more of an untrusted build. Which they were just coming in to do a software update and they'd be in and out. Well they were there for a day and one-half and it was a lot more involved than that."

*Male: "When did this take place? This was after the 2020 election."*

Tina Peters: "Right, right, this was in May, so this was May 25th and 26th, so they came and well first I ask them, I said I would like to have someone, I would like to have the public to be able to be there to observe. And they said absolutely not. I asked that I could have other people in there to observe and they said no, you can be you and two other people. And so I mean I did not have anyone on my staff that really knew the computer part of it and so, except for, I mean not the inner workings of it. So they came in, so what I did was I commissioned someone to come in and make a image, an image of the server how it stood."

*Male: "In the Voting machine, right?"*

Tina Peters: "To the server, to the vote tabulation machine, so this is a vote tabulator. These machines, is where once the ballots are open they are fed through this machine and this machine determines what they voted.

*Male: "And is this the Dominion voting system that you are talking about?"*

Tina: "That is correct. So afterwards I did a backup to see what had changed, because I was suspicious of what they were doing, because they had mentioned that they were going to doing away with a QR code reader. And I thought well if they do that then how would be able to do an audit if we needed to. And so that's what prompted me to take action."



5_Tina speech at old courthouse 21-257_0001226_0001_AA

Tina Peters speech at Old Courthouse in Grand Junction 10-11-21

At 2:00 Tina Peters stated, "So I made a forensic image before and I made a forensic image after."

pg. **2** of 3

Case Number: 2021-00000257. ORI: CO039015A.                                                                    Page: 19 of 19



14_07-12-22 Tina speech in Vegas 21-257_0001539_0001_AA

Tina Peters speech in Las Vegas 07-12-22

At 9:30 Tina Peters stated, "The day that the man that came in to do the image on the Mesa County computer, I'd promised him I would protect his identity."

At 10:16 Tina Peters stated, "He did the image on a Sunday and it was not in the middle of the night it was in the afternoon after his flight got in."

[END REPORT]
JPC/jpc

pg. **3** of **3**

What is striking about these statements is that they were assembled and introduced into the record of the criminal proceedings against Mrs. Peters by the prosecution for the *specific purpose of supporting their advocacy of punishment for Mrs. Peters*. Even worse, recall that all Mrs. Peters' efforts to explain why she did what she did were excluded from those proceedings by the state judge because he concluded evidence concerning the election machinery was irrelevant to the charges against her. ECF 2 at 583. Yet in People's Sentencing Exhibit 1, the prosecution introduced snippets of Mrs. Peters' statements on that very subject, but curated (they thought) specifically to enhance her punishment for those charges.

Not surprisingly, these statements – straightforward, unprovocative descriptions by Mrs. Peters of what she did and why she did it – like the cover letters for the expert reports, serve only to underscore how flagrant and shameless was the state judge's violation of Mrs. Peters' First Amendment rights in denying her bond pending appeal. The fact is that the statements he relied on to imprison Mrs. Peters are within the preserve of the First Amendment.

The Supreme Court has repeatedly reminded us how broad that preserve is:

[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That

21

> is why freedom of speech, though not absolute … is nevertheless
> protected against censorship or punishment, unless shown likely to
> produce a clear and present danger of a serious substantive evil that
> rises far above public inconvenience, annoyance, or unrest.

*Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). Moreover, as stated in the classic formulation from that Court: "[D]ebate on public issues should be uninhibited, robust, and wide-open, and ... may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964).

Not one of Mrs. Peters' statements at issue were "caustic" or "vehement," much less inciting violence, though they may have been unsettling to those with an interest in preserving the status quo. Yet it was those very statements that the state judge claimed justified incarcerating Mrs. Peters while her appeal is pending. That is a violation of the First Amendment, and unequivocally warrants this Court to grant Mrs. Peters' Application for a Writ of Habeas Corpus and order her release on bond immediately.

### IV. Applicant meets the requirements of the Colorado Constitution for bond on appeal.

Mrs. Peters meets the three requirements of Colo. Const. Art. II, Sec. 19 (2.5)(b) to be eligible for bond on appeal. First, she is not likely to flee. She was on bail for 31 months without incident, and she appeared on time for trial and

sentencing.  There is no basis to believe that she would ever be a flight risk.

Second, there is no evidence that she poses a danger to the safety of any person or

the community.  Third, she likely will win her appeal.  It is obviously not frivolous

or pursued for purposes of delay.  Thus, under state law Mrs. Peters is eligible for

bond pending appeal.  The only reason the state of Colorado denied bond is

because of her speech.

## CONCLUSION

For the foregoing reasons, and those in all our filings in these proceedings,

this Court should grant Mrs. Peters' Application for a Writ of Habeas Corpus and

order Mrs. Peters released without delay to the custody of the United States

Marshall, who shall then promptly present Mrs. Peters to this Court for the setting

of a reasonable bond.

Respectfully submitted,

Patrick M. McSweeney                      *s/ John Case*

Robert J. Cynkar                         John Case

MCSWEENEY, CYNKAR & KACHOUROFF, PLLC    JOHN CASE, P.C.

3358 John Hill Tree Road                 6901 S. Pierce St. #340

Powhatan, VA 23139                   Littleton CO 80128

(804) 937-0895                       (303) 667-7407

patrick@mck-lawyers.com               brief@johncaselaw.com

THE TICKTIN LAW GROUP

270 SW Natura Avenue

Deerfield Beach, Florida 33441

Telephone: (561) 232-2222

   /s/ Peter Ticktin

Peter Ticktin, Esq.

Florida Bar No. 887935

Serv512@LegalBrains.com

*Co-counsel for Applicant Tina M. Peters*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy of same to be served on counsel of record via the email addresses that counsel registered with the Court's ECF system.

*s/ Linda Good*