# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. __1:25-cv-00425 STV

**TINA M. PETERS,** Applicant,

v.

**MOSES "ANDRE" STANCIL** in his official capacity as the Executive Director of the Colorado Department of Corrections, and **PHILIP J. WEISER**, in his official capacity as Attorney General of the State of Colorado, Respondents

---

## VERIFIED NOTICE OF APPLICANT'S SOLITARY CONFINEMENT, AND RENEWED REQUEST FOR RULING

---

Applicant Tina Peters, through counsel, notifies the Court that she has been placed in solitary confinement, and her health continues to deteriorate.

1.      On October 16, 2025, the Court stated that it would rule "promptly" on Mrs. Peters' fully briefed Application for writ of habeas corpus.

2.      At 6:45 p.m. on November 20, 2025, counsel John Case received a telephone call from Mrs. Peters. She sobbed. She said that she had been moved to solitary confinement in a concrete cell with no windows. The reason given was that Mrs. Peters had filed a grievance against a corrections officer.

3.     Earlier in the day, counsel met with Mrs. Peters at the prison from 11:35 a.m. until 1 p.m.  During the meeting, Mrs. Peters said that she was concerned about her safety as well as her health.  She said that a corrections officer had been discussing her legal case with other inmates during GED classes taught by the corrections officer.  One of the inmates who attended the GED classes screamed at Mrs. Peters when Mrs. Peters asked the corrections officer not to discuss her case during GED classes.  The inmate followed Mrs. Peters back to her unit, screaming at her.  Mrs. Peters said that she intended to file a grievance against the corrections officer and the inmate.  She gave me a handwritten copy of the grievance that she intended to file.  A copy is attached as Exhibit 1 with names redacted.  She also gave me a two-page handwritten statement which is attached as Exhibit 2 with names redacted.

4.     Mrs. Peters said that it was inappropriate for the corrections officer to single her out and discuss her legal case with other inmates during GED classes.  DOC Administrative Regulation 1450-1 (I)(1)(b) prohibits any DOC employee from disclosing any DOC related information about an inmate to other inmates.  By violating the administrative regulation, the corrections officer invited other inmates to attack Mrs. Peters, which resulted in the attack on her the morning of November 20.

5.      Mrs. Peters said that inmates applying for parole must complete the GED course and pass the GED exam, or their parole application will be postponed for another year.  Mrs. Peters said that many inmates were denied parole because GED classes had been canceled due to inadequate staffing.  She said that it was not fair to the GED students for the corrections officer to use their class time to discuss Mrs. Peters' legal case, instead of teaching GED material.

6.      A corrections officer supervised our visit from behind a glass window observation booth.  At the end of the visit, counsel said to the corrections officer, "Mrs. Peters has safety concerns.  May I please speak to the watch commander?" The corrections officer said no, I would need to schedule an appointment.

7.      Counsel then asked the corrections officer if I could meet with Warden Werlich.  My paralegal, Linda Good, visited Mrs. Peters on November 6, 2025.  During that visit, Warden Werlich entered the visitation room and introduced himself to Ms. Good.  Mrs. Peters said that Warden Werlich had invited Ms. Good to contact him and schedule an appointment at any time.  When I asked to meet with the Warden, the corrections officer told me that I would have to call the Warden's office and schedule an appointment at another time.  On the morning of November 21, 2025, Ms. Good spoke with the Warden's assistant to schedule an

appointment and was told she would receive a return call after consulting Warden Werlich's schedule.  Thus far, we have not heard back.

8.      On November 20, Mrs. Peters coughed intermittently throughout counsel's 85-minute meeting with her.  Her complexion was pale, as it was at our previous meeting eight days earlier.  Mrs. Peters said that since then, a work crew had attempted to remove black mold from the shower.  Throughout our meeting, Mrs. Peters' cognitive function was much slower than it had been prior to incarceration.  She had difficulty finding words, and she repeated herself often.

9.      I asked Mrs. Peters about the status of diagnostic tests for a recurrence of lung cancer.  Mrs. Peters said that she had undergone a chest x-ray on November 18, 2025, but she had not been advised of the results.  Mrs. Peters said that on November 19, 2025, the nurse drew blood to test for cancer tumor markers.  Mrs. Peters said that, on the advice of a consulting oncologist, she also requested a PET-CT scan of her chest, abdomen and pelvis, but it had not been scheduled.

10.     After arriving home from the visit, counsel learned from a third party that Mrs. Peters had been strip searched and placed in solitary confinement because she filed the grievance.  I later learned from Mrs. Peters that Warden Werlich, whom I was not permitted to speak with that afternoon, had personally come to Mrs. Peters' cell and told her she was being moved to solitary confinement.

11.     Undersigned counsel John Case is concerned about Mrs. Peters' being verbally targeted by a corrections officer to incite other inmates against her.  Her health has deteriorated markedly.  She has persistent undiagnosed cough, possible recurrence of lung cancer, constant pain in her neck, back, and hips, sleep deprivation, and cognitive decline.  It is unfair to punish a nonviolent 70-year-old woman by locking her in solitary confinement because she filed a legitimate grievance against a corrections officer who violated DOC administrative regulations.

12.     Counsel again requests that Mrs. Peters be released on bond immediately because of the merits of her case, the unfair treatment she is receiving, the continuing deterioration of her health, and the danger she is in.

WHEREFORE, Applicant prays for an immediate ruling granting her bond pending appeal and releasing her from custody.

## VERIFICATION

John Case states under penalty of perjury that the foregoing statements in this Notice are true to the best of his knowledge and belief.

_____
John Case

5

Respectfully Submitted November 21, 2025.

| | |
|---|---|
| Patrick M. McSweeney | *s/ John Case* |
| Robert J. Cynkar | John Case |
| McSweeney, Cynkar & Kachouroff, PLLC | John Case, P.C. |
| 3358 John Hill Tree Road | 6901 S. Pierce St. #340 |
| Powhatan, VA 23139 | Littleton CO 80128 |
| (804) 937-0895 | (303) 667-7407 |
| patrick@mck-lawyers.com | brief@johncaselaw.com |

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

  /s/ Peter Ticktin
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935
Serv512@LegalBrains.com

*Co-counsel for Applicant Tina M. Peters*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause an electronic copy of same to be served on counsel of record via the email addresses that counsel registered with the Court's ECF system.

*s/ Linda Good*